Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Laura Baughman (SBN 263944)
lbaughman@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
BARON & BUDD, P.C.
1999 Avenue of the Stars, Suite 3450
Los Angeles, California  90067
Telephone:   (310) 860-0476
Facsimile:    (310) 860-0480

Attorneys for Plaintiff
CLAIRE DELACRUZ individually, and
on behalf of other members of
the public similarly situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAIRE DELACRUZ, individually, and on behalf of other members of the general public similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> CYTOSPORT, INC., a California Corporation, <br><br> Defendant. | Case Number:  3:11-cv-03532-CW <br><br> **CLASS ACTION** <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br> (1)   Violation of the Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*); <br><br> (2)   Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); <br><br> (3)   Violation of False Advertising Law (Cal. Bus. & Prof. Code §§ 17500 *et seq.*); <br><br> (4)   Fraud; <br><br> (5)   Negligent Misrepresentation; and <br><br> (6)   Unjust Enrichment <br><br> **Jury Trial Demanded** |

Plaintiff CLAIRE DELACRUZ ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, alleges as follows:

## NATURE OF THE ACTION

1.      This is a consumer class action regarding Defendant Cytosport, Inc.'s unfair, unlawful, deceptive, and misleading practices conducted in violation of California state and common law.  This action involves "Muscle Milk® Ready-To-Drink (RTD)" and "Muscle Milk® Bars" products (the "Products") that are manufactured and marketed by Defendant Cytosport, Inc. ("Defendant" or "Cytosport").

2.      In connection with its marketing of the Products, as part of an extensive and long-term advertising campaign, including communications through product packaging, television, print, outdoor, and other media, Cytosport makes representations and omissions that are intended to mislead consumers to believe that the Products are healthy, and nutritious, and should be regularly consumed to help them diet and live a healthy lifestyle.

3.      Contrary to Defendant's representations and omissions, however, with almost 50% of their caloric content coming from fats, the Products are equivalent to fat-laden junk food.  Defendant tells consumers "there's no question you're getting a nutritious snack," and that the Products "take[] the guesswork out of high performance nutrition," yet a standard-sized container of Cytosport's "Muscle Milk® Ready-To-Drink (RTD)" contains the same number of calories and almost as much total fat and saturated fat as a "Glazed Kreme Filling" Krispy Kreme® doughnut, and *more* fat and saturated fat than other varieties of Krispy Kreme® doughnuts.  Similarly, Cytosport's 73 gram "Muscle Milk® Bars" contain more calories, more saturated fat, and the same amount of total fat as a roughly equal-sized 72 gram "Chocolate Iced Glazed" Krispy Kreme® doughnut. "Muscle Milk® Bars" also contain unhealthy ingredients like fractionated palm kernel oil and partially hydrogenated palm oil.

4.      Defendant expressly represents that the Products are "premium," "healthy," "nutritional" products that should be consumed as part of a "healthy lifestyle," before

workouts, after workouts, and as a "meal replacement" to provide "healthy sustained energy." Defendant also unlawfully suggests that these fat-filled Products will help people lose weight, telling consumers, among other things, that the Products are "an ideal nutritional choice [if] you are . . . on a diet," and that the Products will help people "Go from cover it up to take it off."

5.     The central message of these claims is that the Products are *not* loaded with unhealthy fats, and that consuming them provides a wide range of significant nutritional benefits. This message, however, is false, misleading, deceptive, and unfair. Cytosport has profited enormously from their deceptive marketing of the Products. Consumers are increasingly health-conscious, and to increase consumption of the Products, Cytosport's deceptive marketing intentionally plays into consumers' concerns. Indeed, with the launch of its "Just Look Good" campaign, Cytosport's Chief Marketing Officer, Nikki Brown, explained that Muscle Milk® advertisements were designed to "speak[] to mainstream consumers such as health conscious college students."[1]   As a result, Cytosport commands a premium price for the Products, using health claims to distinguish them from other products.

6.     Cytosport's misrepresentations about the Products—including its use of the healthy sounding "Muscle Milk" name and its "healthy, sustained energy" claims—bombard consumers with a message of purported benefits, and draw consumer attention away from the significant amount of total fats, saturated fats, and otherwise unhealthful nature of the Products. Furthermore, because the majority of the ingredients in the Products are only identified with technical terms that have little or no meaning to the reasonable person, consumers have no choice but to rely on the readily understood health claims Cytosport features on the Product labels and in the advertising.

7.     Reasonable consumers should not be forced to look beyond the misleading

---

[1] *See* "Muscle Milk® Builds Popularity With Television Debut, Online Videos," PR Newswire, April 1, 2010, available at http://www.prnewswire.com/news-releases/muscle-milkr-builds-popularity-with-television-debut-online-videos-89708732.html (last visited August 24, 2011).

2

representations prominently featured on the Product's packaging, marketing, advertising, and promotional materials to try and discover the truth from a list of confusing and scientifically complex ingredients identified in small print on the back of the label. Instead, reasonable consumers should be able to trust that Cytosport's representations are consistent with the ingredient list, and not the opposite, as is the case with "Muscle Milk® Ready-To-Drink (RTD)" and "Muscle Milk® Bars."

## JURISDICTION AND VENUE

8.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the class of plaintiffs are citizens of states different from Defendant.  Further, greater than two-thirds of the Class Members reside in states other than the states in which Defendant is a citizen.  In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that plaintiffs ordinarily would expect to try them in one judicial proceeding.

9.      Venue lies within this judicial district pursuant to 28 U.S.C. § 1391(b)-(c) because Defendant's principal place of business is in this district and certain acts giving rise to the claims asserted in this Complaint occurred within this District.

## PARTIES

10.     Plaintiff Claire Delacruz, an individual, is a California resident.

11.     Defendant CYTOSPORT, INC. is a California corporation who is authorized to do and, is in fact, doing business in the State of California, with its principal place of business located at 4795 Industrial Way, Benicia, California  94510.

12.     Whenever, in this Complaint, reference is made to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of Defendant.

## FACTUAL BACKGROUND

### Muscle Milk® Ready-To-Drink (RTD)

13.     Cytosport sells "Muscle Milk® Ready-To-Drink (RTD)."  Cytosport claims that the product is "Nutritional" and that it provides "Healthy, Sustained Energy." Furthermore, although the package for "Muscle Milk® Ready-To-Drink (RTD)" states that it "CONTAINS NO MILK," Cytosport claims that the product "provides nutrients found in natural milk that are important for building muscles and bones."

14.     The packaging of Cytosport's "Muscle Milk® Ready-To-Drink (RTD)" product appears as follows:

 

FIRST AMENDED CLASS ACTION COMPLAINT

15. Cytosport also sells "Muscle Milk® Ready-To-Drink (RTD)" in a 14-oz. size.

16. The packaging of Cytosport's "Muscle Milk® Ready-To-Drink (RTD)" 14-oz. size product appears as follows:

 

17. Among other things, the packaging of the 14-oz. size contains the following statement:

YOUR BODY IS THE MOST AMAZING
HIGH TECH PERFORMANCE MACHINE
ON THE PLANET.

TREAT IT LIKE ONE.

MUSCLE MILK IS AN IDEAL BLEND
OF PROTEIN, HEALTHY FATS,
GOOD CARBOHYDRATES
AND 20 VITAMINS AND MINERALS
TO PROVIDE SUSTAINED ENERGY,
SPUR LEAN MUSCLE GROWTH
AND HELP PROVIDE RECOVERY
FROM TOUGH DAYS
AND TOUGHER WORKOUTS.

TO REACH YOUR TRUE POTENTIAL,
GIVE YOUR BODY THE FUEL IT DESERVES.

18.     By using such false and misleading terms as "healthy fats," "good carbohydrates," and telling consumers that consuming "Muscle Milk® Ready-To-Drink (RTD)" will help "reach your true potential," Cytosport misleads and unlawfully represents to consumers that these products are healthy, nutritious, and should be regularly consumed throughout the day as part of a "healthy" lifestyle.

19.     Cytosport's misrepresentations concerning "Muscle Milk® Ready-To-Drink (RTD)" are compounded by the representations it makes on its website.  The header of Cytosport's website prominently features its "Healthy, Sustained Energy" claim.



Additionally, on the website, Cytosport makes such misleading statements as "No matter if you are a performance athlete, exercise enthusiast, or just trying to live a healthy lifestyle, Muscle Milk is an ideal [product] for your nutritional needs."  Cytosport claims that "Muscle Milk® Ready-To-Drink (RTD)" is a "functional beverage that promotes recovery from exercise, lean muscle growth, and healthy, sustained energy."  Cytosport also misleadingly represents to consumers that "Ready-to-Drink is an ideal nutritional choice [if] you are . . . on a diet."

20.     Other relevant portions of Cytosport's website are appear follows:



6

21.     As part of its efforts to mislead consumers and conceal the truth about its products, and in an effort to encourage consumers to ignore the fact that "Muscle Milk® Ready-To-Drink (RTD)" is loaded with as much, if not more, total fat and saturated fat as a doughnut, Cytosport claims that the Products contain "functional fats," and suggests that consumers should trust the company because its "Muscle Milk® Ready-To-Drink (RTD)" product "takes the guesswork out of high performance nutrition."

22.     Consistent with Defendant's strategy to conceal information and mislead consumers, Cytosport's advertising campaigns, like its transit media campaign, include statements to suggest that "Muscle Milk® Ready-To-Drink (RTD)" is healthy and will help people lose weight, claiming that drinking the product will help people "[g]o from cover it up to take it off," go "from invisible to OMG!," or "from frumpy to fabulous."



23.     To increase sales and profits from these misrepresentations, Cytosport also instructs consumers on "How to use Muscle Milk," telling them to use it to meet their "nutritional goals" and to use it multiple times a day, including "1.5 – 2 hours prior to training," "30-45 minutes after workouts," as a "meal replacement," and "in between meals as a protein-enhanced snack," or even "in conjunction with meals."

24.     Cytosport also fails to disclose the amounts of polyunsaturated and monounsaturated fats present in its "Muscle Milk® Ready-To-Drink (RTD)" product.

**Muscle Milk® Bars**

25.     Cytosport also sells "Muscle Milk® Bars."  Prominently stated on the packaging of its "Muscle Milk® Bars" product, Cytosport claims that the product provides "Healthy, Sustained Energy."

26.     With 11 grams of total fat (one third of the total caloric content), 8 grams of saturated fat and almost no vitamins and minerals, contrary to Cytosport's "healthy" claim, "Muscle Milk® Bars" are equivalent to fat-laden junk food.  Indeed, Cytosport's 73 gram "Muscle Milk® Bars" contain more calories, more saturated fat, and the same amount of total fat as a roughly equal-sized 72 gram "Chocolate Iced Glazed" Krispy Kreme® doughnut.

27.     Plaintiff is informed and believes, and on that basis, alleges that the consumption of saturated fats has been shown to cause heart disease and other serious health problems.  The American Heart Association recommends limiting saturated fat intake to less than 7% of one's total daily calories.  Plaintiff is informed and believes, and on that basis, alleges that saturated fat is the main dietary cause of high blood cholesterol.

28.     Additionally, Plaintiff is informed and believes, and on that basis, alleges that playing into the fact that consumers desire healthy foods, but  lack sufficient understanding of nutritional science, Cytosport misleads consumers by prominently featuring health claims for its "Muscle Milk® Bars," although the products actually contain unhealthy ingredients like fractionated palm kernel oil, and partially hydrogenated palm oil.

29.     Plaintiff is informed and believes, and on that basis, alleges that palm oil is high in saturated fat and is often used as a substitute for partially hydrogenated vegetable oil (*i.e.*, trans fat).  Plaintiff is informed and believes, and on that basis, alleges that studies, however, have suggested that palm oil may be just as unhealthy as partially

Case No. 3:11-cv-03532-CW

hydrogenated vegetable oil.[2]   Additionally, Plaintiff is informed and believes, and on that basis, alleges that the World Health Organization has convincingly linked palmitic acid, which is present in palm oil, to increased risk of cardiovascular disease.[3]

30.     Plaintiff is informed and believes, and on that basis, alleges that palm oil can be processed to create variants, including palm kernel oil and fractionated palm kernel oil. Plaintiff is informed and believes, and on that basis, alleges that the healthful aspects of natural palm oil, if any, are largely lost in the processing.  Indeed, of all the varieties of palm oil, Plaintiff is informed and believes, and on that basis, alleges that the form that is used in "Muscle Milk® Bars," fractionated palm kernel oil, is the least healthy.[4]  Plaintiff is informed and believes, and on that basis, alleges that palm kernel oil is a cheap, unhealthy fat, and unlike ordinary palm oil, palm kernel oil cannot be obtained organically.  Instead, Plaintiff is informed and believes, and on that basis, alleges that palm kernel oil must be extracted from the pit with a gasoline-like hydrocarbon solvent. Plaintiff is informed and believes, and on that basis, alleges that fractionation is a further phase of palm oil processing, designed to extract and concentrate specific fatty acid fractions.  Plaintiff is informed and believes, and on that basis, alleges that fractionated palm oil, as found in food products, has a higher concentration of saturated fat than regular palm oil and is used for the convenience of manufacturers like Cytosport who like its stability and melting characteristics.

31.     Plaintiff is informed and believes, and on that basis, alleges that the National Institute of Diabetes and Digestive and Kidney Diseases urges people to "[c]ut back on

---

[2] See "Palm Oil Not A Healthy Substitute For Trans Fats, Study Finds," *Science News*, May 11, 2009, available at http://www.sciencedaily.com/releases/2009/05/090502084827.htm (last visited August 23, 2011).

[3] See "Diet, Nutrition and the Prevention of Chronic Diseases," World Health Organization (2003) pp. 81-82, available at http://www.who.int/hpr/NPH/docs/who_fao_expert_report.pdf (last visited August 23, 2011).

[4] See "Tropical Oils:  What's Healthy?  What's Not?," Dr. Andrew Weil, M.D., October 18, 2002 (updated March 30, 2005), available at http://www.drweil.com/drw/u/id/QAA118473 (last visited August 24, 2011).

foods high in saturated fat or cholesterol, such as . . . foods with palm oil."[5]  Similarly, Plaintiff is informed and believes, and on that basis, alleges that the American Heart Association warns against "bad" fats and foods that contain them, stating that "palm oil, palm kernel oil, and coconut oil, also contain primarily saturated fats."[6]

32.    Moreover, by highlighting the claim that "Muscle Milk® Bars" have "0g Trans Fat," yet failing to disclose the amounts of polyunsaturated or monounsaturated fats, Cytosport further misleads consumers and conceals material information concerning the fat content and healthful nature of "Muscle Milk® Bars."  Cytosport also fails to disclose that the product contains no milk.

33.    The packaging of Cytosport's "Muscle Milk® Bars" product appears as follows:



34.    As is the case with the company's "Muscle Milk® Ready-To-Drink (RTD)" product, Cytosport's misrepresentations and omissions concerning its "Muscle Milk® Bars" are compounded by the representations it makes on its website.  The header of Cytosport's website prominently features its "Healthy, Sustained Energy" claim (*see*, *infra*, ¶ 19).  Cytosport also claims that when their customers consume "Muscle Milk®

---

[5] *See* "Prevent Diabetes Problems:  Keep Your Heart and Blood Vessels Health," National Institute of Diabetes and Digestive and Kidney Diseases, National Institutes of Health (2003) NIH Publication No. 03-4283, available at http://diabetes.niddk.nih.gov/dm/pubs/complications_heart/heart.pdf (last visited August 24, 2011).

[6] *See* "Frequently Asked Questions About 'Bad' Fats:  What are the 'bad' fats and which foods contain them?," American Heart Association, May 21, 2010, available at http://www.heart.org/HEARTORG/General/Frequently-Asked-Questions-About-Bad-Fats_UCM_306349_Article.jsp (last visited August 24, 2011).

1  Bars," "there's no question [they are] getting a nutritious snack," and that "Muscle Milk

2  Bars deliver . . . healthy sustained energy."

3  **PLAINTIFF'S CLAIMS AGAINST CYTOSPORT**

4  35.  Plaintiff Delacruz is a resident of Los Angeles, California.

5  36.  For the past approximately continuing six months before the filing of the

6  initial Complaint in this action, Plaintiff regularly purchased and consumed Cytosport's

7  "Muscle Milk® Ready-To-Drink (RTD)" and "Muscle Milk® Bars" products.

8  37.  Consistent with Cytosport's suggestions on "how to use muscle milk,"

9  Plaintiff consumed the Products before workouts, after workouts, in between meals as a

10 snack, and sometimes as a meal replacement.

11 38.  As discussed in detail in the preceding paragraphs, in connection with

12 Cytosport's extensive and long-term advertising campaign concerning the Products,

13 including communications made on product packaging, television, print, outdoor, and

14 other media, Plaintiff was exposed to representations and omissions intended to mislead

15 consumers like her to believe that the Products are healthy, nutritious, and should be

16 regularly consumed to diet and live a healthy lifestyle.  Plaintiff purchased the Products as

17 a result of the aforementioned representations Cytosport made in its extensive and long-

18 term advertising campaign concerning the Products, and in reliance on those

19 representations, she consumed the Products, believing them to be healthy, nutritious foods

20 that she could eat to help her live an active lifestyle, meet her nutritional goals, and lose

21 weight.  But for Defendant's misrepresentations and omissions, Plaintiff would not have

22 purchased and consumed the Products.

23 **CLASS ACTION ALLEGATIONS**

24 39.  Plaintiff brings this action, on behalf of herself and all others similarly

25 situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

26

27

28

40.     The class Plaintiff seeks to represent (the "Class") is defined as follows:

> All residents of the United States of America who purchased
> Cytosport's "Muscle Milk® Ready-To-Drink (RTD)" and/or
> "Muscle Milk® Bars" products during the period of July 18,
> 2007 continuing through the date of final disposition of this
> action.

41.     Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

42.     Plaintiff reserves the right to establish sub-classes as appropriate.

43.     This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3), and satisfies the requirements thereof.  As used herein, the term "Class Members" shall mean and refer to the members of the Class.

44.     <u>Community of Interest</u>:  There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

45.     <u>Numerosity</u>:  While the exact number of members of the Class is unknown to Plaintiff at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendant.  At this time, Plaintiff is informed and believes that the Class includes thousands of members. Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

46.     <u>Ascertainablity</u>:  Names and addresses of members of the Class are available from Defendant's records.  Notice can be provided to the members of the Class through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under California state law and

1  federal law.

2      47.   Typicality:  Plaintiff's claims are typical of the claims of the other members

3  of the Class which she seeks to represent under Federal Rule of Civil Procedure 23(a)(3)

4  because Plaintiff and each member of the Class has been subjected to the same deceptive

5  and improper practices and has been damaged in the same manner thereby.

6      48.   Adequacy:  Plaintiff will fairly and adequately represent and protect the

7  interests of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4).

8  Plaintiff is an adequate representative of the Class, because she has no interests which are

9  adverse to the interests of the members of the Class.  Plaintiff is committed to the

10  vigorous prosecution of this action and, to that end, Plaintiff has retained counsel who are

11  competent and experienced in handling class action litigation on behalf of consumers.

12      49.   Superiority: A class action is superior to all other available methods of the

13  fair and efficient adjudication of the claims asserted in this action under Federal Rule of

14  Civil Procedure 23(b)(3) because:

15          (a)   The expense and burden of individual litigation make it economically

16              unfeasible for members of the Class to seek to redress their "negative

17              value" claims other than through the procedure of a class action.

18          (b)   If separate actions were brought by individual members of the Class,

19              the resulting duplicity of lawsuits would cause members to seek to

20              redress their "negative value" claims other than through the procedure

21              of a class action; and

22          (c)   Absent a class action, Defendant likely would retain the benefits of its

23              wrongdoing, and there would be a failure of justice.

24      50.   Common questions of law and fact exist as to the members of the Class, as

25  required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions

26  which affect individual members of the Class within the meaning of Federal Rule of Civil

27  Procedure 23(b)(3).

28      51.   The common questions of fact include, but are not limited to, the following:

13

(a)     Whether Defendant's practice of misleading consumers who purchase Cytosport's "Muscle Milk® Ready-To-Drink (RTD)" and "Muscle Milk® Bars" products violates one or more provisions of the CLRA;

(b)     Whether Defendant engaged in unlawful, unfair, misleading, or deceptive business acts or practices;

(c)     Whether Defendant engaged in consumer fraud, deceptive trade practices, or other unlawful acts;

(d)     Whether Plaintiff and members of the Class justifiably relied on the representations Defendant made in connection with its "Muscle Milk® Ready-To-Drink (RTD)" and "Muscle Milk® Bars" products;

(e)     Whether Defendant's conduct was willful or reckless;

(f)     Whether Plaintiff and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit; and

(g)     Whether Defendant engaged in unlawful and unfair business practices in violation of California Business & Professions Code sections 17200 *et seq.* and 17500 *et seq.*

52.     In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

(a)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant.

(b)     The prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

53.     Plaintiff is not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION

### Violation of the Consumers Legal Remedies Act

### (Cal. Civil Code §§ 1750 *et seq.*)

54.     Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

55.     Plaintiff brings this cause of action on behalf of herself and the other members of the Class.

56.     This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq.* ("CLRA").  Plaintiff and members of the Class are consumers as defined by California Civil Code section 1761(d).  The Products are goods within the meaning of California Civil Code section 1761(a).

57.     Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff and members of the Class, which were intended to result in, and did result in, the sale of the Products:

(5)     Representing that [the Product have]… characteristics…[and] uses…which they do not have….

(7)     Representing that [the Product] are of a particular standard…if they are of another.

(9)     Advertising goods…with intent not to sell them as advertised.

58.     Defendant violated the CRLA by representing and advertising that the Products, as discussed above, were "healthy," "nutritional," "an ideal nutritional choice [if] you are . . . on a diet," and should be consumed by people "just trying to live a healthy lifestyle." Defendant knew, however, that this was not the case and that in reality, the Products are loaded with fats and have little nutritional or health benefits.

59.     Defendant further violated the CRLA by misleading customers to believe that they could lose weight from consuming the Products by claiming that the Products will help people "Go from cover it up to take it off," go "from invisible to OMG!," or "from frumpy to fabulous."

60.     Defendant also conceals the truth about its products—encouraging consumers to ignore the fact that "Muscle Milk® Ready-To-Drink (RTD)" is loaded with as much, if not more, total fat and saturated fat as a doughnut— by claiming that "Muscle Milk® Ready-To-Drink (RTD)" contains "functional fats," "healthy fats," "good carbohydrates," and suggesting that consumers should trust the company because its "Muscle Milk® Ready-To-Drink (RTD)" product "takes the guesswork out of high performance nutrition."

61.     On July 18, 2011, via certified mail, return receipt requested, under Section 1782 of the CLRA, Plaintiff notified Cytosport in writing of the particular violations of Section 1770, and demanded that Cytosport rectify the problems associated with the behavior detailed above, which acts and practices are in violation of Section 1770.

62.     Cytosport failed to rectify the violations identified by Plaintiff. Therefore, under Section 1780(a) of the CLRA, Plaintiff and members of the Class seek actual and punitive damages.

63.     Concurrent with the filing of the initial complaint in this action, Plaintiff filed a Declaration of Venue in accordance with Civil Code section 1780(d).

64.     Under Section 1782(d) of the CLRA, Plaintiff also seeks an order enjoining the act and practices described above, restitution of property, and any other relief that the court deems proper.

65.     Defendant's conduct is malicious, fraudulent, and wanton, and Defendant intentionally misleads and withholds material information from consumers in order to increase the sale of the Products.

66.     Defendant's misrepresentations and omissions were material Plaintiff and members of the Class.  Plaintiff and members of the Class would not have purchased and consumed the Products had it not been for Defendant's misrepresentations and concealment of material facts.  Plaintiff and members of the Class were damaged as a result of Defendant's material misrepresentations and omissions.

## SECOND CAUSE OF ACTION

### Violation of Unfair Business Practices Act

### (California Business & Professions Code §§ 17200 *et seq.*)

67.     Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

68.     Plaintiff brings this cause of action on behalf of herself and the other members of the Class.

69.     California Business and Professions Code section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice."  For the reasons described above, Defendant has engaged in unlawful, unfair, and/or fraudulent business acts or practices in violation of California Business and Professions Code section 17200.

70.     Defendant's misrepresentations and omissions of material facts, as set forth herein, constitute an unlawful practice because they violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, among others, and the common law.

71.     Defendant's misrepresentations and omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of California Business and Professions Code sections 17200 *et seq.*, in that Defendant's conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.  Plaintiff also asserts a violation of public policy by withholding material

17

1    facts from consumers.  Defendant's violation of California's consumer protection and

2    unfair competition laws in California resulted in harm to consumers.

3         72.    There were reasonable alternatives available to Defendant to further

4    Defendant's legitimate business interests, other than the conduct described herein.

5         73.    California Business and Professions Code section 17200 also prohibits any

6    "fraudulent business act or practice."

7         74.    Defendant's misrepresentations and concealment of material facts, as set

8    forth above, were false, misleading, and/or likely to deceive the public within the meaning

9    of California Business and Professions Code section 17200.

10        75.    Defendant's misrepresentations and concealment were made with knowledge

11   of their effect, and were done to induce Plaintiff and members of the Class to purchase the

12   Products.  Plaintiff and members of the Class saw and justifiably relied on Defendant's

13   misrepresentations when purchasing the Products.

14        76.    Defendant's conduct caused and continues to cause injury to Plaintiff and

15   members of the Class.  Defendant's misrepresentations and omissions were material

16   Plaintiff and members of the Class.  Plaintiff and members of the Class would not have

17   purchased and consumed the Products had it not been for Defendant's misrepresentations

18   and concealment of material facts.  Plaintiff and members of the Class have suffered

19   injury in fact and have lost money as a result of Defendant's fraudulent conduct.

20        77.    Plaintiff and members of the Class would not have purchased and consumed

21   the Products had it not been for Defendant's misrepresentations and concealment of

22   material facts.  Defendant's misrepresentations and omissions alleged herein are

23   objectively material to the reasonable consumer.  Reliance upon the misrepresentations

24   and omissions discussed herein may therefore be presumed as a matter of law.  The

25   materiality of such representations and omissions also establishes causation between

26   Defendant's conduct and Plaintiff's and the members of the Class' injuries

27        78.    Defendant has thus engaged in unlawful, unfair, and fraudulent business acts

28   entitling Plaintiff and members of the Class to judgment and equitable relief against

18

1    Defendants, as set forth in the Prayer for Relief.

2       79.    Additionally, under Business and Professions Code section 17203, Plaintiff

3    and members of the Class seek an order requiring Defendant to immediately cease such

4    acts of unlawful, unfair, and fraudulent business practices, and requiring Defendant to

5    correct its actions.

6                           **THIRD CAUSE OF ACTION**

7                      **Violation of False Advertising Law**

8              **(California Business & Professions Code §§ 17500 *et seq*.)**

9       80.    Plaintiff incorporates by reference in this cause of action each and every

10   allegation of the preceding paragraphs, with the same force and effect as though fully set

11   forth herein.

12      81.    California Business and Professions Code section 17500 prohibits "unfair,

13   deceptive, untrue or misleading advertising."

14      82.    Defendant violated California Business and Professions Code section 17500

15   by, *inter alia*, (a) misleadingly advertising the healthfulness, nutritious nature, and the

16   purportedly "healthy" and "functional" fats and in the Products in print, on-line and

17   elsewhere; and (b) concealing material information about the true nature of the Products,

18   in that they contain significant amounts of unhealthy fats, should not be regularly

19   consumed, are not healthy, and will not help people lose weight.

20      83.    Defendant's deceptive practices were specifically designed to induce Plaintiff

21   and members of the Class to purchase the Products over those of its competitors.

22   Defendant's deceptive practices were carried out in print, on-line, on Defendant's website,

23   and other broad-based media, in order to induce Plaintiff and members of the Class to

24   purchase the Products.

25      84.    Plaintiff and members of the Class would not have purchased and consumed

26   the Products had it not been for Defendant's misrepresentations and concealment of

27   material facts.  Plaintiff and members of the Class were denied the benefit of the bargain

28   when they decided to purchase the Products over competitor products, which are less

expensive or contain healthier ingredients, or they do not unlawfully claim to be healthy. Had Plaintiff and members of the Class been aware of Cytosport's false and misleading advertising tactics, they would have paid less than what they paid for the Products, or they would not have purchased the Products at all

85.   The content of the advertisements, as alleged herein, were of a nature likely to deceive a reasonable consumer.

86.   Defendant knew, or in the exercise of reasonable care, should have known, that the representations were untrue or misleading and likely to deceive reasonable consumers.

87.   Defendant's misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and reliance upon such misrepresentations and omissions may therefore be presumed as a matter of law.  The materiality of such representations and omissions also establishes causation between Defendant's conduct and Plaintiff's and the members of the Class' injuries.

88.   Unless restrained by this Court, Defendant will continue to engage in misleading advertising, as alleged above, in violation of California Business and Professions Code section 17500.

89.   As a result of the foregoing, Plaintiff and members of the Class have been injured in fact and lost money or property, and they are entitled to restitution and injunctive relief.

## FOURTH CAUSE OF ACTION
### Fraud

90.   Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

91.   Plaintiff brings this cause of action on behalf of herself and the members of the Class.

92.   Defendant has made material misrepresentations about the Products, as

20

1  discussed above, including that they are "healthy," "nutritional," and are to be consumed

2  by people "trying to live a healthy lifestyle."

3      93.    Defendant also conceals material facts about the Products—encouraging

4  consumers to ignore the fact that "Muscle Milk® Ready-To-Drink (RTD)" is loaded with

5  as much, if not more, total fat and saturated fat as a doughnut—by misrepresenting that

6  "Muscle Milk® Ready-To-Drink (RTD)" contains "functional fats," "healthy fats," and

7  "good carbohydrates," and suggesting that consumers should trust the company because

8  its "Muscle Milk® Ready-To-Drink (RTD)" product "takes the guesswork out of high

9  performance nutrition," and is "an ideal nutritional choice [if] you are . . . on a diet."

10     94.    Defendant knew these statements were false and misleading.

11     95.    The healthfulness and nutritious nature of the Products was a material feature

12  of the Products.  Plaintiff and other members of the Class would not have purchased the

13  Products but for Defendant's false and misleading representations and concealment of

14  material facts.

15     96.    Defendant made the misrepresentations and omissions stated above with

16  knowledge of the effect of concealing these material facts.  Defendant knew that by

17  misleading consumers, it would sell more units of the Products, which would result in

18  higher profits.

19     97.    By misrepresenting and concealing material information about the Products,

20  Defendant intended to induce Plaintiff and members of the Class into purchasing the

21  Products.

22     98.    Plaintiff and members of the Class justifiably relied on the representations

23  made about the Products.

24     99.    Defendant's representations and omissions regarding the healthfulness,

25  nutritious nature, and the purportedly "healthy" and "functional" fats and in the Products

26  were made with knowledge or with reckless disregard of the laws of California

27  prohibiting false and misleading statements.

28

100. Defendant:

    a.    made representations, as facts, which were not true and Defendant did not believe to be true at the time made;

    b.    made assertions, as facts, which were not true and Defendant had no reasonable grounds for believing to be true at the times they were made; and/or

    c.    suppressed facts, which it was bound to disclose, or gave information of other facts which were likely to mislead for want of communications of the suppressed facts.

101. As a result of Defendant's wrongful conduct, Plaintiffs and the members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the monies paid for Cytosport's "Muscle Milk® Ready-To-Drink (RTD)" and "Muscle Milk® Bars," and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

102. The wrongful acts of Defendant were done maliciously, oppressively and with the intent to defraud, and Plaintiffs and members of the Class are entitled to punitive and exemplary damages in an amount to be ascertained according to proof, which is appropriate to punish, deter, and set an example of Defendant.

103. Defendant acted with malice, oppression, or fraudulent intent.

104. As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiff and each member of the Class has been damaged in an amount according to proof at trial.

## FIFTH CAUSE OF ACTION

### Negligent Misrepresentation

105. Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

106.   Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiff and members of the Class.

107.   In making the representations of fact to Plaintiff and members of the Class described herein, Defendant has failed to fulfill its duties to disclose the material facts set forth above.  The direct and proximate cause of said failure to disclose was the negligence and carelessness of Defendant.

108.   In making the representations and omissions, and in doing the acts alleged above, Defendant acted without any reasonable grounds for believing the representations were true, and intended by said representations to induce the reliance of Plaintiff and members of the Class.

109.   Plaintiff and members of the Class relied upon these false representations, concealments and nondisclosures by Defendant when purchasing the products at issue herein, which reliance was justified.

110.   As a result of Defendant's wrongful conduct, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Cytosport's "Muscle Milk® Ready-To-Drink (RTD)" and "Muscle Milk® Bars," and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

**SIXTH CAUSE OF ACTION**

**Unjust Enrichment**

111.   Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

112.   By its wrongful acts and omissions, Defendant was unjustly enriched at the expense of Plaintiff and members of the Class, who did not receive the goods to which they were entitled—namely products that were healthy, nutritious, without significant amounts of unhealthy fats that could be regularly consumed and help people lose

23

1    weight—for the payments made to Defendant, and thus Plaintiff and members of the

2    Class were unjustly deprived.

3        113.   It would be inequitable and unconscionable for Defendant to retain the profit,

4    benefit and other compensation it obtained from its deceptive, misleading, and unlawful

5    conduct alleged herein.

6        114.   Plaintiff and members of the Class seek restitution from Defendant, and seek

7    an order of this Court disgorging all profits, benefits, and other compensation obtained by

8    Defendant from its wrongful conduct.

9                            **PRAYER FOR RELIEF**

10       Plaintiff, and on behalf of herself and all others similarly situated, requests the

11   Court to enter judgment against Defendant, as follows:

12       1.    Certifying the Class as requested herein, certifying Plaintiff as the

13   representative of the Class, and appointing Plaintiff's counsel as counsel for the Class;

14       2.    Ordering that Defendant is financially responsible for notifying all members

15   of the Class of the alleged misrepresentations and omissions discussed herein;

16       3.    Awarding Plaintiff and the members of the Class compensatory damages in

17   an amount according to proof at trial;

18       4.    Awarding restitution and disgorgement of Defendant's revenues to Plaintiff

19   and members of the Class;

20       5.    Awarding declaratory and injunctive relief as permitted by law or equity,

21   including: enjoining Defendant from continuing the unlawful practices as set forth herein,

22   and directing Defendant to identify, with Court supervision, victims of its conduct and pay

23   them restitution and disgorgement of all monies acquired by Defendant by means of any

24   act or practice declared by this Court to be wrongful;

25       6.    Awarding to Plaintiff and the Class punitive damages;

26       7.    Ordering Defendant to engage in corrective advertising;

27       8.    Awarding interest on the monies wrongfully obtained from the date of

28   collection through the date of entry of judgment in this action;

9. Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

10. For such other and further relief as the Court deems just and proper.

Dated:  August 29, 2011                    BARON & BUDD, P.C.


                                           By:  _/s/ Mark Pifko_____
                                                Mark Pifko

                                           Attorneys for Plaintiff
                                           CLAIRE DELACRUZ, individually, and
                                           on behalf of other members of the public
                                           similarly situated

Case No. 3:11-cv-03532-CW