IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAIRE DELACRUZ, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>CYTOSPORT, INC., a California Corporation,<br><br>        Defendant. | No. C 11-3532 CW<br><br>ORDER GRANTING IN PART AND DENYING IN PART CYTOSPORT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (Docket No. 14) |

============================/

Plaintiff Claire Delacruz alleges a putative consumer class action based on certain representations made regarding Defendant Cytosport's products, "Muscle Milk® Ready-To-Drink" (RTD) and "Muscle Milk® Bars."  Plaintiff alleges claims under the California Consumer Legal Remedies Act (CLRA), the Unfair Competition Law (UCL), and the False Advertising Law (FAL), as well as common law claims for fraud, negligent misrepresentation and unjust enrichment.  Defendant moves to dismiss Plaintiff's First Amended Complaint (1AC) under Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1), and 12(b)(6).

Having considered all of the parties' submissions and oral argument, the Court grants in part Defendant's motion to dismiss and denies it in part.  Docket No. 14.

United States District Court<br>For the Northern District of California

BACKGROUND

Plaintiff's 1AC alleges the following.  Defendant manufactures and markets Muscle Milk® products, including the RTD and the bars.  The 1AC refers to both as the Products.  Plaintiff claims,

> In connection with its marketing of the Products, as part of an extensive and long-term advertising campaign, including communications through product packaging, television, print, outdoor, and other media, Cytosport makes representations and omissions that are intended to mislead consumers to believe that the Products are healthy, and nutritious, and should be regularly consumed to help them diet and live a healthy lifestyle.
>
> Contrary to Defendant's representations and omissions, however, with almost 50% of their caloric content coming from fats, the Products are equivalent to fat-laden junk food.  Defendant tells consumers "there's no question you're getting a nutritious snack," and that the Products "take[] the guess work out of high performance nutrition," yet a standard-size container of Cytosport's "Muscle Milk® Ready-To-Drink (RTD)" contains the same number of calories and almost as much total fat and saturated fat as a "Glazed Kreme Filling" Krispy Kreme® doughnut, and <u>more</u> fat and saturated fat than other varieties of Krispy Kreme® doughnuts.  Similarly, Cytosport's 73 gram "Muscle Milk® Bars" contain more calories, more saturated fat, and the same amount of total fat as a roughly equal-sized 72 gram "Chocolate Iced Glazed" Krispy Kreme® doughnut.
>
> Defendant expressly represents that the Products are "premium," "healthy," "nutritional" products that should be consumed as part of a "healthy lifestyle," before workouts, after workouts, and as a "meal replacement" to provide "healthy sustained energy."

1AC at ¶¶ 2-4.

The 1AC includes photographs of two RTD containers, a seventeen ounce RTD and a fourteen ounce RTD, as well as other

2

advertisements for the drink.  The fourteen ounce container states,

> MUSCLE MILK IS AN IDEAL BLEND
> OF PROTEIN, HEALTHY FATS,
> GOOD CARBOHYDRATES
> AND 20 VITAMINS AND MINERALS
> TO PROVIDE SUSTAINED ENERGY,
> SPUR LEAN MUSCLE GROWTH AND HELP PROVIDE RECOVERY
> FROM TOUGH DAYS
> AND TOUGHER WORKOUTS.

1AC at ¶ 17.

Plaintiff alleges that "healthy fats" and "good carbohydrates" are false and misleading terms.  1AC at ¶ 18.

The misrepresentations on the container are compounded by misrepresentations on the product website, Plaintiff claims.  The website states, "No matter if you are a performance athlete, exercise enthusiast, or just trying to live a healthy lifestyle, Muscle Milk is an ideal [product] for your nutritional needs."  1AC at ¶ 19.  In addition, the website claims that the RTD is a "functional beverage that promotes recovery from exercise, lean muscle growth, and healthy, sustained energy."  1AC at ¶ 19.  The website also states, "Ready-to-Drink is an ideal nutritional choice [if] you are . . . on a diet."  1AC at ¶ 19.  The 1AC includes an image from the website.

Defendant also conducted a transit media campaign for the RTD.  The advertisements appeared on buses, on top of taxis and in trains, stating, "Go from cover it up to take it off," "From invisible to OMG!" and "From frumpy to fabulous."  1AC at ¶ 22.

They led consumers to believe that the RTD is healthy and would help them lose weight.

Plaintiff alleges,

> To increase sales and profits from [the above-mentioned] misrepresentations, Cytosport also instructs consumers on "How to use Muscle Milk," telling them to use it to meet their "nutritional goals" and to use it multiple times a day, including "1.5-2 hours prior to training," "30-45 minutes after workouts," as a "meal replacement," and "in between meals as a protein-enhanced snack," and even "in conjunction with meals."

1AC at ¶ 23.  The 1AC does not allege where these particular statements are made.

In addition to claims regarding the RTD, the 1AC contains specific allegations related to the bars, including an image of the product packaging.  Plaintiff claims that the "Healthy, Sustained Energy" and "0g Trans Fat" language on the front of the package is misleading, 1AC at ¶¶ 25, 32, and that, as with the RTD, misrepresentations regarding the bars are compounded by the representations Defendant makes about them on its website, 1AC ¶ 34.  The website allegedly states that when customers consume the bars "there's no question [they are] getting a nutritious snack," and that "Muscle Milk Bars deliver . . . healthy sustained energy."  1AC ¶ 34.  According to Plaintiff, this is misleading because the bars contain "11 grams of total fat (one third of the total caloric content), 8 grams of saturated fat and almost no vitamins and minerals."  1AC at ¶ 26.  Further, the bars "actually contain unhealthy ingredients like fractionated palm kernel oil, and partially hydrogenated palm oil."  1AC at ¶ 28.  Plaintiff

**United States District Court**
For the Northern District of California

states that palm oil is high in saturated fat and is often used as a substitute for partially hydrogenated vegetable oil (i.e. trans fat).  1AC at ¶ 29.  Plaintiff alleges that studies have suggested that palm oil may be just as unhealthy as trans fats, 1AC at ¶ 29, and claims that fractionated palm kernel oil is the least healthy variety of palm oil and that the healthful aspects of palm oil are largely lost in the processing of palm kernel oil and fractionated palm kernel oil, 1AC at ¶ 30.  Plaintiff also claims that "the World Health Organization has convincingly linked palmitic acid, which is present in palm oil, to increased risk of cardiovascular disease," 1AC at ¶ 29.  The American Heart Association states that palm oil and palm kernel oil "contain primarily saturated fats," and recommends limiting saturated fat intake to less than seven percent of one's total daily calories 1AC at ¶¶ 27 and 31.  Plaintiff alleges that "the consumption of saturated fats has been shown to cause heart disease and other serious health problems."  1AC at ¶ 27.  However, Plaintiff does not allege that any amount of saturated fat renders a product unhealthy.

Plaintiff claims that she "regularly purchased and consumed" Muscle Milk® RTD and the bars during the six months prior to filing the initial complaint.  1AC at ¶ 36.  Plaintiff alleges that she "was exposed" to Defendant's long-term advertising campaign concerning the products, including the product packaging. 1AC ¶ 38.  She alleges that "but for" Defendant's misrepresentations and omissions, she would not have purchased and

consumed the products.  1AC ¶ 38.  She further claims that she was

denied the benefit of her bargain when she decided to purchase the

products over competitor products, which are less expensive or

contain healthier ingredients.  Plaintiff claims that she would

not have paid as much as she did for the products, or she would

not have purchased the products at all, had she been aware of the

misrepresentations.  1AC at ¶¶ 66, 76, 84, 95, 101, 110 and 112.

Other factual assertions discussed by the parties in their

briefing are not plead in the 1AC.  Specifically, Plaintiff points

out that Defendant has represented in other litigation that it has

spent millions of dollars promoting and advertising Muscle Milk®

RTD and the Muscle Milk® brand generally.[1]  Plaintiff also notes

that, on June 29, 2011, the FDA sent a Warning Letter to Defendant

after having reviewed the labels for Defendant's "Chocolate Muscle

Milk Protein Nutrition Shake," (fourteen ounce) and the webpage

for Muscle Milk® Bars.  Declaration of G. Charles Nierlich in

---

[1] The Court grants Plaintiff's Request for Judicial Notice of
Exhibit A, a declaration by Roberta White, Defendant's Vice
President of Corporate Development, submitted in a different
action, because it is not subject to reasonable dispute, under
Federal Rule of Evidence 201(b).  In ruling on a motion to
dismiss, the court may consider matters which may be judicially
noticed pursuant to Federal Rule of Evidence 201, including
records from other proceedings.  See Mir v. Little Co. of Mary
Hosp., 844 F.2d 646, 649 (9th Cir. 1988).  Here, the
representations as to the amount of advertising are Defendant's
own.  White Dec. at ¶ 23.  The statement may support Plaintiff's
allegations about Defendant's long-term advertising campaign, even
if the representations are not specific to the precise
misrepresentations alleged here.  However, this information is not
in the complaint and so does not contribute to the complaint's
sufficiency.

Support of Defendant's Motion to Dismiss, Exhibit A.  The FDA stated that, among other violations of the Federal Food, Drug and Cosmetic Act and applicable regulations, the label for the shake and its webpage impermissibly included the claim "Healthy, Sustained Energy" without meeting the requirements for the use of the nutrient content claim, "healthy."  The FDA also stated that the website for the bars contained the claim "healthy, sustained energy," although they have more fat and saturated fat than permitted by food branding regulations.  This information is not alleged in the complaint and thus cannot be used to argue that the complaint is sufficient.

LEGAL STANDARD

I. Subject Matter Jurisdiction

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case.  Federal subject matter jurisdiction must exist at the time the action is commenced.  Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988).  A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears.  Stock W., Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1).  Because challenges to standing implicate a federal court's subject matter jurisdiction under

Article III of the United States Constitution, they are properly

raised in a motion to dismiss under Rule  12(b)(1).  White v. Lee,

227 F.3d 1214, 1242 (9th Cir. 2000).

II. Sufficiency of Claim under Rule 12(b)(6)

A complaint must contain a "short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R.

Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to

state a claim, dismissal is appropriate only when the complaint

does not give the defendant fair notice of a legally cognizable

claim and the grounds on which it rests.  Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007).  In considering whether the

complaint is sufficient to state a claim, the court will take all

material allegations as true and construe them in the light most

favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d

896, 898 (9th Cir. 1986).  However, this principle is inapplicable

to legal conclusions; "threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements," are not

taken as true.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009)

(citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally

required to grant the plaintiff leave to amend, even if no request

to amend the pleading was made, unless amendment would be futile.

Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911

F.2d 242, 246-47 (9th Cir. 1990).  In determining whether

amendment would be futile, the court examines whether the

United States District Court
For the Northern District of California

complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

III. Federal Rule of Civil Procedure 9(b)

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "It is well-settled that the Federal Rules of Civil Procedure apply in federal court, 'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.'" Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (citing Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102 (9th Cir. 2003). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Statements of the time, place and nature of the alleged fraudulent activities are sufficient, id. at 735, provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false." In re GlenFed, Inc., Secs. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).

DISCUSSION

I. Allegations of False and Misleading Statements

While Plaintiff's standing is necessary to the Court's jurisdiction, and jurisdiction is a threshold question, Defendant's standing arguments merge with its arguments that Plaintiff fails to state a claim, so the Court addresses the latter first.

Defendant argues that Plaintiff has failed to allege any false or misleading statement under the UCL, CLRA and FAL or her common law claims for fraud or negligent misrepresentation. Claims of deceptive labeling under these California statutes are evaluated by whether a "reasonable consumer" would be likely to be deceived. Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) (citing Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995)). Common law claims for fraud and negligent misrepresentation similarly require that the consumer justifiably rely on a representation that is false or subject to a misleading omission. Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 990 (2004) (common law fraud); Century Sur. Co. v. Crosby Ins., Inc., 124 Cal. App. 4th 116, 129 (2004) (negligent misrepresentation).

Federal Rule of Civil Procedure 9(b) applies to claims sounding in fraud under the common law and statutory law, requiring particularized pleading of alleged false statements, and the basis for the claim of falsity. Plaintiff claims that the

United States District Court
For the Northern District of California

product labels include misrepresentations.  In Williams, upon which Plaintiff relies, the Ninth Circuit reversed the district court's dismissal of a consumer class action under the UCL, CLRA and FAL for failure to allege cognizable misrepresentations.  552 F.3d at 934.  The action arose from allegedly deceptive packaging for "Fruit Juice Snacks," a food product developed for toddlers.  The district court dismissed the claim after reviewing an example of the packaging and finding that "no reasonable consumer upon review of the package as a whole would conclude that Snacks contains juice from the actual and fruit-like substances displayed on the packaging particularly where the ingredients are specifically identified."  Id. at 939.

The Ninth Circuit, however, found a number of features on the packaging that would likely deceive a reasonable consumer.  Specifically, the product was called "Fruit Juice Snacks" and the packaging depicted a number of different fruits, "potentially suggesting (falsely) that those fruits or their juices are contained in the product."  Id.  In addition, consumers could easily interpret the statement that Fruit Juice Snacks were made with "fruit juice and other all natural ingredients" to mean "that all the ingredients in the product were natural," which was alleged to be false.  Id.  Finally, the claim that the product is "just one of a variety of nutritious Gerber Graduates foods and juices that have been specifically designed to help toddlers grow up strong and healthy" added to the potential deception.  Id.

United States District Court
For the Northern District of California

The court acknowledged that "nutritiousness" is "difficult to measure concretely," but because the statement that the product was "nutritious" contributed "to the deceptive context of the packaging as a whole," the court declined to give the defendant "the benefit of the doubt by dismissing the statement as puffery." Id. at 939 n.3.

Plaintiff and Defendant both rely on Yumul v. Smart Balance, Inc., 733 F. Supp. 2d 1117 (C.D. Cal. 2010). There, the plaintiff claimed that the defendant's margarine packaging violated the UCL, CLRA and FAL because it stated that the product was "healthy" and "cholesterol free," although it contained artificial trans fat raising the level of "bad" LDL blood cholesterol and lowering the level of "good" HDL blood cholesterol. The court found that the plaintiff could prove that the packaging, including the "no cholesterol" statement, "could lead a reasonable consumer to conclude that the product contained no trans fat, i.e., that it would not increase LDL blood cholesterol levels." 733 F. Supp. 2d at 1129. The court noted that the term "healthy," like the term "nutritious" in Williams, was "difficult, if not impossible, to measure concretely," but refused to dismiss the claim for lack of an alleged misrepresentation. Id. at 1129-30.

Of the words and phrases on the product labels to which Plaintiff points, the only one that is particularly claimed to be false, analogous to the "fruit juice" statements in Williams, is the term "healthy fats" on the fourteen ounce Muscle Milk® RTD

label.  This representation is more specific than simply that the product is healthy.  As between saturated fats and unsaturated fats, the latter is the healthy fat.  A reasonable consumer would be likely to believe that the drink contains unsaturated, not saturated, fats.  The drink container also states that it is a "nutritional shake."  This representation, while "difficult to measure concretely" like a similar claim in <u>Williams</u>, contributes to a sufficient claim of deceptive product labeling.

Defendant contends that no reasonable consumer could be misled in light of the nutrient label on the package.  This argument is not persuasive.  As the <u>Williams</u> court said,

> We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

552 F.3d at 939-40.  <u>Yumul</u> similarly ruled that "where product packaging contains an affirmative misrepresentation, the manufacturer cannot rely on the small-print nutritional label to contradict and cure that misrepresentation."  733 F. Supp. 2d at 1129.

Plaintiff alleges that the "Healthy, Sustained Energy" claim on the RTD seventeen ounce container is false and misleading.  However, the term "healthy" is difficult to define and Plaintiff has not alleged that the drink contains unhealthy amounts of fat,

United States District Court
For the Northern District of California

13

saturated fat or calories from fat, compared to its protein content, based on any objective criteria. While Plaintiff alleges that Muscle Milk® RTD contains unspecified amounts of saturated fat that are equal to or exceed that in certain Krispy Kreme doughnuts, this analogy is not helpful. Plaintiff does not explain how much protein, vitamins and minerals are in such a doughnut or posit an objectively healthy ratio of protein to fat. Plaintiff has not alleged sufficiently that representing the drink as "healthy" on the RTD label was false and misleading.

Plaintiff also challenges the "Healthy, Sustained Energy" language on the label for the bars. However, that label reads, "25g PROTEIN FOR HEALTHY, SUSTAINED ENERGY." Plaintiff does not claim that the bars do not contain twenty-five grams of protein. Plaintiff alleges that the bars label is misleading because it contains the claim "0g Trans Fat" while the bars actually contain saturated fat, fractionated palm kernel oil and partially hydrogenated palm oil. However, she does not allege that these fats are trans fats.

Plaintiff also alleges misrepresentations made as part of Defendant's advertising. It is not clear what misrepresentations she refers to. To the extent that the claim is based on statements included in transit advertising, namely, "Go from cover it up to take it off," "From invisible to OMG!" and "From frumpy to fabulous," these statements are non-actionable puffery. Haskell v. Time, Inc., 857 F. Supp. 1392, 1399 (E.D. Cal. 1994)

United States District Court
For the Northern District of California

("The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions.").

Finally, Plaintiff complains of statements on Defendant's website, such as "Ready-to-Drink is an ideal nutritional choice [if] you are . . . on a diet."  The word "ideal" is vague, highly subjective, and non-actionable, like "superb, uncompromising quality," addressed in <u>Oesteicher v. Alienware Corp.</u>, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008), and "high-performance" and "top of the line," addressed in <u>Brothers v. Hewlett-Packard Co.</u>, 2006 WL 3093685, at *4-*5 (N.D. Cal. 2006).  In addition, Plaintiff alleges that the website description of Muscle Milk® Bars contains the same misleading claims that it is a "nutritious snack" that delivers "healthy, sustained energy."  These statements are addressed above.

Plaintiff alleges that Defendant has concealed material facts about its products, but does not specify what has been concealed and why it is material.

In sum, the sole cognizable misrepresentation that Plaintiff has plead is the "healthy fats" statement on the fourteen ounce Muscle Milk® RTD container, buttressed by the "nutritious snack" statement.

II. Injury

To assert a claim under the UCL and FAL, a private plaintiff must have lost money or property as a result of the violations.

United States District Court
For the Northern District of California

Kwikset v. Superior Court, 51 Cal. 4th 310, 321-22 (2011) (citing the UCL, Cal. Bus. & Prof. Code § 17204, and "materially identical language" in the FAL, § 17535).  Likewise, a plaintiff suing under the CLRA must allege damage, although the damage need not be economic.  See Meyer v. Sprint Spectrum, L.P., 45 Cal. 4th 634, 641 (2009).  To state a claim for fraud at common law, the alleged victim must have incurred damage as a result of the fraudulent deception.  In re Tobacco II Cases, 46 Cal. 4th 298, 312 (2009).

Plaintiff's complaint alleges an economic injury.  She claims that she was denied the benefit of her bargain.  She asserts economic harm based on the purchase of the products over less expensive, healthier competitive products, and claims that she would not have paid as much as she did, or would not have purchased the products at all, had she been aware of the misrepresentations.

Kwikset, 51 Cal. 4th at 323-25, 329-31, supports the adequacy of Plaintiff's allegations of injury.  In Kwikset, the California Supreme Court stated, "A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of [the UCL] by alleging . . . that he or she would not have bought the product but for the misrepresentation."  Id. at 330.  The court further explained that the allegation that the consumer paid more than he or she actually valued the product was such that the "extra money paid" amounted

to an economic injury.  Id. at 331.  See also, Degelmann v. Advanced Med. Optics Inc., 659 F.3d 835, 839-840 (9th Cir. 2011).

Plaintiff's allegations of injury are sufficient to claim that she lost money based on the alleged misrepresentations.

III. Reliance

A plaintiff seeking to prosecute a UCL and FAL claim is required to demonstrate actual reliance on the allegedly deceptive or misleading statements.  Kwikset, 51 Cal. 4th at 326.  The CLRA imposes a requirement that a violation "caus[e] or result[] in some sort of damage."  Meyer, 45 Cal. 4th at 641.  Common law fraud requires that the victim show reasonable reliance on the allegedly deceptive representation.  Tobacco II Cases, 46 Cal. 4th at 312.

In Kwikset, the plaintiffs alleged UCL and FAL claims that Kwikset falsely labeled certain locksets as "Made in the USA" or a similar designation.  Allegations that the plaintiffs saw and relied on the labels for their truth in purchasing the Kwikset locksets, and would not have purchased the locksets otherwise, were adequate to claim causation.  51 Cal. 4th at 327-28.  The court reasoned, "The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source."  Id. at 328.  Accordingly, the court held that a consumer who alleges that she would not have purchased a

17

product, but for a misrepresentation contained on the product's label, has sufficiently alleged reliance for purposes of a claim under section 17204 of the UCL. Id. at 330.

Defendant contends that Plaintiff has failed to allege that she relied on, or even read, misrepresentations or omissions made on the product labels or elsewhere. Plaintiff alleges that she was "exposed to" the product labels. 1AC ¶ 38. The quoted phrase is suspiciously vague, but because Plaintiff had to have had the labels in hand to consume the products, the Court construes this to imply that she read them. She alleges that she paid the amount she did for the products, or purchased them at all, based on specific, purported misrepresentations. Plaintiff has adequately claimed that she read and relied on the misleading label on the RTD containers, resulting in her economic harm.

On the other hand, Plaintiff has inadequately plead reliance on Defendant's long-term advertising campaign. Plaintiff does not plead that she actually saw and relied upon any particular statements in Defendant's advertising. Plaintiff relies on Tobacco II, 46 Cal. 4th at 327, which held that, in the context of a decades-long advertising campaign, a plaintiff need not demonstrate individualized reliance on the specific misrepresentations. However, Plaintiff has failed to allege that Defendant's advertising campaign approached the longevity and pervasiveness of the marketing at issue in Tobacco II.

Plaintiff's claims of reliance on misrepresentations on the website also fail. She does not plead that she read or relied on any statements on the website. In Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1363 (2010), the plaintiff likewise did not claim that he ever visited the defendant's website, containing the purported misrepresentations. Instead, the complaint merely alleged that as a "proximate result of [the defendant's] unlawful business practices," the plaintiff and putative class suffered economic damage. Id. The court found this insufficient. Id. at 1363-64.

Similarly, in Kearns, 567 F.3d at 1125-26, upon which Defendant relies, the plaintiff did not allege what the television advertisements or sales material at issue specifically stated, and did not allege when he was exposed to them or which he found material. Id. at 1126.

In sum, Plaintiff's claim that the "healthy fats" and "nutritious snacks" statements on the label for fourteen ounce Muscle Milk® RTD were misleading, her implication that she read the label and her claim that she relied on the label in deciding to buy the drink, when she otherwise would not have, is sufficient to state her claims. The other representations she complains of are not sufficiently plead.

IV. Unlawful and Unfair Business Practice

Defendant argues that Plaintiff has inadequately alleged unlawful and unfair business practices under the UCL. A

19

"violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." Berryman v. Merit Prop. Mgmt., 152 Cal. App. 4th 1544, 1554 (2007).  For the reasons explained above, Plaintiff has successfully alleged actionable misrepresentation under the UCL, FAL and CLRA, as well as California common law.  Dismissal of Plaintiff's claim under the unlawful prong of the UCL is not warranted.

The California Supreme Court has not established a definitive test to determine whether a business practice is unfair under the UCL.  See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 187 n.12 (1999) (stating that the test for unfairness in cases involving business competitors is "limited to that context" and does not "relate[] to actions by consumers.").

California courts of appeal have applied three different tests to evaluate claims by consumers under the UCL's unfair practices prong.  See, e.g., Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 735-736 (9th Cir. 2007); Drum v. San Fernando Valley Bar Ass'n, 182 Cal. App. 4th 247, 256 (2010).  Under one test, a consumer must allege a "violation or incipient violation of any statutory or regulatory provision, or any significant harm to competition." Drum, 182 Cal. App. 4th at 256.  The "public policy which is a predicate to a consumer unfair competition action under the 'unfair prong' of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." Id.

Under the second test, the "unfair prong" requires a consumer to plead that (1) a defendant's conduct "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and (2) "the utility of the defendant's conduct" is outweighed by "the gravity of the harm to the alleged victim." Id. at 257 (citation and internal quotation marks omitted).

Finally, the third test, which is based on the Federal Trade Commission's definition of unfair business practices, requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." Id. (citation and internal quotation marks omitted).

In Camacho v. Automobile Club of Southern California, 142 Cal. App. 4th 1394, 1402-03 (2006), the court declined to apply to consumer cases the first approach, which CelTech adopted for use in antitrust cases. Camacho reasoned that consumer cases are different from antitrust cases and that defining unfairness in connection with a public policy that is tethered to specific constitutional, statutory or regulatory provisions did not comport with the broad scope of the UCL. Id. at 1403. Camacho found that this approach did not recognize that a practice can be unfair even if it is not unlawful. Id. Camacho also concluded that Cel-Tech disapproved the second approach to unfairness because "[d]efinitions that are too amorphous in the context of

anticompetitive practices are not converted into satisfactorily precise tests in consumer cases." Id. at 1202. Camacho posited that the key to the definition of unfairness was provided in Cel-Tech itself, which indicated that the Federal Trade Commission Act could be used as guidance. Id. at 1403 (citing Cel-Tech, 20 Cal. 4th at 185). Thus, Camacho adopted the third approach described above, reasoning that this definition of unfairness was relevant to consumers and comported with the broad scope of the UCL. Id.

Several appellate courts and federal district courts have adopted Camacho's reasoning and applied the third test for unfairness in UCL consumer actions. See e.g., Davis v. Ford Motor Credit Co., 179 Cal. App. 4th 581, 596-97 (2009); Daugherty v. American Honda Motor Co., Inc., 144 Cal. App. 4th 824, 839 (2006); Kilgore v. Keybank, 712 F. Supp. 2d 939, 951-52 (N.D. Cal. 2010), overruled on other grounds, 2012 WL 718344 (9th Cir. 2012); Barriga v. JPMorgan Chase Bank, N.A., 2010 WL 1037870, *3 (N.D. Cal.). The Court is persuaded that the California Supreme Court would adopt the Camacho approach to unfairness in UCL consumer cases, and thus applies it in this case.

In this action, if the product labeling is determined to be false or misleading, the injury to the consumer class as a whole could be substantial, even if the injury to individual consumers is minimal. No benefit is served by false and misleading advertising that outweighs injury to either the class or an individual consumer. While consumers could arguably avoid the

22

injury by reading the product label in full, misleading labels
would appear to qualify as an unfair business practice.  Thus,
Plaintiff has plead an unfair business practice under the UCL.

IV. Unjust Enrichment

Defendant seeks dismissal of Plaintiff's cause of action for
unjust enrichment, asserting, "There is no cause of action in
California for unjust enrichment." Durell, 183 Cal. App. 4th at
1370 (alterations omitted).

California courts appear to be split on whether there is an
independent cause of action for unjust enrichment.  Baggett v.
Hewlett-Packard Co., 582 F. Supp. 2d 1261, 1270-71 (C.D. Cal.
2007) (applying California law).  One view is that unjust
enrichment is not a cause of action, or even a remedy, but rather
a general principle underlying various legal doctrines and
remedies.  McBride v. Boughton, 123 Cal. App. 4th 379, 387 (2004).
In McBride, the court construed a "purported" unjust enrichment
claim as a cause of action seeking restitution.  Id.  There are at
least two potential bases for a cause of action seeking
restitution: (1) an alternative to breach of contract damages when
the parties had a contract which was procured by fraud or is
unenforceable for some reason; and (2) where the defendant
obtained a benefit from the plaintiff by fraud, duress,
conversion, or similar conduct and the plaintiff chooses not to
sue in tort but to seek restitution on a quasi-contract theory.
Id. at 388.  In the latter case, the law implies a contract, or

quasi-contract, without regard to the parties' intent, to avoid unjust enrichment.  Id.

Another view is that there is a cause of action for unjust enrichment and its elements are receipt of a benefit and unjust retention of the benefit at the expense of another.  Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000); First Nationwide Sav. v. Perry, 11 Cal. App. 4th 1657, 1662-63 (1992).

Here Plaintiff alleges that Defendant fraudulently induced her to purchase its Muscle Milk® products and retained a benefit at her expense, entitling her to restitution.  A quasi-contract may be imposed to prevent Defendant's unjust enrichment.  Plaintiff's claim for unjust enrichment, construed as a cause of action for restitution, does not warrant dismissal.

V. Standing

Defendant moves to dismiss Plaintiff's claims under the UCL, FAL and CLRA for failure to allege standing as required under those statutes, and to dismiss all claims for lack of Article III standing.  Standing under the UCL and the FAL is narrower than Article III standing in that standing under those statutes "requires a particular kind of injury in fact--loss of 'money or property,'" as well as a "causal connection" between the alleged UCL violation and the purported injury in fact.  Rubio v. Capital One Bank, 613 F.3d 1195, 1204 n.3 (9th Cir. 2010).  Accordingly, "a UCL plaintiff must always have Article III standing in the form of economic injury."  Degelmann, 659 F.3d at 839.

**United States District Court**
For the Northern District of California

As discussed above, Plaintiff has sufficiently alleged a misrepresentation, economic injury in the form of her unwarranted purchase of the RTD product, and reliance on the misrepresentation in doing so.  This is sufficient to confer standing to pursue her UCL and FAL claims under California law.

The CLRA's standing requirement is more easily satisfied than that under the UCL and the FAL, in that the allegedly unlawful practice must only have caused damage to the plaintiff.  See Meyer, 45 Cal. 4th at 641 ("[I]n order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result.").  Unlike the UCL and FAL, the statutory language of the CLRA does not on its face require economic damage.  Plaintiff's allegations are sufficient.

Article III standing is also more easily satisfied.  A plaintiff must show: "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision."  Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1225 (9th Cir. 2008).

Defendant's sole argument that Plaintiff lacks Article III standing is that Plaintiff has not alleged an injury.  But a plaintiff who has standing under the UCL, as Plaintiff has, will also satisfy Article III standing.  See Degelmann, 659 F.3d at 839.

In sum, Plaintiff has standing to assert all of her claims that are adequately stated.

VI. Preemption

Defendant seeks dismissal of this action, or, in the alternative, a stay of the proceedings based on the primary jurisdiction doctrine. "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008). "[T]he doctrine is a 'prudential' one," rather than one that indicates that the court lacks jurisdiction. Id. No "fixed formula" exists for applying the doctrine of primary jurisdiction. Id. at 1115. However, the Ninth Circuit has traditionally examined the following factors: "(1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." Id. (internal alteration and quotation marks omitted).

Dismissal and a stay are unwarranted in this case because Defendant has failed to demonstrate that Plaintiff's claims under California law require the FDA's scientific or technical expertise. Plaintiff's complaint is not based on the FDA's warning that the product labels violate its regulations. Rather,

26

the reasonable consumer test will be used to resolve Plaintiff's claims alleging false and misleading representations on the products' packaging. The reasonable consumer determination and other issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve.

CONCLUSION

Defendant's motion to dismiss is granted, except to the extent that it challenges Plaintiff's claims based on the misrepresentations on the fourteen ounce Muscle Milk® RTD packaging. Dismissal is with leave to amend. Plaintiff may file an amended complaint within seven days, remedying the defects addressed above if she is able truthfully to do so without contradicting the allegations in her original complaint. Plaintiff may not add any additional causes of action without leave of the Court. Defendant's request to dismiss or stay the proceedings based on the primary jurisdiction doctrine is denied.

IT IS SO ORDERED.

Dated: 4/11/2012

CLAUDIA WILKEN
United States District Judge