1 | Roland Tellis (SBN 186269)
rtellis@baronbudd.com
2 | Mark Pifko (SBN 228412)
mpifko@baronbudd.com
3 | Natasha Mehta (SBN 272241)
nmehta@baronbudd.com
4 | BARON & BUDD, P.C.
1999 Avenue of the Stars, Suite 3450
5 | Los Angeles, California 90067
6 | Telephone: (310) 860-0476
Facsimile: (310) 860-0480
7 |
8 | Attorneys for Plaintiff
CLAIRE DELACRUZ individually, and
9 | on behalf of other members of
the public similarly situated
10 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| CLAIRE DELACRUZ, individually, and on behalf of other members of the general public similarly situated, | Case Number: 4:11-cv-03532-CW |
|---|---|
| | **CLASS ACTION** |
| Plaintiff, | **SECOND AMENDED COMPLAINT FOR:** |
| vs. | (1)    Violation of the Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*); |
| CYTOSPORT, INC., a California Corporation, | (2)    Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); |
| Defendant. | (3)    Violation of False Advertising Law (Cal. Bus. & Prof. Code §§ 17500 *et seq.*); |
| | (4)    Fraud; |
| | (5)    Negligent Misrepresentation; and |
| | (6)    Unjust Enrichment |
| | **Jury Trial Demanded** |

Plaintiff CLAIRE DELACRUZ ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, alleges as follows:

## NATURE OF THE ACTION

1.     This is a consumer class action regarding Defendant Cytosport, Inc.'s unfair, unlawful, deceptive, and misleading practices conducted in violation of California state and common law.  This action involves "Muscle Milk® Ready-To-Drink (RTD)" and "Muscle Milk® Bars" products (the "Products") that are manufactured and marketed by Defendant Cytosport, Inc. ("Defendant" or "Cytosport").

2.     In connection with its marketing of the Products, Cytosport makes representations and omissions that are intended to mislead consumers to believe that the Products are healthy, and nutritious, and should be regularly consumed to help them live a healthy lifestyle.  Contrary to Cytosport's representations and omissions, however, with significant amounts of fat, saturated fat, added sugars, sodium, and other unhealthy ingredients, such as fractionated oils and artificial sweeteners, the Products are nothing more than junk food.

3.     The Dietary Guidelines for Americans, published by the United States Department of Agriculture and United States Department of Health and Human Services (the "DGA"), discusses two categories of food: (i) "Foods and Food Components to Reduce"; and (ii) "Foods and Nutrients to Increase."  As the DGA explains, the saturated fats, trans fats, and added sugars in the Products are food components that consumers should reduce or avoid.  Contrary the representations Cytosport makes to increase its sales, consumers should not regularly consume the Products for a "healthy" lifestyle.

4.     To distract from the unhealthy ingredients in the Products, Cytsport's product labels and marketing features the protein in the Products.  That the Products provide protein does not make them healthy.  According to the DGA, "[i]nadequate protein intake in the United States is rare."  (DGA at 15.)  Americans already eat too much protein.  Dr. Van S. Hubbard, director of the National Institute of Health, Division of Nutrition Research Coordination, says, "[s]ince protein is such a common component of most foods

that you eat, if you're eating a relatively varied diet, you're getting enough protein."[1] Dr. Hubbard further states, "there is skimpy, if any, data that it's better to eat protein in supplement form than in food."[2] Indeed, as reported in government dietary intake surveys, Americans eat an average of 82 grams of protein per day.[3] This amount is much greater than most people need and is about twice the minimum required for growth and maintenance for certain segments of the population as set forth by the Recommended Dietary Allowances ("RDAs").[4] The current RDA for protein is .8 gram/kg body weight.[5] For example, the RDA for a 120 pound woman is 44 grams of protein, and the RDA for a 170 pound male is 62 grams protein.[6] Protein is very easy to obtain from naturally occurring sources, and the DGA advises consumers to eat natural sources of protein.[7] In fact, some experts have concluded that too much protein can have detrimental effects on health.[8]

    5.    Nevertheless, by prominently featuring, on the front of the package, the claim "Healthy, Sustained Energy" in connection with the statements "Protein Nutrition Shake" and "25g PROTEIN" on Muscle Milk® Ready-To-Drink (RTD), and the claims "25g PROTEIN for Healthy, Sustained Energy" and "0g Trans Fat" on Muscle Milk® Bars, Cytosport falsely represents the healthy and nutritious nature of the Products, and

---

[1] National Institute of Health: News in Health, *Making and Maintaining Muscle, How Much Protein Do You Need?* (2008).

[2] *Id.*

[3] USDA, *Nutrient Intakes from Food: Mean amounts and percentages of calories from protein, carbohydrate, fat, and alcohol, one day, 2005-6* (2008), available at www.ars.usda.gov/ba/bhnrc/fsrg (last visited Apr. 16, 2012).

[4] Institute of Medicine. National Academy Press, *Dietary Reference Intake Series* (2011).

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] Eisenstein, J., Roberts, S. B., Dallal, G., & Saltzman, E., High-protein weight-loss diets: are they safe and do they work? A review of the experimental and epidemiologic data, *Nutrition Reviews.* 2002;60(7), 189-200.

misleads consumers. Such claims, along with phrases like "healthy fats" and "good carbohydrates," draw consumer attention away from the unhealthy ingredients, including fat, saturated fat, and added sugars. Furthermore, Cytosport reinforces its false and misleading claims with similar misrepresentations, including stating that the Products are "premium," "healthy" products that should be consumed as part of a "healthy lifestyle," before workouts and after workouts.

6.    The central message of these claims is that the Products are *not* loaded with unhealthy fats and added sugars, and that consuming them provides a wide range of significant nutritional benefits. This message, however, is false, misleading, deceptive, and unfair. Cytosport has profited enormously from their deceptive marketing of the Products. Consumers are increasingly health-conscious, and to increase consumption of the Products, Cytosport's deceptive marketing intentionally plays into consumers' concerns. Indeed, with the launch of its "Just Look Good" campaign, Cytosport's Chief Marketing Officer, Nikki Brown, explained that Muscle Milk® advertisements were designed to "speak[] to mainstream consumers such as health conscious college students."[9] Nikki Brown has also stated that rather than market to weightlifters who are looking to bulk up, Cytosport markets Muscle Milk® Ready-To-Drink (RTD) as a "healthy alternative beverage" for people with active lifestyles. As a result, Cytosport commands a premium price for the Products, using health claims to distinguish them from other products.

7.    Cytosport's misrepresentations about the Products—including its use of the healthy sounding "Muscle Milk" name and its false and misleading nutrient content claims—bombard consumers with a message of purported benefits, and draw consumer attention away from the significant amount of total fats, saturated fats, and otherwise unhealthful nature of the Products. Furthermore, because the majority of the ingredients

---

[9] *See* "Muscle Milk® Builds Popularity With Television Debut, Online Videos," PR Newswire, April 1, 2010, available at http://www.prnewswire.com/news-releases/muscle-milkr-builds-popularity-with-television-debut-online-videos-89708732.html (last visited Aug. 24, 2011).

in the Products are only identified with technical terms that have little or no meaning to the reasonable person, consumers have no choice but to rely on the readily understood health claims Cytosport features on the package labels and in the advertising for the Products.

8.      Reasonable consumers should not be forced to look beyond the misleading representations prominently featured on the Product's packaging, marketing, advertising, and promotional materials to try and discover the truth from a list of confusing and scientifically complex ingredients identified in small print on the back of the label. Instead, reasonable consumers should be able to trust that Cytosport's representations are consistent with the ingredient list, and not the opposite, as is the case with Muscle Milk® Ready-To-Drink (RTD) and Muscle Milk® Bars.

## JURISDICTION AND VENUE

9.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the class of plaintiffs are citizens of states different from Defendant.  Further, greater than two-thirds of the Class Members reside in states other than the states in which Defendant is a citizen.  In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that plaintiffs ordinarily would expect to try them in one judicial proceeding.

10.      Venue lies within this judicial district pursuant to 28 U.S.C. § 1391(a) & (c) because Defendant's contacts are sufficient to subject it to personal jurisdiction in this District, and therefore, Defendant resides in this District for purposes of venue.

## PARTIES

11.     Plaintiff Claire Delacruz, an individual, is a California resident.

12.     Defendant CYTOSPORT, INC. is a California corporation who is authorized to do and, is in fact, doing business in the State of California, with its principal place of business located at 4795 Industrial Way, Benicia, California  94510.

13.     Whenever, in this Complaint, reference is made to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of Defendant.

## FACTUAL BACKGROUND

### CYTOSPORT'S EXTENSIVE AND LONG-TERM ADVERTISING CAMPAIGN CONCERNING THE PRODUCTS

14.     Cytosport has marketed the Products using an extensive and long-term advertising campaign that began in 2004 and has continued through today.

15.     According to the Declaration of Roberta White, Cytosport's Vice President of Corporate Development, dated February 20, 2009, filed in the action captioned as *Cytosport, Inc. v. Vital Pharmaceuticals, Inc.* (E.D. Cal. 2:08-cv-02632-JAM-GGH), signed by Ms. White under penalty of perjury, "Cytosport has spent tens of millions of dollars promoting and advertising the MUSCLE MILK® ready-to-drink product . . . and has spent over $100 million dollars promoting the MUSCLE MILK® brand generally. . . . Cytosport distributes its MUSCLE MILK® products through a distribution network to retail outlets comprising specialty health and nutrition stores, gyms, grocery chains, convenience stores, and warehouse outlet stores."

16.     Additionally, according to Ms. White's declaration, "Cytosport advertises the MUSCLE MILK® ready-to-drink product over the Internet, in magazines, on billboards, through paid professional endorsements, agreements with academic institutions, at tradeshows, sporting events, bodybuilding competitions, and through other media outlets.

. . . Cytosport's MUSCLE MILK® product is endorsed by a wide variety of athletes, including, but not limited to NFL greats, Jerry Rice, Rich Gannon and Adrian Peterson."

17.    Ms. White also declared, "[s]ince November 2004, Cytosport has sold the MUSCLE MILK® pre-mixed, liquid nutritional product using a distinctive number of elements in conjunction with the MUSCLE MILK® trademark. . . .Cytosport has used a consistent look and feel in the promotion and sale of its MUSCLE MILK® products, including . . . MUSCLE MILK® Ready-to-Drink, . . . [and] MUSCLE MILK® bars."

18.    Finally, according to Ms. White, Cytosport has been using the MUSCLE MILK mark in connection with "nutritional supplements" since 1999, and in connection with "meal replacement drinks," and "protein based, nutrient-dense meal replacement bars" since 2001.

1

### MUSCLE MILK® READY-TO-DRINK (RTD)

2

**Representations on the Packaging of
Muscle Milk® Ready-To-Drink (RTD)**

3

4          19.     Cytosport sells Muscle Milk® Ready-To-Drink (RTD).

5          20.     On the front of the packaging for the 14-oz. size of Muscle Milk® Ready-To-

6     Drink (RTD), Cytosport makes the claim "Healthy, Sustained Energy" in connection with

7     the statements "Protein Nutrition Shake" and "25g PROTEIN."

8          21.     Additionally, the packaging of the 14-oz. size of Muscle Milk® Ready-To-

9     Drink (RTD) contains the following statement:

10                              YOUR BODY IS THE MOST AMAZING
                               HIGH TECH PERFORMANCE MACHINE
11                                      ON THE PLANET.

12
                                   TREAT IT LIKE ONE.
13

14                              MUSCLE MILK IS AN IDEAL BLEND
                                  OF PROTEIN, HEALTHY FATS,
15                                   GOOD CARBOHYDRATES
                                AND 20 VITAMINS AND MINERALS
16                               TO PROVIDE SUSTAINED ENERGY,
                                  SPUR LEAN MUSCLE GROWTH
17                               AND HELP PROVIDE RECOVERY
                                       FROM TOUGH DAYS
18                                AND TOUGHER WORKOUTS.

19
                                TO REACH YOUR TRUE POTENTIAL,
20                             GIVE YOUR BODY THE FUEL IT DESERVES.

21

22

23

24

25

26

27

28

22.     The packaging of the 14-oz. size of Cytosport's Muscle Milk® Ready-To-Drink (RTD) appears as follows:

| Front | Front | Back |
| *(phased out of production, starting in Feb. 2011)* | *(first placed in stream of commerce Feb. 2011)* | |

  

23.     As used by Cytosport on the package of the 14-oz. size of Muscle Milk® Ready-To-Drink (RTD), the phrases "healthy fats" and "good carbohydrates" are false and misleading.

24.     Contrary to Cytosport's "healthy fats" representation, Muscle Milk® Ready-To-Drink (RTD) contains saturated fat, which is an unhealthy fat.  In response to the question, "[w]hat are the 'bad' fats and which foods contain them," the American Heart

Association ("AHA") specifically states, "[t]he 'bad' fats are saturated and trans fats."[10] Saturated fat is the main dietary cause of high blood cholesterol, and saturated fats in foods raises blood cholesterol levels more than cholesterol from eggs and other high cholesterol foods.  Consumption of saturated fats has been shown to cause heart disease and other serious health problems.  The DGA states that Americans should consume 0-10% of calories from saturated fats,[11] and the American Heart Association recommends limiting saturated fat intake to less than 7% of one's total daily calories.

25.     Similarly, contrary to Cytosport's "good carbohydrates" representation, Muscle Milk® Ready-To-Drink (RTD) also contains the simple sugar fructose.  Fructose consumption has been linked to lipid dysregulation, increased visceral adiposity, and decreased insulin sensitivity, all which have been linked to cardiovascular disease and type 2 diabetes.  Fructose may also elevate blood triglyceride levels, a characteristic feature of the metabolic syndrome.[12]  Muscle Milk® Ready-To-Drink also contains acesulfame potassium (a/k/a Acesulfame K) and sucralose.  Plaintiff is informed and believes, and on that basis, alleges that Acesulfame K is an artificial sweetener, manufactured by Hoechst, a German chemical company.  Acesulfame K is about 200 times sweeter than sugar, and has been linked to cancer.  Similarly, sucralose poses safety concerns because it is highly processed and it is not metabolized.  Both acesulfame K and sucralose are identified by Whole Foods Market, a retailer that specializes in "organic"

---

[10] *Frequently Asked Questions About 'Bad' Fats: What are the 'bad' fats and which foods contain them?*, American Heart Association, May 21, 2010, available at: http://www.heart.org/HEARTORG/General/Frequently-Asked-Questions-About-Bad-Fats_UCM_306349_Article.jsp (last visited Apr. 17, 2012).

[11] *Dietary Guidelines for Americans, 2010*, USDA and HHS, available at: http://www.health.gov/dietaryguidelines/dga2010/DietaryGuidelines2010.pdf (last visited Apr. 16, 2012); *see also, Report of the DGAC on the dietary guidelines for Americans*, USDA and HHS, *2010.* http://www.cnpp.usda.gov/DGAs2010-DGACReport.htm  (last visited Apr. 16, 2012).

[12] Nestle M, Nesheim M., *Why Calories Count: From Science to Politics*, University of California Press (2012); Stanhope, K. L., & Havel, P. J., Fructose consumption: recent results and their potential implications. *Annals of the New York Academy of Sciences* (2010).

and "healthy" foods, as being "Unacceptable Ingredients for Food."[13]

## Representations on Cytosport's Website
## Concerning Muscle Milk® Ready-To-Drink (RTD)

26.     Cytosport's misrepresentations concerning Muscle Milk® Ready-To-Drink (RTD) are compounded by the representations it makes on its website.

27.     A portion of the webpage for the 14-oz. size of Cytosport's  Muscle Milk® Ready-To-Drink (RTD) appears as follows:



28.     On the Muscle Milk® Ready-To-Drink (RTD) page of Cytosport's website, Cytosport claims that Muscle Milk® Ready-To-Drink (RTD) "promotes healthy sustained energy," and that it provides "healthy fats" and "good carbohydrates."

29.     To increase sales and profits from these misrepresentations, on its website, Cytosport also instructs consumers on "How to use Muscle Milk," telling them to use it to

---

[13] *See* http://www.wholefoodsmarket.com/products/unacceptable-ingredients.php (last visited Apr. 16, 2012).

meet their "nutritional goals" and to use it multiple times a day, including "1.5 – 2 hours prior to training," "30-45 minutes after workouts," and "in between meals as a protein-enhanced snack," or even "in conjunction with meals."

### Representations in Cytosport's Television Commercials Concerning Muscle Milk® Ready-To-Drink (RTD)

30.    Cytosport also advertises its Muscle Milk® Ready-To-Drink (RTD) product on television.  Cytoport's television advertisements feature images of the label from 14-oz. size of the Muscle Milk® Ready-To-Drink (RTD), and republish the false and misleading claim "Healthy, Sustained Energy" in connection with the statements "Protein Nutrition Shake," "25g PROTEIN," and "It's powerful protein."

31.    A screen shot of Cytosport's television advertisement is as follows:



Case No. 4:11-cv-03532-CW

SECOND AMENDED CLASS ACTION COMPLAINT

**MUSCLE MILK® BARS**

**Representations on the Packaging of**
**Muscle Milk® Bars**

32.     Cytosport also sells "Muscle Milk® Bars."  Prominently stated on the packaging of its "Muscle Milk® Bars" product, Cytosport claims "25g PROTEIN for healthy, sustained energy," "and "0g trans fat."

33.     The packaging of Cytosport's "Muscle Milk® Bars" product appears as follows:



34.     Cytosport's 73 gram (2.57 oz.) Muscle Milk® Bars are less healthy than a similarly-sized 58.7 gram (2.07 oz.) Snickers® bar.  Muscle Milk® Bars contain as many calories, and as much sugar, and more grams of saturated fat and sodium than a Snickers® bar.  Muscle Milk® Bars also contain unhealthy ingredients like fractionated palm kernel oil and partially hydrogenated palm oil.  And although Muscle Milk® Bars contain 25 grams of protein, it does make them healthy.  As discussed above, Americans do not need to supplement their diets with protein.

35.     With 11 grams of total fat (one third of the total caloric content), 8 grams of saturated fat and almost no vitamins and minerals, contrary to Cytosport's "25g PROTEIN for healthy, sustained energy," claim, Muscle Milk® Bars are equivalent to fat-laden junk food.  Cytosport's false and misleading claims are compounded by the fact that Cytosport's "Vanilla Toffee Crunch" flavored Muscle Milk® Bars actually contain 13 grams of total fat and 10 grams of saturated fat, not the 10 grams of total fat and 8 grams of saturated fat stated on the label.  Therefore, Cytosport's "Vanilla Toffee Crunch"

flavored Muscle Milk® Bars contain 30% more total fat and 25% more saturated fat than stated on the product label.

36.     As discussed above, saturated fat is the main dietary cause of high blood cholesterol, and the consumption of saturated fats has been shown to cause heart disease and other serious health problems.

37.     Muscle Milk® Bars also contain unhealthy ingredients like fractionated palm kernel oil, and partially hydrogenated palm oil, a trans fat.  Plaintiff is informed and believes, and on that basis, alleges that palm oil is high in saturated fat and is often used as a substitute for partially hydrogenated vegetable oil (*i.e.*, trans fat).  Plaintiff is informed and believes, and on that basis, alleges that studies, however, have suggested that palm oil may be just as unhealthy as partially hydrogenated vegetable oil.[14] Additionally, Plaintiff is informed and believes, and on that basis, alleges that the World Health Organization has convincingly linked palmitic acid, which is present in palm oil, to increased risk of cardiovascular disease.[15]

38.     Plaintiff is informed and believes, and on that basis, alleges that palm oil can be processed to create variants, including palm kernel oil and fractionated palm kernel oil. Plaintiff is informed and believes, and on that basis, alleges that the healthful aspects of natural palm oil, if any, are largely lost in the processing.  Indeed, of all the varieties of palm oil, Plaintiff is informed and believes, and on that basis, alleges that the form that is used in Muscle Milk® Bars, fractionated palm kernel oil, is the least healthy.[16]  Plaintiff is informed and believes, and on that basis, alleges that palm kernel oil is a cheap, unhealthy

---

[14] *See* "Palm Oil Not A Healthy Substitute For Trans Fats, Study Finds," *Science News*, May 11, 2009, available at http://www.sciencedaily.com/releases/2009/05/090502084827.htm (last visited August 23, 2011).

[15] *See* "Diet, Nutrition and the Prevention of Chronic Diseases," World Health Organization (2003) pp. 81-82, available at http://www.who.int/hpr/NPH/docs/who_fao_expert_report.pdf (last visited August 23, 2011).

[16] *See* "Tropical Oils:  What's Healthy?  What's Not?," Dr. Andrew Weil, M.D., October 18, 2002 (updated March 30, 2005), available at http://www.drweil.com/drw/u/id/QAA118473 (last visited August 24, 2011).

1   fat, and unlike ordinary palm oil, palm kernel oil cannot be obtained organically.  Instead,

2   Plaintiff is informed and believes, and on that basis, alleges that palm kernel oil must be

3   extracted from the pit with a gasoline-like hydrocarbon solvent.  Plaintiff is informed and

4   believes, and on that basis, alleges that fractionation is a further phase of palm oil

5   processing, designed to extract and concentrate specific fatty acid fractions.  Plaintiff is

6   informed and believes, and on that basis, alleges that fractionated palm oil, as found in

7   food products, has a higher concentration of saturated fat than regular palm oil and is used

8   for the convenience of manufacturers like Cytosport who like its stability and melting

9   characteristics.

10      39.     Plaintiff is informed and believes, and on that basis, alleges that the National

11   Institute of Diabetes and Digestive and Kidney Diseases urges people to "[c]ut back on

12   foods high in saturated fat or cholesterol, such as . . . foods with palm oil."[17]  Similarly,

13   Plaintiff is informed and believes, and on that basis, alleges that the AHA warns against

14   "bad" fats and foods that contain them, stating that "palm oil, palm kernel oil, and coconut

15   oil, also contain primarily saturated fats."[18]

### Representations on Cytosport's Website
### Concerning Muscle Milk® Bars

18      40.     As is the case with the company's Muscle Milk® Ready-To-Drink (RTD)

19   product, Cytosport's misrepresentations and omissions concerning its Muscle Milk® Bars

20   are compounded by the representations it makes on its website.

---

[17] *See* "Prevent Diabetes Problems:  Keep Your Heart and Blood Vessels Health," National Institute of Diabetes and Digestive and Kidney Diseases, National Institutes of Health (2003) NIH Publication No. 03-4283, available at http://diabetes.niddk.nih.gov/dm/pubs/complications_heart/heart.pdf (last visited August 24, 2011).

[18] *See* "Frequently Asked Questions About 'Bad' Fats:  What are the 'bad' fats and which foods contain them?," American Heart Association, May 21, 2010, available at http://www.heart.org/HEARTORG/General/Frequently-Asked-Questions-About-Bad-Fats_UCM_306349_Article.jsp (last visited Apr. 17, 2012).

41.    The webpage for Cytosport's  Muscle Milk® Bars appears as follows:



42.    Among other things, on its website, Cytosport claims that when its customers consume Muscle Milk® Bars, "there's no question [they are] getting a nutritious snack," and that "Muscle Milk Bars are loaded with 25 grams of high-quality muscle source protein," and "Muscle Milk Bars deliver . . . healthy sustained energy."

## CYTOSPORT'S LABELS FOR THE PRODUCTS ARE MISLEADING BECAUSE THEY ARE MISBRANDED

### LAWS AND REGULATIONS CONCERNING FOOD PRODUCT LABELS

43.    Identical federal and California laws regulate the content labels on packaged food.  The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law, California Health & Safety Code section 109875 *et seq*. (the "Sherman Law").  Under FDCA section 403(a), a food product is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label.  21 U.S.C. § 343(a).

44.    Under the Sherman Law, California has expressly adopted the federal

labeling requirements as its own, stating, "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect January 1, 1993, or adopted on or after that date shall be the food regulations of this state." California Health & Safety Code § 110100.

45.     Additionally, under California Health & Safety Code section 110660, food products are misbranded if their labeling fails to conform to the requirements for nutrient labeling set forth under Title 21 United States Code section 343(q) and the regulations adopted under that Section.  Under California Health & Safety Code section 110670, food products are misbranded if their labeling fails to conform to the requirements for nutrient content and health claims under Title 21 United States Code section 343(r) and the regulations adopted under that Section.

46.     Under Section 403 of the FDCA, a statement that characterizes the level of a nutrient in a food is a "nutrient content claim," and such claims can only be made if they comply with laws regulating those claims.  21 U.S.C. § 343(r)(1)(A).

47.     Under Section 110670 of the Sherman Law, California has expressly adopted the requirements of Title 21 United States Code section 343(r).

### Nutrient Content Claims

48.     Nutrient content claims are claims about specific nutrients contained in a product.  They are typically made on the front of packaging in a font large enough to be read by the average consumer.  Because nutrient content claims are relied on by consumers when the decide whether to purchase food products, regulations govern the claims so that companies do not mislead consumers.

49.     Section 403(r)(1)(A) of the FDCA governs the use of "expressed" and "implied" nutrient content claims on food product labels that are intended for sale for human consumption.  21 C.F.R. § 101.13.

### Expressed Nutrient Content Claims

50.     An "expressed nutrient content claim" is defined as any direct statement about the level (or range) of a nutrient in the food (e.g., "low sodium" or "contains 100

calories"). 21 C.F.R. § 101.13(b)(1).

51. Title 21 Code of Federal Regulations section 101.13 provides the general requirements for certain expressed nutrient content claims. Section 101.13 has expressly been adopted under California Health & Safety Code section 110100. Section 101.13 requires that manufacturers include certain disclosures when certain types of nutrient claims are made and, at the same time, the product also contains unhealthy components, such as fat, saturated fat, cholesterol and sodium at specific levels that the FDA has found to increase risk of certain diet-related diseases or health-related conditions.

52. Section 101.13 sets forth the manner in which such disclosures must be made, stating as follows:

> (h)(1) If a food . . . contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, . . . then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for – content" with the blank filled in with the identity of the nutrient exceeding the specified level, e.g., "See nutrition information for fat content."

> (4)(i) The disclosure statement 'See nutrition information for [fat, saturated fat, cholesterol, or sodium] content' shall be in easily legible boldface print or type, in distinct contrast to other printed or graphic matter, and in a size no less than that required by § 101.105(i) for the net quantity of contents statement, except where the size of the claim is less than two times the required size of the net quantity of contents statement, in which case the disclosure statement shall be no less than one-half the size of the claim but no smaller than one-sixteenth of an inch, unless the package complies with § 101.2(c)(2), in which case the disclosure statement may be in type of not less than one thirty-second of an inch.

> (ii) The disclosure statement shall be immediately adjacent to the nutrient content claim and may have no intervening material other than, if applicable, other information in the statement of identity or any other information that is required to be presented with the claim under this section (e.g., see paragraph (j)(2) of

this section) or under a regulation in subpart D of this part (e.g.,
see §§ 101.54 and 101.62).  If the nutrient content claim appears
on more than one panel of the label, the disclosure statement
shall be adjacent to the claim on each panel except for the panel
that bears the nutrition information where it may be omitted.

<u>Implied Nutrient Content Claims</u>

53.   An "implied nutrient content claim" is defined as any claim that:
(i) describes the food or an ingredient therein in a manner that suggests that a nutrient is
absent or present in a certain amount (e.g., "high in oat bran"); or (ii) suggests that the
food, because of its nutrient content, may be useful in maintaining healthy dietary
practices and is made in association with an explicit claim or statement about a nutrient
(e.g., "healthy, contains 3 grams (g) of fat").  21 C.F.R. § 101.13(b)(2)(i-ii).

54.   Title 21 Code of Federal Regulations section 101.65 provides the general
requirements for implied nutrient content claims and related label statements.  Section
101.65 has expressly been adopted under California Health & Safety Code section
110100.

55.   Section 101.65 requires that manufacturers include certain disclosures when
certain types of implied nutrient content claims are made and, at the same time, the
product also contains unhealthy components, such as fat, saturated fat, cholesterol and
sodium at specific levels that the FDA has found to increase risk of certain diet-related
diseases or health-related conditions.

56.   Section 101.65 sets forth the manner in which such disclosures must be
made, stating as follows:

(d) General nutritional claims . (1) This paragraph covers
labeling claims that are implied nutrient content claims because
they:

(i) Suggest that a food because of its nutrient content may help
consumers maintain healthy dietary practices; and

(ii) Are made in connection with an explicit or implicit claim or
statement about a nutrient (e.g., "healthy, contains 3 grams of

fat").

(2) You may use the term "healthy" or related terms (e.g., "health," "healthful," "healthfully," "healthfulness," "healthier," "healthiest," "healthily,' and "healthiness") as an implied nutrient content claim on the label or in labeling of a food that is useful in creating a diet that is consistent with dietary recommendations if:

(i) The food meets the following conditions for fat, saturated fat, cholesterol, and other nutrients:

**The fat level must be...**

Low fat as defined in § 101.62(b)(2) [3 g or less per RACC]

**The saturated fat level must be...**

Low saturated fat as defined in § 101.62(c)(3) [1 g or less per RACC]

**The cholesterol level must be...**

The disclosure level for cholesterol specified in § 101.13(h) or less [60 milligrams (mg) of cholesterol per RACC]

**The food must contain...**

At least 10 percent of the RDI ["RDI" means Reference Daily Intake (§ 101.9(c)(8)(iv))] or the DRV ["DRV" means Daily Reference Value (§ 101.9(c)(9))] per RA ["RA" means Reference Amount Customarily Consumed per Eating Occasion (§ 101.12(b))] of one or more of vitamin A, vitamin C, calcium, iron, protein or fiber

**The sodium level must be...**

480 mg or less sodium per RA

SECOND AMENDED CLASS ACTION COMPLAINT

### The Products Are Misleading and Misbranded Because
### Cytosport Makes Improper Nutrient Content Claims

57.    Cytosport's labels for the Products are misleading to Plaintiff and other reasonable consumers because they are misbranded.  Specifically, to increase sales and profits, Cytosport promotes the Products through the use of misleading nutrient content claims on its labels.

58.    Cytosport's misleading nutrient content claims include:  (i) Cytosport's "Healthy, Sustained Energy" claim in connection with the statements "Protein Nutrition Shake" and "25g PROTEIN" on Muscle Milk® Ready-To-Drink (RTD) products; (ii) Cytosport's "0g Trans Fat" claim on Muscle Milk® Bars products; and (iii) Cytosport's "25g PROTEIN for Healthy, Sustained Energy" claim in connection with the claim "0g Trans Fat" on Muscle Milk® Bars products.

59.    Cytosport's nutrient content claims are misleading to reasonable consumers because they focus on purported benefits of some ingredients in the Products, and distract attention away from the fact that the Products contain unhealthy amounts of fat and saturated fat.

60.    Nutrient content regulations are designed to protect consumers from being misled by claims that a product is a healthy choice even though it actually has unhealthy levels of fat and saturated fat, because it purportedly is low in trans fat, or contains certain "healthy" ingredients.

61.    On March 3, 2010, Dr. Margaret A. Hamburg, M.D., Commissioner of Food and Drugs, issued an "Open Letter to Industry from Dr. Hamburg" to address growing concerns regarding "front-of-pack" food product labeling.[19]  As stated in Dr. Hamburg's letter:

---

[19] *See* Dr. Margaret A. Hamburg, M.D., Commissioner of Food and Drugs, *Open Letter to Industry from Dr. Hamburg*, March 3, 2010, available at: http://www.fda.gov/food/labelingnutrition/ucm202733.htm (last visited Apr. 16, 2012).

The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections. . . . As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading.

At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990. Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

. . .

For example:

. . .

- Claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat, and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel.

. . .

- Misleading "healthy" claims continue to appear on foods that do not meet the long- and well-established definition for use of that term.

Cytosport's "0g Trans Fat" Claim on Muscle Milk® Bars

62.    For example, on Cytosport disqualifies levels of fat on the packaging for its Muscle Milk® Bars product.  Cytosport's misbranded packaging for its Muscle Milk® Bars product prominently makes a "0g Trans Fat" claim.

63.    In order to prevent companies from making misleading claims that distract consumer attention away from unhealthy levels of fats, saturated fats, or sodium that are in a product, under Title 21 Code of Federal Regulations section 101.13, companies are prohibited from making unqualified nutrient content claims if their products exceed specified levels of unhealthy fats, saturated fats, or sodium.  Under Section 101.13, a company cannot make the claim "0g Trans Fat" if the product contains more than 4 grams of saturated fat, unless the statement, "See nutrition information for saturated fat content" is included on the label as well.

64.    The packaging for Cytosport's Muscle Milk® Bars is misbranded because it makes the "0g Trans Fat" claim, but contrary to the law, as discussed above, it fails to provide the mandated warning about the amount of saturated fat.  Cytosport's Muscle Milk® Bars contain more than 4 g of saturated fat per labeled serving and per Reference Amount Customarily Consumed ("RACC"), but the label fails to provide the required disclosure statement, "See nutrition information for saturated fat content."  By failing to include the required disclosure statement, Cytosport misdirects consumers to a nutrient in Muscle Milk® Bars that purportedly is low, while failing to draw consumers' attention to the harmful levels of the saturated fat that they are obligated to disclose.

<u>Cytosport's "Healthy" Claims on the Products</u>

65.     As discussed above, under Title 21 Code of Federal Regulations section 101.65(d)(2), to bear the nutrient content claim "healthy," foods: (1) must be "low fat"; (2) must be "low saturated fat"; (3) must not exceed the disclosure level for cholesterol set forth in 21 CFR 101.13(h) (60 mg cholesterol per RACC); (4) must contain at least 10 % of the Daily Value per RACC of one or more of the following nutrients: vitamin A, vitamin C, calcium, iron, protein, or fiber; and (5) must contain no more than 480 mg sodium per RACC and per labeled serving.

66.     As discussed above, under Title 21 Code of Federal Regulations section 101.62(b)(2), the phrase "low fat" is defined to mean that the total fat content in the product is 3 g or less per RACC.

67.     As discussed above, under Title 21 Code of Federal Regulations section 101.62(c)(2), the phrase "low saturated fat" is defined to mean that saturated fat content in the product is 1 g or less per RACC and contains no more than 15 percent of calories from saturated fat.

68.     The label of Cytosport's Muscle Milk® Ready-To-Drink (RTD) bears the claim "Healthy, Sustained Energy" in connection with the statements "Protein Nutrition Shake" and "25g PROTEIN." Additionally, as discussed above, Cytosport's website, http://www.cytosport.com/products/muscle-milk/muscle-milk-ready-to-drink, under the heading entitled "14-oz. Muscle Milk® Ready-To-Drink (RTD)" includes the claim "healthy sustained energy" in connection with the statements "Protein Nutrition Shake" and "25g PROTEIN."

69.     Cytosport's Muscle Milk® Ready-To-Drink (RTD) contains 9 g of fat per 414 mL serving. According to Title 21 Code of Federal Regulations section 101.12(b), Table 2, the RACC for beverages is 240 mL. Thus, Cytosport's Muscle Milk® Ready-To-Drink (RTD) contains 5 grams of fat per the RACC of 240 mL. Accordingly, the fat content in Cytosport's Muscle Milk® Ready-To-Drink (RTD) exceeds the 3 g of fat per RACC of food maximum in the "low fat" definition. 21 C.F.R. § 101.62(b)(2). As a

1  result, Cytosport's Muscle Milk® Ready-To-Drink (RTD) is misbranded because it does

2  not meet the requirements for the use of the nutrient content claim "healthy" on food

3  labeling. 21 C.F.R. § 101.65(d)(2).

4       70.    Similarly, the label of Cytosport's Muscle Milk® Bars bears the claim "25g

5  PROTEIN for Healthy, Sustained Energy" in connection with the claim "0g Trans Fat."

6  Additionally, as discussed above, Cytosport's website,

7  http://www.cytosport.com/products/muscle-milk/muscle-milk-bars, under the heading

8  entitled "Muscle Milk® Bars" includes the claim "healthy, sustained energy," in

9  connection with the claims "loaded with 25 grams of high-quality muscle-source protein,"

10  and "no trans fats."

11       71.    Cytosport's Muscle Milk® Bars contain 11 g of fat and 8 g of saturated fat

12  per 73 g serving.  According to Title 21 Code of Federal Regulations section 101.12(b),

13  Table 2, the RACC for all other candies is 40 g.  Thus, Cytosport's Muscle Milk® Bars

14  contain 6 grams of fat and 4.5 grams of saturated fat per 40 gram RACC. Accordingly,

15  Cytosport's Muscle Milk® Bars fat content exceeds the 3 g of fat per RACC of food

16  maximum in the "low fat" definition.  21 C.F.R. § 101.62(b)(2).  Furthermore,

17  Cytosport's Muscle Milk® Bars saturated fat content exceeds the 1 g of saturated fat per

18  RACC of food maximum in the "low saturated fat" definition. 21 C.F.R. § 101.62(c)(2).

19  As a result, Cytosport's Muscle Milk® Bars are misbranded because they  do not meet the

20  requirements for the use of the nutrient content claim "healthy" on food labeling.  21

21  C.F.R. § 101.65(d)(2).

22                **PLAINTIFF'S CLAIMS AGAINST CYTOSPORT**

23       72.    Plaintiff Delacruz is a resident of Los Angeles, California.

24       73.    Consistently, for the previous approximately continuous six months before

25  the filing of the initial Complaint in this action, approximately February 2011 to July

26  2011, Plaintiff regularly purchased and consumed Cytosport's Muscle Milk® Ready-To-

27  Drink (RTD) and Muscle Milk® Bars products.

28       74.    In deciding to purchase the Products, Plaintiff saw and relied on the

1   representations on the false, misleading, and misbranded packaging of Cytosport's Muscle

2   Milk® Ready-To-Drink (RTD) and Muscle Milk® Bars products.  Plaintiff saw and relied

3   on the claim, "Healthy, Sustained Energy" made in connection with the statements

4   "Protein Nutrition Shake" and "25g PROTEIN" on the 14-oz. size of the Muscle Milk®

5   Ready-To-Drink (RTD) product.  Additionally, in deciding to purchase the 14-oz. size of

6   the Muscle Milk® Ready-To-Drink (RTD) product, Plaintiff saw and relied on the

7   phrases "healthy fats" and "good carbohydrates."  Plaintiff also saw and relied on the

8   claim "25g Protein for Healthy, Sustained Energy" in connection with the claim "0g Trans

9   Fat" on the Muscle Milk® Bars product.  These representations were material to Plaintiff.

10          75.     Consistent with Cytosport's suggestions on "how to use muscle milk," in

11   reliance on Cytosport's representations, Plaintiff consumed the Products before workouts,

12   after workouts, in between meals as a snack, and sometimes as a meal replacement.

13          76.     In deciding to purchase the Products, Plaintiff visited Cytosport's website,

14   and she saw and relied on the representations on Cytosport made on its website, as

15   discussed above, concerning the Muscle Milk® Ready-To-Drink (RTD) and Muscle

16   Milk® Bars products.  In deciding to purchase the Products, Plaintiff also saw and relied

17   Cytosport's television advertisements, as discussed above, concerning its 14-oz. Muscle

18   Milk Ready-To-Drink (RTD) product.  These representations were material to her.

19          77.     In connection with Cytosport's extensive and long-term advertising

20   campaign concerning the Products, including communications made on product

21   packaging, television, print, outdoor, the Internet, and other media, Plaintiff was exposed

22   to representations and omissions intended to mislead consumers like her to believe that

23   the Products are healthy, nutritious, and should be regularly consumed to diet and live a

24   healthy lifestyle.

25          78.     Plaintiff purchased the Products as a result of the aforementioned

26   representations Cytosport made as part of its extensive and long-term advertising

27   campaign concerning the Products, and in reliance on those representations, she consumed

28   the Products, believing them to be healthy, nutritious foods that she could eat to help her

1    live an active lifestyle, meet her nutritional goals, and lose weight.

2       79.    Plaintiff was denied the benefit of the bargain when she decided to purchase

3 the Products over competitor products, which are less expensive, contain healthier

4 ingredients, or they are not misleading and misbranded. But for Cytosport's false and

5 misleading representations and omissions, Plaintiff would not have purchased and

6 consumed the Products.

7 <center>**CLASS ACTION ALLEGATIONS**</center>

8       80.    Plaintiff brings this action, on behalf of herself and all others similarly

9 situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

10       81.    The class Plaintiff seeks to represent (the "Class") is defined as follows:

11       All residents of the United States of America who purchased
12       Cytosport's "Muscle Milk® Ready-To-Drink (RTD)" and/or
      "Muscle Milk® Bars" products during the period of July 18,
13       2007 continuing through the date of final disposition of this
      action.
14

15       82.    Plaintiff reserves the right to amend the Class definition if discovery and

16 further investigation reveals that the Class should be expanded or otherwise modified.

17       83.    Plaintiff reserves the right to establish sub-classes as appropriate.

18       84.    This action is brought and properly may be maintained as a class action

19 under the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2)

20 or (b)(3), and satisfies the requirements thereof. As used herein, the term "Class

21 Members" shall mean and refer to the members of the Class.

22       85.    <u>Community of Interest</u>: There is a well-defined community of interest

23 among members of the Class, and the disposition of the claims of these members of the

24 Class in a single action will provide substantial benefits to all parties and to the Court.

25       86.    <u>Numerosity</u>: While the exact number of members of the Class is unknown to

26 Plaintiff at this time and can only be determined by appropriate discovery, membership in

27 the Class is ascertainable based upon the records maintained by Defendant. At this time,

28

<center>26</center>

<div align="right">Case No. 4:11-cv-03532-CW</div>

Plaintiff is informed and believes that the Class includes thousands of members.

Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a

single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and

the resolution of their claims through the procedure of a class action will be of benefit to

the parties and the Court.

87.   Ascertainablity:  Names and addresses of members of the Class are available

from Defendant's records.  Notice can be provided to the members of the Class through

direct mailing, publication, or otherwise using techniques and a form of notice similar to

those customarily used in consumer class actions arising under California state law and

federal law.

88.   Typicality:  Plaintiff's claims are typical of the claims of the other members

of the Class which she seeks to represent under Federal Rule of Civil Procedure 23(a)(3)

because Plaintiff and each member of the Class has been subjected to the same deceptive

and improper practices and has been damaged in the same manner thereby.

89.   Adequacy:  Plaintiff will fairly and adequately represent and protect the

interests of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4).

Plaintiff is an adequate representative of the Class, because she has no interests which are

adverse to the interests of the members of the Class.  Plaintiff is committed to the

vigorous prosecution of this action and, to that end, Plaintiff has retained counsel who are

competent and experienced in handling class action litigation on behalf of consumers.

90.   Superiority: A class action is superior to all other available methods of the

fair and efficient adjudication of the claims asserted in this action under Federal Rule of

Civil Procedure 23(b)(3) because:

   (a)   The expense and burden of individual litigation make it economically

         unfeasible for members of the Class to seek to redress their "negative

         value" claims other than through the procedure of a class action.

   (b)   If separate actions were brought by individual members of the Class,

         the resulting duplicity of lawsuits would cause members to seek to

redress their "negative value" claims other than through the procedure of a class action; and

(c)    Absent a class action, Defendant likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

91.    Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

92.    The common questions of fact include, but are not limited to, the following:

(a)    Whether Defendant's practice of misleading consumers who purchase Cytosport's Muscle Milk® Ready-To-Drink (RTD) and Muscle Milk® Bars products violates one or more provisions of the CLRA;

(b)    Whether Defendant engaged in unlawful, unfair, misleading, or deceptive business acts or practices;

(c)    Whether Defendant engaged in consumer fraud, deceptive trade practices, or other unlawful acts;

(d)    Whether Plaintiff and members of the Class justifiably relied on the representations Defendant made in connection with its Muscle Milk® Ready-To-Drink (RTD) and Muscle Milk® Bars products;

(e)    Whether Defendant's conduct was willful or reckless;

(f)    Whether Plaintiff and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit; and

(g)    Whether Defendant engaged in unlawful and unfair business practices in violation of California Business & Professions Code sections 17200 *et seq.* and 17500 *et seq.*

93.    In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

(a)  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant.

(b)  The prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)  Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

94.    Plaintiff is not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION

### Violation of the Consumers Legal Remedies Act

### (Cal. Civil Code §§ 1750 *et seq.*)

95.    Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

96.    Plaintiff brings this cause of action on behalf of herself and the other members of the Class.

97.    This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq.* ("CLRA"). Plaintiff and members of the Class are consumers as defined by California Civil Code section 1761(d). The Products are goods within the meaning of California Civil Code section 1761(a).

98.     Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff and members of the Class, which were intended to result in, and did result in, the sale of the Products:

(5)    Representing that [the Product have]… characteristics…[and] uses…which they do not have….

(7)    Representing that [the Product] are of a particular standard…if they are of another.

(9)    Advertising goods…with intent not to sell them as advertised.

99.     Defendant violated the CRLA by representing and advertising the Products, as discussed above, with false, materially misleading and misbranded labeling claims, including the "Healthy, Sustained Energy" claim made in connection with the statements "Protein Nutrition Shake" and "25g PROTEIN" on the 14-oz. size of the Muscle Milk® Ready-To-Drink (RTD) product; the claims "healthy fats" and "good carbohydrates" on the 14-oz. size of the Muscle Milk® Ready-To-Drink (RTD) product; and the claim "25g PROTEIN for Healthy, Sustained Energy" in connection with the claim "0g Trans Fat" on the Muscle Milk® Bars product.

100.     Defendant conceals the truth about its products—encouraging consumers to ignore the fact that Muscle Milk® Ready-To-Drink (RTD) contains saturated fat, the simple sugar fructose, acesulfame K, and sucralose — by claiming that Muscle Milk® Ready-To-Drink (RTD) contains "functional fats," "healthy fats," "good carbohydrates," and suggesting that consumers should trust the company because its Muscle Milk® Ready-To-Drink (RTD) product "takes the guesswork out of high performance nutrition."

101.     On July 18, 2011, via certified mail, return receipt requested, under Section 1782 of the CLRA, Plaintiff notified Cytosport in writing of the particular violations of Section 1770, and demanded that Cytosport rectify the problems associated with the behavior detailed above, which acts and practices are in violation of Section 1770.

102.     Cytosport failed to rectify the violations identified by Plaintiff.  Therefore,

1 under Section 1780(a) of the CLRA, Plaintiff and members of the Class seek actual and
2 punitive damages.

3      103.   Concurrent with the filing of the initial complaint in this action, Plaintiff filed
4 a Declaration of Venue in accordance with Civil Code section 1780(d).

5      104.   Under Section 1782(d) of the CLRA, Plaintiff also seeks an order enjoining
6 the act and practices described above, restitution of property, and any other relief that the
7 court deems proper.

8      105.   Defendant's conduct is malicious, fraudulent, and wanton, and Defendant
9 intentionally misleads and withholds material information from consumers in order to
10 increase the sale of the Products.

11      106.   Defendant's misrepresentations and omissions were material Plaintiff and
12 members of the Class.  Plaintiff and members of the Class would not have purchased and
13 consumed the Products had it not been for Defendant's misrepresentations and
14 concealment of material facts.  Plaintiff and members of the Class were damaged as a
15 result of Defendant's material misrepresentations and omissions.

<div align="center">

**SECOND CAUSE OF ACTION**

**Violation of Unfair Business Practices Act**

**(California Business & Professions Code §§ 17200 *et seq.*)**

</div>

19      107.   Plaintiff incorporates by reference in this cause of action each and every
20 allegation of the preceding paragraphs, with the same force and effect as though fully set
21 forth herein.

22      108.   Plaintiff brings this cause of action on behalf of herself and the other
23 members of the Class.

24      109.   California Business and Professions Code section 17200 prohibits "any
25 unlawful, unfair or fraudulent business act or practice."  For the reasons described above,
26 Defendant has engaged in unlawful, unfair, and/or fraudulent business acts or practices in
27 violation of California Business and Professions Code section 17200.

28      110.   Defendant's misrepresentations and omissions of material facts, as set forth

herein, constitute an unlawful practice because they violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, among others, California Health & Safety Code section 109875 *et seq.*, and the common law.

111.    Defendant's misrepresentations and omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of California Business and Professions Code sections 17200 *et seq.*, in that Defendant's conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.  Plaintiff also asserts a violation of public policy by withholding material facts from consumers.  Defendant's violation of California's consumer protection and unfair competition laws in California resulted in harm to consumers.

112.    There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

113.    California Business and Professions Code section 17200 also prohibits any "fraudulent business act or practice."

114.    Defendant's misrepresentations and concealment of material facts, as set forth above, were false, misleading, and/or likely to deceive the public within the meaning of California Business and Professions Code section 17200.

115.    Defendant's misrepresentations and concealment were made with knowledge of their effect, and were done to induce Plaintiff and members of the Class to purchase the Products.  Plaintiff and members of the Class saw and justifiably relied on Defendant's misrepresentations when purchasing the Products.

116.    Defendant's conduct caused and continues to cause injury to Plaintiff and members of the Class.  Defendant's misrepresentations and omissions were material Plaintiff and members of the Class.  Plaintiff and members of the Class would not have purchased and consumed the Products had it not been for Defendant's misrepresentations and concealment of material facts.  Plaintiff and members of the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct.

117.    Plaintiff and members of the Class would not have purchased and consumed

1   the Products had it not been for Defendant's misrepresentations and concealment of

2   material facts.  Defendant's misrepresentations and omissions alleged herein are

3   objectively material to the reasonable consumer.  Reliance upon the misrepresentations

4   and omissions discussed herein may therefore be presumed as a matter of law.  The

5   materiality of such representations and omissions also establishes causation between

6   Defendant's conduct and Plaintiff's and the members of the Class' injuries

7       118.    Defendant has thus engaged in unlawful, unfair, and fraudulent business acts

8   entitling Plaintiff and members of the Class to judgment and equitable relief against

9   Defendants, as set forth in the Prayer for Relief.

10      119.    Additionally, under Business and Professions Code section 17203, Plaintiff

11  and members of the Class seek an order requiring Defendant to immediately cease such

12  acts of unlawful, unfair, and fraudulent business practices, and requiring Defendant to

13  correct its actions.

14                          **THIRD CAUSE OF ACTION**

15                    **Violation of False Advertising Law**

16          **(California Business & Professions Code §§ 17500 *et seq.*)**

17      120.    Plaintiff incorporates by reference in this cause of action each and every

18  allegation of the preceding paragraphs, with the same force and effect as though fully set

19  forth herein.

20      121.    California Business and Professions Code section 17500 prohibits "unfair,

21  deceptive, untrue or misleading advertising."

22      122.    Defendant violated California Business and Professions Code section 17500

23  by, *inter alia*, (a) misleadingly advertising the healthfulness, nutritious nature, and the

24  purportedly "healthy fats" and "functional fats," and "good carbohydrates" in the Products

25  in print, on the Internet, on television, and elsewhere; (b) concealing material information

26  about the true nature of the Products, in that they contain unhealthy fats, unhealthy

27  carbohydrates, should not be regularly consumed, are not healthy, and will not help

28  people lose weight; and (c) selling the Products using misbranded labels that are

1  misleading to consumers.

2      123.   Defendant's deceptive practices were specifically designed to induce Plaintiff

3  and members of the Class to purchase the Products over those of its competitors.

4  Defendant's deceptive practices were carried out on the labels for the Products, in print,

5  on television, on Defendant's website, and other broad-based media, in order to induce

6  Plaintiff and members of the Class to purchase the Products.

7      124.   Plaintiff and members of the Class would not have purchased and consumed

8  the Products had it not been for Defendant's misrepresentations and concealment of

9  material facts.  Plaintiff and members of the Class were denied the benefit of the bargain

10  when they decided to purchase the Products over competitor products, which are less

11  expensive or contain healthier ingredients, or they do not unlawfully claim to be healthy.

12  Had Plaintiff and members of the Class been aware of Cytosport's false and misleading

13  advertising tactics, they would have paid less than what they paid for the Products, or they

14  would not have purchased the Products at all

15      125.   The content of the advertisements, as alleged herein, were of a nature likely

16  to deceive a reasonable consumer.

17      126.   Defendant knew, or in the exercise of reasonable care, should have known,

18  that the representations were untrue or misleading and likely to deceive reasonable

19  consumers.

20      127.   Defendant's misrepresentations and omissions alleged herein are objectively

21  material to the reasonable consumer, and reliance upon such misrepresentations and

22  omissions may therefore be presumed as a matter of law.  The materiality of such

23  representations and omissions also establishes causation between Defendant's conduct

24  and Plaintiff's and the members of the Class' injuries.

25      128.   Unless restrained by this Court, Defendant will continue to engage in

26  misleading advertising, as alleged above, in violation of California Business and

27  Professions Code section 17500.

28      129.   As a result of the foregoing, Plaintiff and members of the Class have been

injured in fact and lost money or property, and they are entitled to restitution and injunctive relief.

## FOURTH CAUSE OF ACTION

### Fraud

130.   Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

131.   Plaintiff brings this cause of action on behalf of herself and the members of the Class.

132.   Defendant represented and advertised the Products, as discussed above, with false, materially misleading and misbranded labeling claims, including the "Healthy, Sustained Energy" claim made in connection with the statements "Protein Nutrition Shake" and "25g PROTEIN" on the 14-oz. size of the Muscle Milk® Ready-To-Drink (RTD) product; the claims "healthy fats" and "good carbohydrates" on the 14-oz. size of the Muscle Milk® Ready-To-Drink (RTD) product; and the claim "25g PROTEIN for Healthy, Sustained Energy" in connection with the claim "0g Trans Fat" on the Muscle Milk® Bars product.

133.   Defendant conceals the truth about its products—encouraging consumers to ignore the fact that Muscle Milk® Ready-To-Drink (RTD) contains saturated fat, the simple sugar fructose, acesulfame K, and sucralose — by claiming that Muscle Milk® Ready-To-Drink (RTD) contains "functional fats," "healthy fats," "good carbohydrates," and suggesting that consumers should trust the company because its Muscle Milk® Ready-To-Drink (RTD) product "takes the guesswork out of high performance nutrition."

134.   Defendant knew these statements were false and misleading.  Defendant was aware of laws and regulations concerning the labeling and marketing of the Products.

135.   The healthfulness and nutritious nature of the Products was a material feature of the Products.  Plaintiff and other members of the Class would not have purchased the Products but for Defendant's false and misleading representations, misleading and

1    misbranded product labels, and concealment of material facts.

2        136.   Defendant made the misrepresentations and omissions stated above with

3    knowledge of the effect of concealing these material facts.  Defendant knew that by

4    misleading consumers, it would sell more units of the Products, which would result in

5    higher profits.

6        137.   By misrepresenting and concealing material information about the Products,

7    Defendant intended to induce Plaintiff and members of the Class into purchasing the

8    Products.

9        138.   Plaintiff and members of the Class justifiably relied on the representations

10   made about the Products.

11       139.   Defendant's representations and omissions regarding the healthfulness,

12   nutritious nature, and the purportedly "functional fats," "healthy fats," "good

13   carbohydrates" in the Products were made with knowledge or with reckless disregard of

14   the laws of California prohibiting false and misleading statements, and misbranded

15   product labels.

16       140.   Defendant:

17           a.   made representations, as facts, which were not true and Defendant did
18                not believe to be true at the time made;

19           b.   made assertions, as facts, which were not true and Defendant had no
20                reasonable grounds for believing to be true at the times they were
                  made; and/or
21

22           c.   suppressed facts, which it was bound to disclose, or gave information
                  of other facts which were likely to mislead for want of
23                communications of the suppressed facts.

24       141.   As a result of Defendant's wrongful conduct, Plaintiffs and the members of

25   the Class have suffered and continue to suffer economic losses and other general and

26   specific damages, including but not limited to the monies paid for Cytosport's Muscle

27   Milk® Ready-To-Drink (RTD) and Muscle Milk® Bars and any interest that would have

28

1   been accrued on those monies, all in an amount to be determined according to proof at

2   time of trial.

3       142.   The wrongful acts of Defendant were done maliciously, oppressively and

4   with the intent to defraud, and Plaintiffs and members of the Class are entitled to punitive

5   and exemplary damages in an amount to be ascertained according to proof, which is

6   appropriate to punish, deter, and set an example of Defendant.

7       143.   Defendant acted with malice, oppression, or fraudulent intent.

8       144.   As a direct and proximate result of Defendant's misrepresentations and

9   omissions, Plaintiff and each member of the Class has been damaged in an amount

10   according to proof at trial.

11   <div align="center">**FIFTH CAUSE OF ACTION**</div>

12   <div align="center">**Negligent Misrepresentation**</div>

13       145.   Plaintiff incorporates by reference in this cause of action each and every

14   allegation of the preceding paragraphs, with the same force and effect as though fully set

15   forth herein.

16       146.   Defendant, directly or through its agents and employees, made false

17   representations, concealments, and nondisclosures to Plaintiff and members of the Class.

18       147.   In making the representations of fact to Plaintiff and members of the Class

19   described herein, Defendant has failed to fulfill its duties to disclose the material facts set

20   forth above.  The direct and proximate cause of said failure to disclose was the negligence

21   and carelessness of Defendant.

22       148.   In making the representations and omissions, and in doing the acts alleged

23   above, Defendant acted without any reasonable grounds for believing the representations

24   were true, and intended by said representations to induce the reliance of Plaintiff and

25   members of the Class.

26       149.   Plaintiff and members of the Class relied upon these false representations,

27   concealments and nondisclosures by Defendant when purchasing the products at issue

28   herein, which reliance was justified.

1    150.   As a result of Defendant's wrongful conduct, Plaintiff and members of the

2    Class have suffered and continue to suffer economic losses and other general and specific

3    damages, including but not limited to the amounts paid for Cytosport's Muscle Milk®

4    Ready-To-Drink (RTD) and Muscle Milk® Bars, and any interest that would have been

5    accrued on those monies, all in an amount to be determined according to proof at time of

6    trial.

7                              **SIXTH CAUSE OF ACTION**

8                                  **Unjust Enrichment**

9    151.   Plaintiff incorporates by reference in this cause of action each and every

10   allegation of the preceding paragraphs, with the same force and effect as though fully set

11   forth herein.

12   152.   By its wrongful acts and omissions (including, representing and advertising

13   the Products, as discussed above, with false, materially misleading and misbranded

14   labeling claims, including the "Healthy, Sustained Energy" claim made in connection with

15   the statements "Protein Nutrition Shake" and "25g PROTEIN" on the 14-oz. size of the

16   Muscle Milk® Ready-To-Drink (RTD) product; the claims "healthy fats" and "good

17   carbohydrates" on the 14-oz. size of the Muscle Milk® Ready-To-Drink (RTD) product;

18   and the claim "25g PROTEIN for Healthy, Sustained Energy" in connection with the

19   claim "0g Trans Fat" on the Muscle Milk® Bars product), Defendant was unjustly

20   enriched at the expense of Plaintiff and members of the Class, who did not receive the

21   goods to which they were entitled—namely products that were healthy, nutritious, without

22   saturated fats, simple sugar fructose, acesulfame K, and sucralose—for the payments

23   made to Defendant, and thus Plaintiff and members of the Class were unjustly deprived.

24   153.   It would be inequitable and unconscionable for Defendant to retain the profit,

25   benefit and other compensation it obtained from its deceptive, misleading, and unlawful

26   conduct alleged herein.

27   154.   Plaintiff and members of the Class seek restitution from Defendant, and seek

28   an order of this Court disgorging all profits, benefits, and other compensation obtained by

1 | Defendant from its wrongful conduct.

2 | **PRAYER FOR RELIEF**

3 |     Plaintiff, and on behalf of herself and all others similarly situated, requests the

4 | Court to enter judgment against Defendant, as follows:

5 |     1.    Certifying the Class as requested herein, certifying Plaintiff as the

6 | representative of the Class, and appointing Plaintiff's counsel as counsel for the Class;

7 |     2.    Ordering that Defendant is financially responsible for notifying all members

8 | of the Class of the alleged misrepresentations and omissions discussed herein;

9 |     3.    Awarding Plaintiff and the members of the Class compensatory damages in

10 | an amount according to proof at trial;

11 |     4.    Awarding restitution and disgorgement of Defendant's revenues to Plaintiff

12 | and members of the Class;

13 |     5.    Awarding declaratory and injunctive relief as permitted by law or equity,

14 | including: enjoining Defendant from continuing the unlawful practices as set forth herein,

15 | and directing Defendant to identify, with Court supervision, victims of its conduct and pay

16 | them restitution and disgorgement of all monies acquired by Defendant by means of any

17 | act or practice declared by this Court to be wrongful;

18 |     6.    Awarding to Plaintiff and the Class punitive damages;

19 |     7.    Ordering Defendant to engage in corrective advertising;

20 |     8.    Awarding interest on the monies wrongfully obtained from the date of

21 | collection through the date of entry of judgment in this action;

22 |     9.    Awarding attorneys' fees, expenses, and recoverable costs reasonably

23 | incurred in connection with the commencement and prosecution of this action; and

24 |

25 |

26 |

27 |

28 |

1        10.    For such other and further relief as the Court deems just and proper.

2

3  Dated: April 18, 2012           BARON & BUDD, P.C.

4                           Roland Tellis

                               Mark Pifko

5                           Natasha Mehta

6

7                  By: _____

                     Mark Pifko

8

                     Attorneys for Plaintiff

9                     CLAIRE DELACRUZ, individually,

                     and on behalf of other members of the

10                   public similarly situated

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiff requests trial by jury on all issues so triable.

Respectfully submitted,

Dated:  April 18, 2012

BARON & BUDD, P.C.
Roland Tellis
Mark Pifko
Natasha Mehta


By: _____
     Mark Pifko

Attorneys for Plaintiff
CLAIRE DELACRUZ, individually,
and on behalf of other members of the
public similarly situated