1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7          FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9  CLAIRE DELACRUZ, individually,              No. C 11-3532 CW
   and on behalf of other members of
10 the general public similarly               ORDER GRANTING IN
   situated,                                  PART AND DENYING
11                                            IN PART
            Plaintiff,                        DEFENDANT'S MOTION
12                                            TO DISMISS SECOND
       v.                                     AMENDED COMPLAINT
13                                            (Docket No. 36)
   CYTOSPORT, INC., a California
14 Corporation,
15          Defendant.
16 ═══════════════════════════════/

17

18      After the Court dismissed in part Plaintiff Claire Delacruz's

19 First Amended Complaint (1AC) with leave to amend, she filed her

20 Second Amended Complaint (2AC).  Like the 1AC, the 2AC alleges a

21 putative consumer class action based on certain representations

22 made about Defendant Cytosport's products, "Muscle Milk® Ready-To-

23 Drink" (RTD) and "Muscle Milk® Bars."  In the 2AC Plaintiff

24 continues to allege claims under the California Consumer Legal

25 Remedies Act (CLRA), the Unfair Competition Law (UCL), and the

26 False Advertising Law (FAL), as well as common law claims for

27 fraud, negligent misrepresentation and unjust enrichment.

28

**United States District Court**
For the Northern District of California

Defendant moves to dismiss the 2AC under Federal Rules of Civil Procedure 8(a)(2), 9(b) and 12(b)(6).[1]

Having considered all of the parties' submissions and oral argument, the Court grants in part Defendant's motion to dismiss and denies it in part.  Docket No. 36.

BACKGROUND

The Court granted Defendant's motion to dismiss Plaintiff's First Amended Complaint, except to the extent that the claims were based on statements made on the fourteen ounce Muscle Milk® RTD packaging, specifically, the representation that the product contained "health fats" in connection with the assertion that it was a "nutritional" drink.  The Court found that the "Healthy, Sustained Energy" claim on the RTD label was not actionable because the term "healthy" is difficult to define and Plaintiff had not alleged that the drink contained unhealthy amounts of fat, saturated fat or calories from fat, based on any objective criteria.  The Court also found that the "25g protein FOR HEALTHY, SUSTAINED ENERGY" was not a cognizable misrepresentation because Plaintiff did not claim that the bars did not contain that amount of protein.  Furthermore, the "0g Trans Fat" statement on the label was not misleading because Plaintiff had not alleged that the bars actually contained trans fats.

---

[1] The title page and notice for Defendants' motion to dismiss cites Federal Rule of Civil Procedure 12(b)(1), as an additional basis for their request for dismissal.  However, because the legal standard for dismissal for lack of subject matter jurisdiction was not recited in the memorandum of points and authorities and Defendants did not otherwise argue the issue in its brief, the Court does not address it.  The Court's order on Defendants' first motion to dismiss addressed Article III standing.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

The Court authorized Plaintiff to amend her complaint, remedying the defects identified, provided that she was able to do so truthfully without contradicting the allegations in her original complaint.  The Court further stated that Plaintiff was not permitted to add any additional causes of action without leave of the Court.  Finally, the Court denied Defendant's request to dismiss or stay the proceedings based on the primary jurisdiction doctrine.

In her 2AC, Plaintiff alleges the following.  She claims that

> by prominently featuring, on the front of the package, the claim "Healthy, Sustained Energy" in connection with the statements "Protein Nutrition Shake" and "25g PROTEIN" on Muscle Milk® Ready-To-Drink (RTD), and the claims "25g PROTEIN for Healthy, Sustained Energy" and "0g Trans Fat" on Muscle Milk® Bars, Cytosport falsely represents the healthy and nutritious nature of the Products, and misleads consumers.  Such claims, along with phrases like "healthy fats" and "good carbohydrates," draw consumer attention away from unhealthy ingredients, including fat, saturated fat, and added sugars. . .
>
> The central message of these claims is that the Products are not loaded with unhealthy fats and added sugars, and that consuming them provides a wide range of significant nutritional benefits.  This message, however, is false, misleading, deceptive, and unfair.

2AC at ¶ 5 and 6.

Unlike the 1AC, the 2AC shows two different versions of the front of the fourteen ounce RTD bottle.  The first version shows the bottle, as represented in the 1AC, which includes the statements "HEALTHY, SUSTAINED ENERGY," "protein nutrition shake" and "25g PROTEIN."  This version was phased out of production starting in February 2011.  The front of second version of the RTD bottle, first placed into the stream of commerce in February 2011,

does not include the statement "HEALTHY, SUSTAINED ENERGY," but includes the statements "protein nutrition shake" and "25g PROTEIN."  Both versions of the RTD bottle state on the back,

MUSCLE MILK IS AN IDEAL BLEND
OF PROTEIN, HEALTHY FATS,
GOOD CARBOHYDRATES
AND 20 VITAMINS AND MINERALS
TO PROVIDE SUSTAINED ENERGY,
SPUR LEAN MUSCLE GROWTH AND HELP PROVIDE RECOVERY
FROM TOUGH DAYS
AND TOUGHER WORKOUTS.

The 2AC does not include allegations concerning the seventeen ounce bottle.

Plaintiff claims that the misrepresentations on the product labels are compounded by false statements on Defendant's website. 2AC at ¶¶ 28 and 42 (noting that the RTD product website claims that the drink "promotes healthy sustained energy," and that it provides "healthy fats" and "good carbohydrates," and the website for the bars states that "there's no question [consumers are] getting a nutritious snack" and that the bars deliver "healthy sustained energy").  Furthermore, Defendant's television advertising allegedly features images of the label from the fourteen ounce RTD bottle, including its claim, "Healthy, Sustained Energy."  2AC at ¶ 30.

Plaintiff further alleges that Defendant's product labeling, including the "use of the healthy sounding 'Muscle Milk' name and its false and misleading nutrient content claims" are a violation of law.  2AC at ¶ 7.  She continues to claim that the fourteen ounce RTD product contains "bad fats," such as saturated fat, despite the label's and website's representation that it provides "healthy fats."

Plaintiff further alleges that, contrary to Defendant's "good carbohydrates" representation on the RTD labeling and website, the drink contains simple sugar fructose, which has been linked to "lipid dysregulation, increased visceral adiposity, and decreased insulin sensitivity, all of which have been linked to cardiovascular disease and type 2 diabetes."  2AC at ¶ 25. Furthermore, the RTD product contains acesulfame potassium (a/k/a Acesulfame K) and sucralose, which have been identified by Whole Foods, a retailer specializing in healthy and organic foods, as "Unacceptable Ingredients for Food."  2AC at ¶ 25.

With respect to the Muscle Milk® Bars, Plaintiff claims that these seventy-three gram bars are less healthy than a similarly-sized 58.7 gram Snickers® bar because they contain as many calories, as much sugar, and more grams of saturated fat and sodium than the candy.

Citing certain studies, Plaintiff claims that

Muscle Milk® Bars also contain unhealthy ingredients like fractionated palm kernel oil, and partially hydrogenated palm oil, a trans fat.  Plaintiff is informed and believes, and on that basis, alleges that palm oil is high in saturated fat and is often used as a substitute for partially hydrogenated vegetable oil (i.e., trans fat).  Plaintiff is informed and believes, and on that basis, alleges that studies, however, have suggested that palm oil may be just as unhealthy as partially hydrogenated vegetable oil. Additionally, Plaintiff is informed and believes, and on that basis, alleges that the World Health Organization has convincingly linked palmitic acid, which is present in palm oil, to increased risk of cardiovascular disease.

Plaintiff is informed and believes, and on that basis, alleges that palm oil can be processed to create variants, including palm kernel oil and fractionated palm kernel oil.  Plaintiff is informed and believes,

and on that basis, alleges that the healthful aspects of natural palm oil, if any, are largely lost in the processing. Indeed, of all the varieties of palm oil, Plaintiff is informed and believes, and on that basis, alleges that the form that is used in Muscle Milk® Bars, fractionated palm kernel oil, is the least healthy.  Plaintiff is informed and believes, and on that basis, alleges that palm kernel oil is a cheap, unhealthy fat, and unlike ordinary palm oil, palm kernel oil cannot be obtained organically.  Instead, Plaintiff is informed and believes, and on that basis, alleges that palm kernel oil must be extracted from the pit with a gasoline-like hydrocarbon solvent. Plaintiff is informed and believes, and on that basis, alleges that fractionation is a further phase of palm oil processing, designed to extract and concentrate specific fatty acid fractions.  Plaintiff is informed and believes, and on that basis, alleges that fractionated palm oil, as found in food products, has a higher concentration of saturated fat than regular palm oil and is used for the convenience of manufacturers like Cytosport who like its stability and melting characteristics.

2AC at ¶¶ 37-38.

These passages mirror the allegations in Plaintiff's 1AC, except that Plaintiff now directly claims that partially hydrogenated palm oil is a trans fat.

Plaintiff newly alleges that the "Vanilla Toffee Crunch" flavored bars contain thirteen grams of fat and ten grams of saturated fat, despite their labeling, which represents that they have ten grams of fat and eight grams of saturated fat.

The 2AC, unlike the 1AC, borrows from regulations established by the Food and Drug Administration (FDA) to allege that certain nutrient claims on the products are false and misleading. Plaintiff claims that California law, specifically the Sherman Food, Drug and Cosmetic Law, California Health and Safety Code

United States District Court
For the Northern District of California

section 109875 et seq., adopted the requirements of federal food labeling regulations.

Under § 403 of the Federal Food, Drug and Cosmetic Act (FDCA), a statement that characterizes the level of a nutrient in a food is a "nutrient content claim," and such claims can only be made if they comply with FDA regulations concerning those claims. 21 U.S.C. § 343(r)(1)(A). An "expressed nutrient claim" is defined as "any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'" 21 C.F.R. § 101.13(b)(1). An "implied nutrient content claim" is defined as any claim that

> (i) Describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., "high in oat bran"); or
>
> (ii) Suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., "healthy, contains 3 grams (g) of fat").

21 C.F.R. § 101.13(b)(2)(i)-(ii).

Section 101.65(d)(2) provides that food labeling "may use the term 'healthy' or related terms (e.g., 'health,' 'healthful,' 'healthfully,' 'healthfulness,' 'healthier,' healthiest,' healthily,' and 'healthiness') as an implied nutrient content claim if, among other things, the food meets the regulatory

United States District Court
For the Northern District of California

definitions for low fat and low in saturated fat, and contains a certain minimum amount of nutrients.[2]

Specifically, Plaintiff claims that the label and website for the fourteen ounce RTD product are misleading because the drink exceeds the amount of fat permitted to qualify as a "low fat" product under FDA regulations.  2AC at ¶ 69.  According to the complaint, as a result of the drink's failure to meet the standard for a "low fat" product, the RTD label may not, under § 101.65(d)(2), use the term "healthy" or related terms.  2AC at ¶ 69.

Similarly, Plaintiff asserts that the label and website for the bars falsely represent the healthfulness of the food and its ingredients, because the fat content exceeds the amount permitted by FDA regulations setting the standard for products labeled "low fat," 21 C.F.R. § 101.62(b)(2), and the saturated fat content exceeds the amount permitted by the regulation setting the standard for foods labeled as "low in saturated fat."  21 C.F.R. § 101.62(c)(2).  2AC at ¶¶ 70-71.  As a result, the Muscle Milk® bars did not meet the regulatory standard under § 101.65(d)(2) for a product labeled with the word "healthy" or related terms.  2AC at ¶¶ 70-71.

---

[2] Section 101.65(d)(2)(i) provides a matrix listing categories of food and, according to each category of food, the standards for fat, saturated fat, cholesterol and other nutrients. The standards cross-reference the levels set forth in § 101.62(b)(2) and (c)(2), among others, which identify when a product may be labeled with the express nutrient claims "low fat," "low saturated fat" or similar terms.

**United States District Court**
For the Northern District of California

Finally, Plaintiff also alleges that, to prevent companies from making misleading claims that distract consumers from unhealthy levels of fats, saturated fats, or sodium contained in products, 21 C.F.R. § 101.13 prohibits companies from making unqualified nutrient content claims if their products exceed specified levels of those unhealthy substances.  2AC at ¶ 63.  If the products exceed those levels, their labeling must contain a disclosure statement, referring to the nutrition information. Plaintiff claims that, in light of these regulations, the bars' label is misleading because it states "0g Trans Fat," while the product contains more than four grams of saturated fat and its label omits the disclosure statement, "See nutrition information for saturated fat content."  2AC at ¶ 64.  Plaintiff claims that Defendant "misdirects consumers to a nutrient in Muscle Milk® Bars that purportedly is low, while failing to draw consumers' attention to the harmful levels of the saturated fat that they are obligated to disclose."  Id.

Plaintiff has added certain allegations concerning the extent of Defendant's advertising campaign for the products.  She claims,

> According to the Declaration of Roberta White, Cytosport's Vice President of Corporate Development . . . filed in [other litigation] . . . "Cytosport has spent tens of millions of dollars promoting and advertising the MUSCLE MILK® ready-to-drink product . . . and has spent over $100 million dollars promoting the MUSCLE MILK® brand generally." Additionally, according to Ms. White's declaration, "Cytosport advertises the MUSCLE MILK® ready-to-drink product over the Internet, in magazines, on billboards, through paid professional endorsements, agreements with academic institutions, at tradeshows, sporting events, bodybuilding competitions, and through other media outlets."

United States District Court
For the Northern District of California

Finally, Plaintiff newly alleges, "In deciding to purchase the Products, Plaintiff saw and relied on the representations on the false, misleading, and misbranded packaging of Cytosport's Muscle Milk® Ready-To-Drink (RTD) and Muscle Milk® Bars products," including the specifically alleged misrepresentations on the products.  2AC at ¶ 74.  Plaintiff further alleges that she "saw and relied" on the alleged misrepresentations provided on the website and in Defendant's television advertisements.  2AC at ¶ 76.

LEGAL STANDARD

I. Sufficiency of Claim under Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

II. Federal Rule of Civil Procedure 9(b)

"In all averments of fraud or mistake, the circumstances

United States District Court
For the Northern District of California

constituting fraud or mistake shall be stated with particularity."
Fed. R. Civ. P. 9(b).  "It is well-settled that the Federal Rules
of Civil Procedure apply in federal court, 'irrespective of the
source of the subject matter jurisdiction, and irrespective of
whether the substantive law at issue is state or federal.'"
Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009)
(citing Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102 (9th
Cir. 2003).  The allegations must be "specific enough to give
defendants notice of the particular misconduct which is alleged to
constitute the fraud charged so that they can defend against the
charge and not just deny that they have done anything wrong."
Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).  Statements
of the time, place and nature of the alleged fraudulent activities
are sufficient, id. at 735, provided the plaintiff sets forth
"what is false or misleading about a statement, and why it is
false."  In re GlenFed, Inc., Secs. Litig., 42 F.3d 1541, 1548
(9th Cir. 1994).

DISCUSSION

I. Allegations of False and Misleading Statements

Defendant does not request that the Court reconsider its
prior ruling that Plaintiff alleged a cognizable misrepresentation
based on its labeling and advertising that the products contain
"healthy fats."  However, Defendant argues that Plaintiff has
failed to allege any additional false or misleading statement
under the UCL, CLRA and FAL or her common law claims for fraud or
negligent misrepresentation.

Claims of deceptive labeling under these California statutes
are evaluated by whether a "reasonable consumer" would be likely

United States District Court
For the Northern District of California

to be deceived.  <u>Williams v. Gerber Prods. Co.</u>, 552 F.3d 934, 938 (9th Cir. 2008) (citing <u>Freeman v. Time, Inc.</u>, 68 F.3d 285, 289 (9th Cir. 1995)).  Common law claims for fraud and negligent misrepresentation similarly require that the consumer justifiably rely on a representation that is false or subject to a misleading omission.  <u>Robinson Helicopter Co., Inc. v. Dana Corp.</u>, 34 Cal. 4th 979, 990 (2004) (common law fraud); <u>Century Sur. Co. v. Crosby Ins., Inc.</u>, 124 Cal. App. 4th 116, 129 (2004) (negligent misrepresentation).  Federal Rule of Civil Procedure 9(b) applies to claims sounding in fraud under the common law and statutory law, requiring particularized pleading of alleged false statements, and the basis for the claim of falsity.

A. Federal Food Labeling Regulations

Defendant argues that Plaintiff should not be permitted to add allegations that rely on the FDCA and the FDA's regulations promulgated thereunder.  Defendant first argues that such allegations violate the Court's prior order granting limited leave to amend.  Although Plaintiff did not include allegations based on federal regulations in her 1AC, they do not contradict any facts alleged in the previous complaint.  Moreover, Plaintiff has added no new legal claims.  Although in her opposition she has identified "good carbohydrates" as a purported misrepresentation, this statement was included in her 1AC.  None of Plaintiff's allegations are beyond the scope authorized by the Court in its prior order.

Defendant also argues that, based on the doctrine of judicial estoppel, Plaintiff should be barred from amending her allegations to include the FDA regulations.  Judicial estoppel "'is an

12

**United States District Court**
For the Northern District of California

equitable doctrine invoked by a court at its discretion.'"   New
Hampshire v. Maine, 532 U.S. 742, 750 (2001) (quoting Russell v.
Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)).   "In determining
whether to apply the doctrine, we typically consider (1) whether a
party's later position is 'clearly inconsistent' with its original
position; (2) whether the party has successfully persuaded the
court of the earlier position, and (3) whether allowing the
inconsistent position would allow the party to 'derive an unfair
advantage or impose an unfair detriment on the opposing party.'"
United States v. Ibrahim, 522 F.3d 1003, 1009 (9th Cir. 2008)
(citing New Hampshire, 532 U.S. at 750-51).   In addition, the
Ninth Circuit has stated that judicial estoppel "seeks to prevent
the deliberate manipulation of the courts," and therefore should
not apply "when a party's prior position was based on inadvertence
or mistake."   Id.

Plaintiff's original position was that her claims did not
rely on FDA regulations.   In contrast, the 2AC borrows from FDA
regulations setting general requirements for certain expressed and
implied nutrient content claims.   As noted earlier, although these
allegations were not included in the previous complaint, they are
not inconsistent in the sense that they do not contradict any
prior allegations.   Rather, the allegations respond to the Court's
ruling that certain words and phrases failed to support a claim
for fraud or negligent misrepresentation because they were
difficult to define and not clearly false.   The FDA regulations
may lend objective criteria by which to determine whether certain
words and phrases used on the labels are misleading.   Moreover,
the new allegations do not impose on Defendant any unfair

United States District Court
For the Northern District of California

detriment.  Defendant argues that, had it known that Plaintiff
would add allegations based on the FDA regulations, it would have
requested a determination on the FDA's primary jurisdiction in the
first instance.  Defendant, however, did assert the primary
jurisdiction doctrine in its first motion to dismiss.
Furthermore, the issue of the FDA regulations is not a surprise
because Plaintiff submitted an FDA warning letter in her
opposition to the first motion to dismiss.  The FDA's warning
letter was issued pursuant to the regulations Plaintiff now cites
in her 2AC.  Plaintiff cannot be faulted for adding these
allegations in light of the Court's ruling that her allegations as
to the falsity of the product labeling were inadequate.  Judicial
estoppel is unwarranted.

Defendant also argues that the allegations based on the FDA
warning letter do not support Plaintiff's claims that certain
words and phrases were misleading.  In certain instances,
Plaintiff's 1AC did not state a claim for fraud or negligent
misrepresentation because the asserted terms were difficult to
define and Plaintiff failed to allege that the statements were
false based on some objective criteria.  Thus, Plaintiff's
citations to FDA regulations provide objective criteria that may
support her contention that certain representations on the product
labeling are misleading.  Plaintiff's theory is that the product
labels and website claim are false and misleading because they
represent that the products are "healthy" when, in fact, they
contain unhealthy ingredients or contain certain ingredients in
unhealthy amounts.  The FDA regulations provide objective criteria
for determining whether products contain unhealthy ingredients or

certain ingredients in unhealthy amounts and, thus, whether a cognizable misrepresentation has been alleged.  The allegations may support the falsity of the labels.

Finally, Defendant argues in a footnote that Plaintiff's claims that make reference to FDA regulations are preempted by federal law.  Defendant argues that FDA regulations may not be enforced by a private action.  It contends that permitting private enforcement of FDA regulations interferes with and obstructs the agency's interest in nationally uniform food labeling regulations. In support of its argument, Defendant cites 21 U.S.C. § 337(a), which provides that all proceedings to enforce, or to restrain violations under, the FDCA, "shall be by and in the name of the United States," except for those actions brought by a state pursuant to subsection (b).  This provision preempts private enforcement of FDA regulations, but it does not expressly preclude all claims under state law that may involve food product labeling. Indeed, § 343-1 of the FDCA, 21 U.S.C. § 343-1, authorizes states to establish laws that are "identical to" federal labeling requirements.  In Farm Raised Salmon Cases, 42 Cal. 4th 1077, 1090 (2008), the California Supreme Court held, "While Congress clearly stated its intent to allow states to establish their own identical laws, it said absolutely nothing about proscribing the range of available remedies states might choose to provide for the violation of those laws, such as private actions."  Accordingly, the court held that § 337 of the FDCA did not impliedly preempt the plaintiffs' state law claims, including their claims for negligent misrepresentation and UCL violations, based on the defendants' failure to disclose the addition of artificial food

**United States District Court**
For the Northern District of California

coloring, as required by the FDCA and by the state's Sherman Law. Id. at 1099.  In re Epogen and Aranesp Off-Label Marketing and Sales Practices Litigation, 2009 WL 1703285 (C.D. Cal.), a case upon which Defendant relies, is not persuasive because the Epogen court did not address the elements of the doctrine of federal preemption or § 343-1 in its decision or its order on the prior motion to dismiss in the case, and the case did not concern food product labeling.  Farm Raised Salmon Cases, however, did address these factors.[3]

In sum, Plaintiff's new allegations referring to FDA regulations will not be dismissed.

B. The Asserted Statements

Plaintiff alleges that the statement, "Healthy, Sustained Energy," made on the fourteen-ounce RTD label in production prior to February 2011, and on the product website and its television ad, is misleading because it represents that the product is healthy, implying that the drink does not contain an unhealthy amount of fat.  Although, as has been noted, a healthy product is difficult to define, Plaintiff now provides objective standards, such as the requirements identified by the FDA, which could evidence that certain contents in a product are not healthful.  A

---

[3] Defendant also relies on Pom Wonderful, LLC v. Coca-Cola Co., 2012 WL 1739704 (9th Cir.), but the case is not applicable. There, the Ninth Circuit did not rule on whether the FDCA expressly preempted Pom's state law claims under the UCL and FAL. See id. at *6-7.  Instead, after reversing the district court's ruling that Pom lacked standing under the UCL, the Ninth Circuit remanded the case for the district court to resolve whether the FDCA preempted state law claims.  Id.  The Ninth Circuit's preemption ruling was limited to a finding that the FDCA preempted Pom's claims under the Lanham Act.

representation that a product is "healthy" could reasonably lead a consumer to believe that certain unhealthy contents are absent from the product.  For the purpose of this motion to dismiss, the "Healthy, Sustained Energy" statement on the RTD labels is a cognizable mirepresentation.

For similar reasons, the Court now finds that the statement, "25g PROTEIN for Healthy, Sustained Energy," contained in the label for the bars is also actionable.  The statement conveys that the bars are a healthy source of energy and, thus, may imply that they do not contain an unhealthy amount of fat and saturated fat. Plaintiff alleges that the bars contain excessive amounts of fat and saturated fat, according to FDA standards.

In contrast, the term "good carbohydrates" contained on the fourteen-ounce RTD label, is not actionable.  Plaintiff has not provided any objective criteria for determining that the added sweeteners and sugars are in fact not good carbohydrates.  Whole Foods is a commercial retailer that markets expensive, purportedly healthy, organic food, but Plaintiff has not alleged that its scientific expertise or review process qualify the company to identify objectively good or bad carbohydrates.

Plaintiff further alleges that the bars' label is misleading because it contains the claim "0g Trans Fat."  At the hearing, Plaintiff clarified that she does not claim that the statement misrepresents the amount of trans fat in the bars.  Rather, she alleges that the "0g Trans Fat" statement distracts consumers from the product's unhealthy fat and saturated fat content.  The alleged distraction, however, does not amount to a false statement or misrepresentation and, thus, is not an actionable claim.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Finally, Plaintiff claims that the Vanilla Toffee Crunch bars contain amounts of fat and saturated fat that exceed the amounts indicated on the product labeling. At the hearing, Plaintiff stated that she was not suing based on misrepresentations as to the amounts of fat and saturated fat but, instead, claims that the statements as to fat and saturated fat content compound the misleading nature of the product labeling. As noted earlier, the Court found that the "Healthy, Sustained Energy" statement contained on the label for the bars is actionable because it conveys that the bars are a healthy source of energy and, thus, may imply that they are free of unhealthy amounts of fat and saturated fat. Plaintiff has not plead that the amounts of fat and saturated fat indicated on the labeling for the Vanilla Toffee Crunch bars indicate healthy amounts of the substances or somehow create a deceptive context for the "Healthy, Sustained Energy" statement. Thus, Plaintiff's Vanilla Toffee Crunch bar allegations add nothing to her claim.

## II. Reliance

A plaintiff seeking to prosecute a UCL and FAL claim is required to demonstrate actual reliance on the allegedly deceptive or misleading statements. Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 326 (2011). The CLRA imposes a requirement that a violation "caus[e] or result[] in some sort of damage." Meyer v. Sprint Spectrum L.P., 45 Cal. 4th 634, 641 (2009). Common law fraud requires that the victim show reasonable reliance on the allegedly deceptive representation. In re Tobacco II Cases, 46 Cal. 4th 298, 312 (2009).

**United States District Court**
For the Northern District of California

The Court previously found that Plaintiff's allegation that she was "exposed to" the product labels supported a weak inference that she relied on them.  Plaintiff's claims in the 2AC that she "saw and relied" on the product packaging amount to stronger allegations of reliance.

Plaintiff's claims of reliance on misrepresentations on the website are now adequate.  She has plead that she "saw and relied" on the alleged misrepresentations on the website in deciding to purchase the products.  She also alleges that she saw and relied on television ads.  Thus, this case differs from Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1363-64 (2010), where the plaintiff did not claim that he ever visited the defendant's website, containing the purported misrepresentations, and Kearns, 567 F.3d at 1125-26, where the plaintiff did not allege what the television advertisements or sales material at issue specifically stated, and did not allege when he was exposed to them or which he found material.

With respect to Defendant's alleged long-term advertising campaign, the Court previously held that Plaintiff inadequately plead reliance on any elements of it other than those she saw. The additional allegations regarding the scope of the advertising campaign do not establish that the advertising campaign was as lengthy or pervasive as the tobacco campaign.  Cf. Tobacco II Cases, 46 Cal. 4th at 327-28.  Plaintiff has not alleged reliance in connection with the advertising campaign because she has not claimed that she saw and relied on any of the advertising, apart from the product websites and television ads.

United States District Court
For the Northern District of California

1    Dismissal of Plaintiff's claims based on her failure to

2    allege reliance is denied; she adequately alleges reliance on the

3    product labels and websites, and the television advertisements.

4    III. Preemption

5        Defendant again seeks dismissal of this action, or, in the

6    alternative, a stay of the proceedings based on the primary

7    jurisdiction doctrine.  "The primary jurisdiction doctrine allows

8    courts to stay proceedings or to dismiss a complaint without

9    prejudice pending the resolution of an issue within the special

10   competence of an administrative agency."  Clark v. Time Warner

11   Cable, 523 F.3d 1110, 1114 (9th Cir. 2008).  "[T]he doctrine is a

12   'prudential' one," rather than one that indicates that the court

13   lacks jurisdiction.  Id.  No "fixed formula" exists for applying

14   the doctrine of primary jurisdiction.  Id. at 1115.  However, the

15   Ninth Circuit has traditionally examined the following factors:

16   "(1) a need to resolve an issue that (2) has been placed by

17   Congress within the jurisdiction of an administrative body having

18   regulatory authority (3) pursuant to a statute that subjects an

19   industry or activity to a comprehensive regulatory authority that

20   (4) requires expertise or uniformity in administration."  Id.

21   (internal alteration and quotation marks omitted).

22       Dismissal and a stay are unwarranted in this case because

23   Defendant has failed to demonstrate that Plaintiff's claims under

24   California law require the FDA's scientific or technical

25   expertise.  Certain of Plaintiff's claims now allude to FDA

26   regulations, but only to the extent that they may provide criteria

27   by which to judge whether certain nutrient content claims are

28   misleading.  These criteria are available in established federal

regulations.  The FDA's expertise, however, is not necessary to determine whether the labels are misleading.  The reasonable-consumer determination and other issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve.  Application of the primary jurisdiction doctrine is not warranted.

CONCLUSION

Defendant's second motion to dismiss is granted in part and denied in part.  The claim in the 2AC as to misrepresentations based the "good carbohydrates" statement, the allegation that the "0g Trans Fat" statement distracts consumers from the product's unhealthy fat and saturated fat content, and the claim that a long-standing advertising campaign misled the public are not actionable.  Defendants' motion is otherwise denied.

Plaintiff shall notice any motion for class certification for hearing on November 8, 2012 at 2:00 pm.  A case management conference will also be held that day, whether or not a motion for class certification is filed.

IT IS SO ORDERED.

Dated:  6/28/2012

CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California