Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698

Attorneys for Plaintiff
CLAIRE DELACRUZ individually, and
on behalf of other members of
the public similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CLAIRE DELACRUZ, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CYTOSPORT, INC., a California Corporation,<br><br>Defendant. | Case Number: 4:11-cv-03532-CW<br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: April 11, 2013<br>Time: 2:00 p.m.<br>Location: Courtroom 2, 4th Floor<br>1301 Clay Street<br>Judge: Hon. Claudia Wilken<br><br>Action Filed: July 18, 2011<br>Trial Date: None Set |

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ............................................................................................. 2

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................... 3

III.  SETTLEMENT TERMS ................................................................................ 5

    A.    Total Settlement Value ......................................................................... 5

    B.    Class Members ...................................................................................... 5

    C.    Payments to Plaintiff and Class Members .......................................... 5

    D.    Injunctive Relief ................................................................................... 6

    E.    Cy Pres Payment .................................................................................. 6

    F.    Class Notice and Settlement Administration ...................................... 6

    G.    Attorneys' Fees and Expenses ............................................................. 6

    H.    Residual Value of the Settlement ........................................................ 6

IV.   THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL ................................................................... 7

    A.    The Proposed Settlement Resulted from Serious, Informed, and Non-Collusive Negotiations Conducted at Arm's-Length ...................................... 8

    B.    The Proposed Settlement Is Fair, Adequate and Reasonable ...................... 10

V.    THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED ....... 12

    A.    The Class Satisfies Federal Rule of Civil Procedure 23(a) ........................... 13

        1.    Numerosity ................................................................................. 13

        2.    Commonality .............................................................................. 13

        3.    Typicality ................................................................................... 14

        4.    Adequacy of Representation ...................................................... 15

B.   The Class Should be Conditionally Certified under Federal Rule of
     Civil Procedure 23(b)(3) ........................................................ 19

     1.   Common Questions Predominate over Individual Issues .................. 19

     2.   A Class Action Is the Superior Method to Settle this
          Controversy ........................................................ 20

VI.   THE PROPOSED CLASS NOTICE IS APPROPRIATE ..................................... 21

VII.  CONCLUSION ......................................................................... 22

1

## <u>TABLE OF AUTHORITIES</u>

2

PAGE(S)

3

CASES

4
5

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...................................................................................... 13, 19, 21

6
7

*Bias, et al., v. Wells Fargo & Company, et al.*
   (N.D. Cal. Case No. 4:12-cv-00664-YGR) ......................................................... 16, 18

8

*Brad Aarons v. BMW of North America LLC*
   (C.D. Cal. Case No. 2:11-cv-07667-PSG-CW)..................................................... 16, 18

9
10

*Buckland v. Threshold Enterprises, Ltd.*,
   155 Cal. App. 4th 798 (2007) .................................................................................... 18

11
12

*Churchill Village, LLC v. Gen. Elec. Co.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................................... 7, 21

13
14

*Clark v. NeilMed Pharmaceuticals, Inc.*
   (S.D. Cal. Case No. 3:10-cv-01453).......................................................................... 16

15
16

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ..................................................................................... 8

17
18

*Deposit Guaranty Nat'l Bank v. Roper*,
   445 U.S. 326 (1980).................................................................................................. 20

19
20

*Ellis, et al., v. J.P. Morgan Chase & Co., et al.*,
   (N.D. Cal. Case No. 4-12-cv-03897-YGR) .......................................................... 16, 18

21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...........................................................................passim

22
23

*Hopson v. Hanesbrands Inc.*,
   2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009)............................................. 11

24
25

*In re Heritage Bond Litig.*,
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005)......................................... 8, 9

26
27

*In re Light Cigarettes Marketing and Sales Practices Litig.*,
   652 F. Supp. 2d 1379 ................................................................................................. 18

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*In re Mego Fin.Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................................... 10

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) .................................................................. 7

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ........................................................ 7, 12

*In re Toys "R" Us Antitrust Litig.*,
   191 F.R.D. 347 (E.D.N.Y. 2000) ...................................................... 12

*In re: Alexia Foods, Inc.*
   (N.D. Cal. Case No. 4:11-cv-06119-PJH) .................................... 16, 17

*In re: Avon Anti-Aging Skincare Creams and Products Marketing and Sales
   Practices Litigation*
   (S.D.N.Y. Case No. 1:13-cv-01417) ............................................. 16, 17

*In re: L'Oreal Wrinkle Cream Marketing and Sales Practices Litigation*
   (D.N.J. Case No. 2:12-cv-07869) .................................................. 16, 17

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) .............................................................. 15

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ...................................................... 19, 20

*Marilau v. McDonald's Corp.*,
   632 F. Supp. 2d 1008 (S.D. Cal. 2009) ............................................... 18

*Mazza v. Am. Honda Motor Co.*,
   254 F.R.D. 610 (C.D. Cal. 2008) ........................................................ 19

*Michael J. Otto v. Abbott Laboratories, Inc.*,
   (C.D. Cal. Case No. 5:12-1411-SVW) .......................................... 16, 17

*Officers for Justice v. Civil Serv. Comm.*,
   688 F.2d 615 (9th Cir. 1982) ............................................................ 7, 8

*Parra v. Bashas', Inc.*,
   536 F.3d 975 (9th Cir. 2008) .............................................................. 14

*Poliner v. Gateway Computers*
   (Los Angeles Super. Ct. Case No. BC308923) .............................. 16, 17

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985) .................................................................................. 14

*Simon v. Toshiba America*,
    2010 U.S. Dist. LEXIS 42501 (N.D. Cal. Apr. 30, 2010) ........................................... 11

*Staton v. Boeing*,
    327 F.3d 938 (9th Cir. 2003) .............................................................................. 14, 15

*Stitt, et al., v. Citibank, N.A., et al.*,
    (N.D. Cal. Case No. 4:12-cv-03892-YGR) ............................................................ 16, 18

*Tchoboian v. Parking Concepts, Inc.*,
    2009 U.S. Dist. LEXIS 62122 (C.D. Cal. July 16, 2009) ............................................. 13

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ...................................................................................... 7

*Wehner v. Syntex Corp.*,
    117 F.R.D. 641 (N.D. Cal. 1987) ................................................................................ 14

*Wiener v. Dannon Co.*,
    255 F.R.D. 658 (C.D. Cal. 2009) .......................................................................... 18, 19

*Williams v. Costco Wholesale Corp.*,
    2010 U.S. Dist. LEXIS 19674 (S.D. Cal. Mar. 4, 2010) ............................................. 11

*Young v. Polo Retail, LLC*,
    2006 U.S. Dist. LEXIS 81077 (N.D. Cal. Oct. 25, 2006) ................................... 7, 8, 12

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) .................................................................................... 20

**FEDERAL AUTHORITIES**

Federal Rule of Civil Procedure 23 .............................................. 12, 13, 14, 19, 20, 21, 22

**STATUTES**

California Business and Professions Code § 17200 ......................................................... 4

California Business and Professions Code §17500. .......................................................... 4

California's Consumers Legal Remedies Act, California Civil Code § 1750 .................... 3

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 11, 2013 at 2:00 p.m., or as soon thereafter as counsel can be heard, before the Honorable Claudia Wilken, at the United States District Courthouse, Courtroom 2, Fourth Floor, 1301 Clay Street, Oakland, California 94612, Plaintiff Claire Delacruz ("Plaintiff") will and hereby does move this Court for an Order: (i) granting preliminary approval of the Settlement Agreement and Release ("Settlement") Plaintiff has entered into with Defendant CytoSport, Inc. ("Defendant" or "CytoSport"); (ii) certifying the settlement class ("Class" or "Class Members") for purposes of the settlement; (iii) designating Plaintiff as representative of the Class; (iv) appointing Baron & Budd, P.C. ("Baron & Budd") as counsel for the Class; (v) approving the class notice; and (vi) scheduling a hearing for final approval of the Settlement.

This motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declarations of Roland Tellis and Mark Pifko, all exhibits attached thereto, and such other written or oral arguments that may be presented to the Court.


Dated:  March 7, 2013              BARON & BUDD, P.C.
                                   Roland Tellis
                                   Mark Pifko


                          By:   /s/ Mark Pifko
                                   Mark Pifko

                                   Attorneys for Plaintiff
                                   CLAIRE DELACRUZ, individually, and
                                   on behalf of other members of the public
                                   similarly situated

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Claire Delacruz ("Plaintiff") submits this Memorandum in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement.

## I.    INTRODUCTION

After months of negotiations and settlement discussions, Plaintiff and Defendant CytoSport, Inc. ("CytoSport" or "Defendant") (collectively, the "Parties") have reached a settlement.  In sum, under the proposed Settlement Agreement and Release, CytoSport will provide monetary compensation to members of the proposed Class, and will remove allegedly misleading language from its product labels.  The proposed Settlement resolves all of Plaintiff's and Class Members' claims against CytoSport in this litigation.

This is a consumer class action concerning allegedly false and misleading advertising and marketing practices conducted by CytoSport in connection with the sale of its Muscle Milk® Ready-to-Drink ("RTD") and Muscle Milk® Bars ("Bars") products (collectively, the "Products").  In short, Plaintiff alleges that CytoSport falsely and deceptively represented to consumers that the Products were "healthy," in violation of state and federal regulations governing such conduct.  Accordingly, Plaintiff's Second Amended Complaint (the operative pleading) asserted claims against CytoSport under the common law and California consumer statutes, which incorporate state and federal labeling regulations.

To reach the Settlement, over the past year, Plaintiff and Defendant participated in three formal mediation sessions, with two well-respected mediators from JAMS.  In addition to those meetings, the Parties spent a considerable amount of time and resources investigating Plaintiff's claims, engaging in discovery, discussing potential resolutions to this dispute, and ultimately negotiating the documents memorializing the Settlement.  As a result, the Parties' settlement is the product of informed, non-collusive negotiation, and is fair, adequate, and reasonable.  Therefore, this Court should preliminarily approve the settlement.

Plaintiff seeks an order (i) granting preliminary approval of the Parties' settlement; (ii) conditionally certifying the Class described in the Parties settlement agreement; (iii) designating Plaintiff as representative of the Class; (iv) appointing Baron & Budd, P.C. as counsel for the Class; (v) approving notice of the settlement to the Class; and (vi) scheduling a hearing for final approval of the settlement.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This case concerns advertising practices conducted by CytoSport in connection with the sale of CytoSport's RTD and Bars.  Plaintiff alleges that CytoSport's use of the word "healthy" to advertise the Products was false and misleading, because the Products contain significant amounts of fats, sugars, and other unhealthy ingredients.  (*See* Second Amended Complaint ("2AC"), Dkt. No. 35.)  Plaintiff further alleges that CytoSport's use of the term "healthy" in its advertising for the Products is misleading because this practice is in direct violation of FDA regulations defining the term "healthy" in food labeling. (*Id.*)

On July 18, 2011, Plaintiff filed her Complaint against CytoSport, on behalf of herself and a class of similarly situated individuals.  (Dkt. No. 1.)  On September 15, 2011, Plaintiff filed her First Amended Complaint ("1AC") against CytoSport, on behalf of herself and a class of similarly situated individuals.  (Dkt. No. 12.)  On April 11, 2012, the Honorable Claudia Wilken issued an order denying in part and granting in part Defendant's motion to dismiss the 1AC.  (*See* Dkt. No. 34.)  The Court granted Plaintiff leave to amend to provide an objective standard to support her challenges to CytoSport's "healthy" representations.  (*Id.*)

On April 18, 2012, Plaintiff filed her Second Amended Complaint.  (Dkt. No. 35.) She alleged that CytoSport's practices violated FDA regulations concerning the use of the term "healthy" in food labeling.  (*Id.*)  Accordingly, Plaintiff alleged that CytoSport's advertising was misleading and likely to deceive reasonable consumers.  (*Id.*)  The 2AC asserts the same six causes of action alleged in the 1AC:  (1) violation of California's Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq.* ("CLRA");

(2) violation of California's Unfair Competition Law, California Business and Professions Code sections 17200 *et seq.* ("UCL"); (3) violation of California's False Advertising Law, California Business and Professions Code sections 17500 *et seq.* ("FAL"); (4) fraud; (5) negligent misrepresentation; and (6) unjust enrichment.  (*Id.*)  CytoSport filed a motion to dismiss Plaintiff's 2AC.  (Dkt. No. 36.)  On June 28, 2012, this Court issued an order upholding the bulk of Plaintiff's allegations in her 2AC.  (*See* Dkt. No. 48.)

Both prior to and following the filing of this action, Plaintiff's counsel conducted a thorough investigation of Plaintiff's claims.  (Declaration of Mark Pifko in Support of Plaintiff's Motion for Preliminary Approval of Settlement ("Pifko Decl.") at ¶ 7.)  Such efforts included, for example, testing the Products for nutritional content, consulting with experts regarding the Products' nutritional content, reviewing scientific research concerning the Products and their ingredients, and discussing claims with Plaintiff and putative class members.  (*Id.*)

The Parties also engaged in substantial discovery concerning Plaintiff's claims.  (*Id.* ¶ 8.)  Discovery efforts included reviewing of documents produced by CytoSport, deposing several key witnesses, including executives at CytoSport and third parties involved in the marketing of the Products, and serving numerous third-party subpoenas for documents.  (*Id.*)  In addition, Plaintiff retained two experts who have developed and provided detailed reports concerning her claims.  (*Id.*)

On April 27, 2012, the Parties participated in an all-day mediation session with Hon. Edward A. Panelli (Ret.) at JAMS in San Francisco.  (*Id.* ¶ 10.)  Then, on September 11, 2012, the Parties participated in another all-day mediation session, this time with Hon. Judge Carl J. West (Ret.) at JAMS in Los Angeles.  (*Id.*)  Having made significant progress towards settlement during the second mediation session, the Parties arranged for a third mediation session, which was conducted by Judge West at JAMS in San Francisco on September 28, 2012.  (*Id.*)  Although the Parties did not reach a settlement there, they continued to negotiate material terms via phone and email.  (*Id.*)  Thereafter, the Parties ultimately reached an agreement concerning the material terms, and memorialized the

1  resulting Settlement Agreement and Release on February 27, 2013.  (*Id.*)

2  **III.    SETTLEMENT TERMS**

3        The terms of the settlement in this action are enumerated in the Settlement

4  Agreement and Release.  (*See* Pifko Decl., Exh. 1) (the "Settlement").

5        **A.      Total Settlement Value**

6        The total value of the Settlement is $5,275,000, and includes: (1) payments to

7  Plaintiff and Class Members; (2) injunctive relief; (3) a *cy pres* award; (4) class notice and

8  settlement administration costs; (5) attorneys' fees and expenses; and (6) distribution of

9  the Products in kind.

10       **B.      Class Members**

11       Under the Settlement, Class Members are defined as:

12              All persons who purchased the Products at retail in the United
               States between July 18, 2007 through December 31, 2012.

13  (*Id.*)

14       **C.      Payments to Plaintiff and Class Members**

15       Under the Settlement, to address the alleged misrepresentations which occurred

16  before the Parties reached a settlement, Class Members -- both with and without proof of

17  purchase of the Products -- will have the opportunity to make claims for payment from the

18  settlement fund.  (*Id.*)  Each claimant who possesses proof of purchase of the Products

19  will be eligible to receive up to $30 from the settlement fund.  (*Id.*)  This monetary

20  compensation includes $4.00 per Muscle Milk® Ready-to-Drink ("RTD") purchased, and

21  $2.50 per Muscle Milk® Bar ("Bar") purchased.  (*Id.*)  Claimants who no longer possess

22  proof of purchase, but who submit  a Claim Form under penalty of perjury, will be

23  eligible to receive up to $10 from the settlement fund.  (*Id.*)  This compensation includes

24  $4.00 per RTD purchased, and $2.50 per Bar purchased.  (*Id.*)  Additionally, Plaintiff, as

25  class representative, may receive an incentive payment, subject to approval by the Court,

26  of up to a maximum of $6,000.

27

28

### D.    Injunctive Relief

Additionally, under the terms of the Settlement, to address the alleged misrepresentations concerning labeling of the Products going forward, CytoSport must remove the phrase "Healthy, Sustained Energy" from the principal display panels of the Products for three years.  (*Id.*)  Furthermore, CytoSport also must cease using the term "healthy fats" on the labels of its RTD products for three years, *unless*: 1) the product actually contains less than 0.5 grams of saturated fat per serving, *or* 2) CytoSport includes the words "See nutrition information for saturated fat content" in connection with the phrase "healthy fats."  (*Id.*)

### E.    *Cy Pres* Payment

The Settlement also provides that CytoSport shall make a *cy pres* payment up to a maximum of $85,000 to the American Heart Association.  (*Id.*)  This award seeks to further the Class's interest in cardiovascular health.

### F.    Class Notice and Settlement Administration

CytoSport will pay for all costs associated with providing notice to the Class Members and administration of the Settlement.  (*Id.*)  A Settlement Administrator will be selected by the Parties to provide notice of the Settlement to Class Members, and to administer the terms of the Settlement.

### G.    Attorneys' Fees and Expenses

Plaintiff's counsel will petition the Court for an award of attorneys' fees.  (*Id.*)  CytoSport will not object to payment of court-approved Plaintiff's reasonable attorneys' fees of up to 23.5% of the total settlement fund value, to be paid out of the settlement fund.  (*Id.*)  In addition, CytoSport will not object to payment of Plaintiff's documented costs up to a total of $87,500, to be paid out of the settlement fund.  (*Id.*)

### H.    Residual Value of the Settlement

The residual value of the Settlement, if any, will be calculated by deducting, from the total settlement value of $5,275,000:  (1) payments to Class Members and Plaintiff;

(2) the monetary value of injunctive relief; (3) the *cy pres* award; (4) attorneys' fees and costs; and; (5) settlement notice and administration expenses.  If residual funds remain, then this amount will be distributed in the form of distribution of CytoSport's products to the American Cancer Society, and to elderly persons and hospital patients.  (*Id.*)

## IV.  THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL

The approval of a proposed class action settlement is a matter within the broad discretion of the trial court.  *Officers for Justice v. Civil Serv. Comm.*, 688 F.2d 615, 625 (9th Cir. 1982) (*cert. denied*, 459 U.S. 1217 (1983)).  In making this determination, the Court should evaluate the fairness of the settlement in its entirety.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . [t]he settlement must stand or fall in its entirety").

There is a strong judicial policy that favors settlements in complex class action cases.  *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  This is particularly true in class actions where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation.  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

At the preliminary approval stage, the Court's review is "to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.

> If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . .

*Young v. Polo Retail, LLC*, 2006 U.S. Dist. LEXIS 81077, at *12-13 (N.D. Cal. Oct. 25,

2006) (citation omitted).  Thus, the factors for preliminary approval are less extensive than the factors for final approval.  In considering whether the settlement falls within the range of possible approval, the Court should only conduct preliminary review of those factors.  *Id.* at *16.

In this case, as discussed below, the Settlement is the result of informed and non-collusive negotiations between the Parties.  Furthermore, it is fair, reasonable, and adequate to all concerned.  Therefore, the Court should preliminarily approve the Settlement.

> ### A.   The Proposed Settlement Resulted from Serious, Informed, and Non-Collusive Negotiations Conducted at Arm's-Length

Generally, "[a] presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'"  *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *32 (C.D. Cal. June 10, 2005) (*quoting* Manual for Complex Litigation (Third) § 30.42 (1995)).  Furthermore, absent fraud and collusion, the court may not only *rely* upon the judgment of experienced counsel, but should be hesitant to "substitute its own judgment for that of counsel."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Officers for Justice*, 688 F.2d 615 at 625.

In reaching the Settlement, the Parties were well-informed concerning the facts and law underlying Plaintiff's claims.  (Pifko Decl. ¶ 9.)  Indeed, the Parties have vigorously litigated this action for well over a year.  (*Id.*)  Counsel for Plaintiff conducted extensive investigation of facts surrounding Plaintiff's claims, both before and after filing this action.  (*Id.* ¶¶ 7-8.)  Plaintiff's counsel tested the Products for nutritional content, reviewed scientific research, consulted with nutritional experts, marketing experts, and discussed the claims with Plaintiff and putative class members, among other efforts.  (*Id.* ¶ 7.)

In addition, over the past year, the Parties engaged in substantial discovery efforts prior to settling the case.  (*Id.* ¶ 8.)  Discovery consisted of serving and responding to

1    requests for production of documents, reviewing and analyzing documents produced,

2    deposing several key witnesses (including CytoSport's executives and third party

3    marketing executives), and the preparation and service of numerous third party subpoenas.

4    (*Id.*)  In addition, Plaintiff retained two experts who provided detailed reports concerning

5    her claims.  (*Id.*)  As a result, by the time the Parties began to discuss a potential

6    settlement, Plaintiff's counsel had an in-depth understanding of the strengths and

7    weaknesses of Plaintiff's claims.  (*Id.* ¶ 9.)  The Parties were then able to engage in

8    informed negotiation with each other.  (*Id.*)

9           In addition, the Parties spent a considerable amount of time and resources

10   negotiating the Settlement.  (*Id.* ¶ 10.)  As discussed above, on April 27, 2012, the Parties

11   participated in a mediation session with the Honorable Edward A. Panelli (Ret.) at JAMS

12   in San Francisco.  (*Id* .)  The Parties then participated in an all-day mediation session on

13   September 11, 2012, with the Honorable Carl J. West at JAMS in Los Angeles.  (*Id.*)

14   Having made significant progress towards a settlement, the Parties met again for a third

15   mediation session with Judge West on September 28, 2012, in San Francisco.  (*Id.*)

16   Though a final settlement was not reached there, the Parties continued to negotiate the

17   material terms of a settlement via email and phone discussions.  (*Id.*)  Ultimately, the

18   Parties memorialized the Settlement Agreement and Release on February 27, 2013.  (*Id.*)

19          Moreover, Plaintiff is represented by attorneys from the national plaintiffs' firm

20   Baron & Budd, and the attorneys who negotiated the Settlement for Class Members are

21   highly skilled, with extensive experience negotiating settlements of this type.  (*See*

22   *generally* Declaration of Roland Tellis in Support of Motion for Preliminary Approval,

23   ("Tellis Decl."); Pifko Decl.)  (*Id.*)

24          Because the Settlement resulted from extended, informed, and non-collusive

25   negotiations assisted by JAMS mediators, and Plaintiff and Class Members are

26   represented by highly experienced counsel, the Court should "presume[e] the correctness"

27   of the Settlement.  *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *32.

28

## B.     The Proposed Settlement Is Fair, Adequate and Reasonable

In addition to the above, the Ninth Circuit has identified two additional factors to determine whether a proposed settlement is fair, adequate and reasonable:  (1) the strength of the plaintiffs' case, including the risk, expense, complexity and likely duration of further litigation; and (2) the amount offered in settlement.  *See In re Mego Fin.Corp. Sec. Litig.*, 213 F.3d 454, 458-460 (9th Cir. 2000).  Here, analysis of these factors supports the conclusion that the proposed settlement is well within the range of fairness, adequacy and reasonableness for approval.

First, considering the strength of Plaintiff's case, along with the risk, expense, complexity and likely duration of further litigation, settlement here is highly preferable to continued litigation of the claims.  Litigating this action through trial would be time-consuming and expensive.  As with most class actions, Plaintiff's claims are complex and risky.  Indeed, the question of whether CytoSport's Products are "healthy" would require further development of analysis by experts for both Parties, setting up a complex "battle of the experts."  Moreover, class certification itself always poses a risk.  Were Plaintiff unable to certify a class, the case would effectively be over for Class Members, and they would not be compensated.  By reaching this Settlement, the Parties will avoid continued litigation and will establish an efficient method for prompt resolution of Class Members' complicated claims against CytoSport.  Furthermore, it immediately provides the certainty of valuable benefits to Class Members.

Second, the Settlement contains excellent terms for Class Members and Plaintiff alike, and also directly addresses the allegedly deceptive advertising and marketing at issue.  The Settlement provides fair compensation to Class Members for the economic harm they allegedly suffered by purchasing the Products.  Each Class Member who possesses proof of purchase of the Products will be entitled to a payment of $4.00 per RTD purchased and $2.50 per Bar purchased, subject to a maximum of $30.00 total payment from the settlement fund.  (Pifko Decl. Exh. 1.)  In addition, each Class Member who do not possess proof of purchase may submit a Claim Form under penalty of perjury.

1   (*Id.*)  He or she will then be entitled to payment of $4.00 per RTD purchased and $2.50

2   per Bar purchased, subject to a maximum of $10.00 total payment from the settlement

3   fund.  (*Id.*)  Thus, the Settlement fairly accounts for the fact that many Class Members are

4   entitled to compensation, although they understandably no longer possess written proof of

5   purchase.

6           In addition, the named Plaintiff does not receive any unduly preferential treatment

7   under the terms of the Settlement.  Plaintiff may receive a maximum of $6,000 for her

8   role as class representative in this litigation.  (*Id.*)  Such incentive payments are

9   "presumptively reasonable."  *Simon v. Toshiba America*, 2010 U.S. Dist. LEXIS 42501, at

10  *12-13 (N.D. Cal. Apr. 30, 2010) (approving named plaintiff's service award of $4,000);

11  *Hopson v. Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900, at *27-28 (N.D. Cal. Apr. 3,

12  2009) ("In general, courts have found that $5,000 incentive payments are reasonable");

13  *Williams v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 19674, at *10 (S.D. Cal.

14  Mar. 4, 2010) ("Although [plaintiff] seeks a $5,000 service fee for himself which is not

15  available to other class members, the fee appears to be reasonable in light of [plaintiff's]

16  efforts on behalf of the class members").  Here, payment to Plaintiff is equitable because

17  it compensates her for the public exposure, time, and significant effort she devoted to

18  prosecuting this case over the past one-and-a-half years.  Thus, the Settlement is fair to

19  Plaintiff and Class Members alike.

20          The Settlement requires CytoSport to modify its business practices by ceasing to

21  use the language challenged in this litigation on the Products' packaging.  (Pifko Decl.

22  Exh. 1.)  The Settlement requires CytoSport to cease using the "Healthy Sustained

23  Energy" phrase on the principal display panel of the Products for three years.  (*Id.*)

24  CytoSport is also required to remove the "healthy fats" statement from the RTD product

25  labels for three years, *unless* the specific product *either* 1) contains less than 0.5 grams of

26  saturated fat per serving, *or* 2) CytoSport includes the words "See nutrition information

27  for saturated fat content" in connection with the phrase "healthy fats."  (*Id.*)

28          CytoSport will also make a *cy pres* payment in the amount of $85,000 to the

American Heart Association. (*Id.*) This term recognizes that the claim value for any particular individual Class Member may be relatively low, and therefore, it seeks to further Class Members' interests in cardiovascular health. An award to the American Heart Association is particularly appropriate here because Plaintiff alleges that the Products are unhealthy due to the presence of saturated fat (among other ingredients), which is known to be harmful to heart health. (*See*, *e.g.*, Dkt. No. 35, 2AC at ¶ 24.)

In addition, the residual balance of the settlement fund (after other awards, fees and costs are deducted), if any, will be dedicated to the distribution of CytoSport's products in kind, to the American Cancer Society, and to elderly persons and hospital patients. (Pifko Decl. Exh. 1.) This distribution will serve the general public interest, by providing calorie-rich food products to energy-deficient individuals who would benefit most from them. The inclusion of a substantial charitable donation in the Settlement is appropriate in situations such as this, where identification of all Class Members is difficult or impossible. *See*, *e.g.*, *In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 353-54 (E.D.N.Y. 2000) (approving defendant's charitable donation of toys part of the settlement of an antitrust action, where it would be difficult and costly to identify individual claimants harmed).

In sum, this Settlement provides fair compensation to Plaintiff and Class Members, and many other beneficial terms directly addressing the claims at issue, while allowing the Parties to avoid protracted and uncertain litigation. The terms of the Settlement are reasonable, appropriate, and fall well within the range for preliminary approval. *Young*, 2006 U.S. Dist. LEXIS 81077, at *12-13. Accordingly, the Court should preliminarily approve the Settlement.

## V. THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED

The Ninth Circuit recognizes the propriety of certifying a settlement class to resolve consumer lawsuits. *In re Syncor ERISA Litig.*, 516 F.3d at 1101. When presented with a proposed settlement, a court must determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23.

*Id.* In assessing those certification requirements, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.")  Here, class certification requirements under Rule 23 are met, and therefore, the Class should be conditionally certified.

### A.  The Class Satisfies Federal Rule of Civil Procedure 23(a)

Federal Rule of Civil Procedure 23(a) provides the factors that the Court looks to for class certification:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.  Here, all four of these elements are satisfied by the proposed Class for settlement purposes.

### 1.  Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a).  Here, the numerosity requirement is met because it is impracticable to join all Class Members. *See Tchoboian v. Parking Concepts, Inc.*, 2009 U.S. Dist. LEXIS 62122, at *12-13 (C.D. Cal. July 16, 2009).  Although the exact number of Class Members is unknown, Plaintiff contends that the Class likely includes thousands of members.  Thus, it is sufficiently large such that joinder is not practicable.  Accordingly, the numerosity requirement is satisfied here.

### 2.  Commonality

Rule 23(a)(2)'s commonality requirement is satisfied by the existence of a "common core of salient facts." *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class").  Commonality is "construed

permissively" and is a "flexible standard." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008).

In this case, the Class Members' claims all arise from their purchases of the Products. The Class Members seek the same remedies under the same theories of recovery. Additionally, Class Members share a common interest in seeking the adjudication of the same core questions of fact and law. These "core questions" include: 1) whether CytoSport's representations that the Products are "healthy" are false and misleading; and 2) whether Class Members were harmed by purchasing Products which allegedly were deceptively advertised as "healthy." Therefore, the commonality requirement is met.

### 3. Typicality

Rule 23(a) typicality is also construed permissively, and is satisfied where the plaintiff's claims are "reasonably co-extensive" with absent class members' claims; they need not be "substantially identical." *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020). The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985).

Here, Plaintiff's claims and injuries are not merely typical of those of all Class Members -- they are identical. The "conduct" alleged is CytoSport's allegedly misleading advertising of the Products. This advertising is not unique to Plaintiff in any way. Furthermore, Plaintiff and Class Members suffered the same economic injuries, which all arise out of CytoSport's allegedly false advertising. Plaintiff satisfies the typicality requirement for settlement purposes, because her claims arise from the same factual basis as Class Members' claims. *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).

### 4. Adequacy of Representation

In the Ninth Circuit, adequacy of representation is satisfied where (i) the named plaintiff and counsel for the class will vigorously prosecute the action, and (ii) the interests of the proposed class representatives are not antagonistic to the interests of the class. *Staton*, 327 F.3d at 957; *Hanlon*, 150 F.3d at 1020.

Plaintiff's interests are fully aligned with those of the Class because she brings the same claims for similar remedies under the same legal theories. There are no actual or potential conflicts of interest between Plaintiff and the other class members from the standpoint of assessing the fairness of the proposed Settlement. Therefore, her interests are not antagonistic to those of Class Members. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). In addition, as discussed in detail below, Plaintiff's attorneys are experienced in handling class actions, other complex litigation, and the types of claims asserted in this action. Plaintiff's counsel has a strong history of vigorously prosecuting class action cases. Therefore, the Class is adequately represented by both Plaintiff and Plaintiff's counsel.

#### a. Baron & Budd, P.C.

Baron & Budd, P.C. is a leader in complex litigation cases which include, *inter alia*, consumer class actions, products liability claims, financial misconduct claims, environmental litigation, water contamination cases, insurance litigation, *Qui Tam*, class actions, antitrust cases, and general commercial litigation. (Tellis Decl. ¶¶ 3, 11.) Mr. Tellis' and Mr. Pifko's experience exemplifies the depth and breadth of resources that Baron & Budd provides for its clients and will provide to the Class in this action. For over 30 years, Baron & Budd has been a leader in complex, mass tort litigation and class actions throughout the United States. (*Id.*)

##### i. Roland Tellis

Mr. Tellis has been an attorney for seventeen years, and a shareholder at Baron & Budd since October 2010. (Tellis Decl. ¶ 2.) Mr. Tellis co-manages the Los Angeles

office of Baron & Budd.  (*Id.*)  Prior to joining Baron & Budd, Mr. Tellis was a partner at the international law firm Bingham McCutchen LLP.  (*Id.*)  Mr. Tellis' practice focuses on complex litigation and class actions involving consumer disputes, fraud, securities, environmental matters, and business torts.  (*Id.*)

Mr. Tellis has represented parties in numerous consumer class action cases concerning false advertising and fraud.  (*Id.* ¶¶ 4.)  Class action cases in which Mr. Tellis is counsel include:  *IN RE:  Avon Anti-Aging Skincare Creams and Products Marketing and Sales Practices Litigation*, (S.D.N.Y. Case No. 1:13-cv-01417) (putative class action concerning false advertising on anti-aging products' labels); *IN RE:  L'Oreal Wrinkle Cream Marketing and Sales Practices Litigation*, (D.N.J. Case No. 2:12-cv-07869) (putative class action concerning false advertising on anti-aging products' labels);  *IN RE: Alexia Foods, Inc.* (N.D. Cal. Case No. 4:11-cv-06119-PJH) (putative class action concerning false advertising, fraud and misrepresentation on frozen food products' labels); *Michael J. Otto v. Abbott Laboratories, Inc.*, (C.D. Cal. Case No. 5:12-1411-SVW) (putative class action concerning false advertising, fraud and misrepresentation concerning nutritional supplement drinks); *Stitt, et al., v. Citibank, N.A, et al.*, (N.D. Cal. Case No. 4:12-cv-03892-YGR), *Bias, et al., v. Wells Fargo & Company, et al.* (N.D. Cal. Case No. 4:12-cv-00664-YGR), and *Ellis, et al., v. J.P. Morgan Chase & Co., et al.*, (N.D. Cal. Case No. 4-12-cv-03897-YGR) (putative class actions concerning banks' unlawful mark-ups of mortgage default service fees); and *Brad Aarons v. BMW of North America LLC* (C.D. Cal. Case No. 2:11-cv-07667-PSG-CW) (putative class action concerning car manufacturer's failure to disclose a safety defect to consumers). (*Id.* ¶¶ 4-5.)

Additional class action cases Mr. Tellis has been involved in include:  *Clark v. NeilMed Pharmaceuticals, Inc.* (S.D. Cal. Case No. 3:10-cv-01453) (claims for false designation of origin and false labeling);  *Poliner v. Gateway Computers* (Los Angeles Super. Ct. Case No. BC308923) (alleging failure to properly account for monetary credits

and California Redemption Value on returns of alcohol beverages).  (*Id. ¶* 5.)  Indeed, Mr. Tellis has significant experience litigating class action matters.

Mr. Tellis has been recognized by his peers for his skill and experience as a litigator.  Mr. Tellis has served on the Board of Governors of the Association of Business Trial Lawyers Los Angeles Chapter, and is a Central District Lawyer Representative to the Ninth Circuit Judicial Conference.  (*Id. ¶* 8.)  Mr. Tellis also serves as the Co-Chair of the Central District Court's Attorney Settlement Officer Panel Committee.  (*Id.*)  Mr. Tellis formerly served as a program chair and faculty member for the Practicing Law Institute's "Taking and Defending Depositions" annual program.  (*Id.* ¶ 9.)

### ii.    Mark Pifko

Mr. Pifko joined Baron & Budd's Los Angeles office in 2011, where he represents clients in complex and class action litigation matters.  (Pifko Decl. ¶ 2.)  Mr. Pifko's practice focuses on cases involving false advertising, fraud, and scientific and technical disputes.  (*Id.*)  Mr. Pifko has been on both the prosecution and defense sides of more than fifty class action lawsuits and other complex legal matters concerning a variety of consumer goods, including food products, consumer electronics, dietary supplements, vehicles, software, mortgage service fees, and other items.  (*Id.*)

Mr. Pifko is currently counsel in a number of putative class action cases concerning false and deceptive advertising.  (*Id.* ¶¶ 3-4.)  *IN RE:  Avon Anti-Aging Skincare Creams and Products Marketing and Sales Practices Litigation*, (S.D.N.Y. Case No. 1:13-cv-01417) (putative class action concerning false advertising on anti-aging products' labels); *IN RE:  L'Oreal Wrinkle Cream Marketing and Sales Practices Litigation*, (D.N.J. Case No. 2:12-cv-07869) (putative class action concerning false advertising on anti-aging products' labels);  *IN RE: Alexia Foods, Inc.* (N.D. Cal. Case No. 4:11-cv-06119-PJH) (putative class action concerning false advertising, fraud and misrepresentation on frozen food products' labels); *Michael J. Otto v. Abbott Laboratories, Inc.*, (C.D. Cal. Case No.

5:12-1411-SVW) (putative class action concerning false advertising, fraud and
misrepresentation concerning nutritional supplement drinks). (*Id.*)

Mr. Pifko is also currently counsel in the following putative class action cases: *Stitt, et al., v. Citibank, N.A, et al.*, (N.D. Cal. Case No. 4:12-cv-03892-YGR), *Bias, et al., v. Wells Fargo & Company, et al.* (N.D. Cal. Case No. 4:12-cv-00664-YGR), and *Ellis, et al., v. J.P. Morgan Chase & Co., et al.*, (N.D. Cal. Case No. 4-12-cv-03897-YGR) (putative class actions concerning banks' unlawful mark-ups of mortgage default service fees); and *Brad Aarons v. BMW of North America LLC* (C.D. Cal. Case No. 2:11-cv-07667-PSG-CW) (putative class action concerning car manufacturer's failure to disclose a safety defect to consumers). (*Id. ¶ 4.*)

Other noteworthy complex and class action cases Mr. Pifko has had significant involvement in include: *Marilau v. McDonald's Corp.*, 632 F. Supp. 2d 1008 (S.D. Cal. 2009) (class action regarding major restaurant chain's alleged violations of California's gift card laws); *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798 (2007) (allegations that progesterone cream products required warnings under California consumer laws and Proposition 65); *Wiener v. Dannon Co.*, 255 F.R.D. 658 (C.D. Cal. 2009) (class action alleging false advertising concerning yogurt products); and *In re Light Cigarettes Marketing and Sales Practices Litig.*, 652 F. Supp. 2d 1379 (MDL No. 2068) (class action alleging false advertising concerning light cigarettes). (*Id. ¶ 5.*)

Finally, Mr. Pifko has published several articles concerning class actions and consumer laws. (*Id. ¶ 6.*) Relevant articles include: "Game On!," *Daily Journal* (March 14, 2011), "Getting What You Paid For," *California Lawyer Magazine* (February 2010); "California District Attorneys Enforce Gift Card Law Against Major Retailer, Highlighting Increasing Government Enforcement Trend," *Arnold & Porter LLP Advisory* (August 2009); "California Supreme Court Rules Consumers Need Actual Injury for CLRA Claim," *Arnold & Porter LLP Advisory* (February 2009); and "AHPA Members Fight California 'Shakedown' Lawsuit: Potential Industry-wide Benefits," *American Herbal Products Association (APHA) Report* (October 2006). (*Id.*)

## B.   The Class Should be Conditionally Certified under Federal Rule of Civil Procedure 23(b)(3)

Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action. " *Hanlon*, 150 F.3d at 1022 (internal quotation and citation omitted).  Rule 23(b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense, and promote . . .  uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citations omitted and alterations in original); *Wiener*, 255 F.R.D. at 668.

There are two conditions to certification under Rule 23(b)(3):  (1) questions of law or fact common to the members of the class predominate over questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001).   When assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only.  *Amchem*, 521 U.S. at 620.  Here, and as explained below, these requirements are easily met, and therefore the Class should be conditionally certified under Rule 23(b)(3).

### 1.   Common Questions Predominate over Individual Issues

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S., at 623.  "Predominance is a test readily met in certain cases alleging consumer . . . fraud . . ." *Id.* at 625.  When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered properly under Rule 23(b)(3) even though other important matters will have to be tried separately . . ." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 620 (C.D. Cal. 2008) (internal citation omitted).

Here, all Class Members share a common interest in seeking the adjudication of the

same core questions of fact and law.  The predominating issue is that CytoSport's representation that the Products are "healthy" is false, misleading, and likely to deceive reasonable consumers.  All Class Members allegedly suffered the same injury resulting from CytoSport's conduct -- loss of money resulting from purchases of the Products. Such common issues predominate and are central to this action.  Therefore, Plaintiff asserts that for settlement purposes, this requirement is met.

### 2. A Class Action Is the Superior Method to Settle this Controversy

The superiority requirement under Rule 23(b)(3) is satisfied where there are "multiple claims for relatively small individual sums."  *Local Joint Exec. Bd. V. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).  Rule 23(b)(3) sets forth the relevant factors for determining whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  These factors include: (i) the class members' interest in individually controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).  "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action that cases allowed under subdivision (b)(3) can be adjudicated most profitably on a representative basis."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (citation omitted).

In this case, it is clear that a class action is the preferred procedure for this action. Because of the relatively small amount of damages for each individual Class Member, it is neither economically feasible nor judicially efficient for thousands of Class Members to pursue individual claims against CytoSport .  *See Hanlon*, 150 F.3d at 1023;  *see Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980).

Additionally, the Court need not inquire into the difficulties of managing a class action in this case, because class certification is for settlement purposes only.  *See*

*Amchem*, 521 U.S. at 620.  As a result, class treatment is the superior and preferred method for adjudicating these claims, and the Rule 23(b)(3) requirements are satisfied here.

## VI.  THE PROPOSED CLASS NOTICE IS APPROPRIATE

Under Rule 23(c)(2)(B), the threshold requirement concerning class notice is that the court directs to class members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The mechanics of the notice process are best left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process.  In this Circuit, it has long been the case that a notice of settlement will be adjudged satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill*, 361 F.3d at 575 (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

Here, the proposed Class Notice is written in easy and clear language, and provides all needed information in sufficient detail, including: (1) basic information about the lawsuit; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class Members can obtain benefits from the Settlement; (4) an explanation of how Class Members can opt out or object to the Settlement; (5) an explanation that any claims against CytoSport that could have been litigated in this action will be released if the Class Member does not opt out from the Settlement; (6) the names of counsel for the Class; (7) information regarding attorneys' fees and expenses, and Plaintiff's incentive awards; (8) the Settlement hearing date; (9) an explanation of eligibility for appearing at the Settlement hearing; and (10) the web address for the Settlement website where additional detailed information and documents, including the Claim Form, can be obtained.  (*See* Pifko Decl., Exh. 2.)  As such, it satisfies the content requirements of Rule 23.

Additionally, the proposed dissemination of the Class Notice satisfies all due process requirements.  The Settlement provides that, following preliminary approval of

the Settlement, a Settlement Administrator shall provide notice to Class Members through several means.  (Pifko Decl. Exh. 3.)  First, the Class Notice will be published in a nationally distributed publication and on several different websites.  (*Id.*)  Second, Class Counsel and Defendant shall issue a joint press release upon preliminary approval of the Settlement, to be posted on their respective websites, and provided to PR Newswire.  (*Id.*)  Third, the Settlement Administrator shall provide the Class Notice, by e-mail, to CytoSport's customers who purchased the Products during the Class Period, to the extent that CytoSport possesses their e-mail addresses.  (*Id.*)  Finally, the Class Notice and settlement documents, such as the Claim Forms, will be available on the settlement website.  (*Id.*)

In sum, the contents and dissemination of the proposed Class Notice constitutes the best notice practicable under the circumstances and fully complies with the requirements of Rule 23.

## VII.  CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court (1) conditionally certify the Class; (2) conditionally designate Plaintiff as representative of the Class; (3) appoint Baron & Budd, P.C. as class counsel; (4) grant preliminary approval of the Settlement; (5) approve the proposed Class Notice plan; and (6) schedule a final approval hearing for the Settlement.

Dated:  March 7, 2013

BARON & BUDD, P.C.
Roland Tellis
Mark Pifko


By:   /s/ Mark Pifko
Mark Pifko

Attorneys for Plaintiff
CLAIRE DELACRUZ, individually, and
on behalf of other members of the public
similarly situated