Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone:   (818) 839-2333
Facsimile:   (818) 986-9698

Attorneys for Plaintiff
CLAIRE DELACRUZ individually, and
on behalf of other members of the general
public similarly situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAIRE DELACRUZ, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>CYTOSPORT, INC., a California Corporation,<br><br>        Defendant. | Case Number:  4:11-cv-03532-CW<br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES; MEMORANDUM OF LAW IN SUPPORT**<br><br>Date:          May 15, 2014<br>Time:         2:00 p.m.<br>Location:    Courtroom 2, 4th Floor<br>              1301 Clay Street<br>              Oakland, CA<br>Judge:       Hon. Claudia Wilken<br>Action Filed:  July 18, 2011 |

Case No. 4:11-cv-03532-CW

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES;
MEMORANDUM OF LAW IN SUPPORT
Case No: 4:11-CV-03532-CW

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 15, 2014 at 2:00 p.m., or soon thereafter, before the Honorable Claudia Wilken, United States District Court Judge for the Northern District of California, 1301 Clay Street, Oakland, California 94612, Plaintiff Claire Delacruz ("Plaintiff"), by and through her counsel of record, will and hereby does move this Court for an order awarding attorneys' fees and litigation expenses, in accordance with the First Amended Settlement Agreement and Release (the "Settlement Agreement").

This motion is based on upon this Notice of Motion, Motion, and Memorandum in support thereof, the Declarations of Roland Tellis, all exhibits attached thereto, and such other written or oral arguments that may be presented to the court.

Because this motion is brought in accordance with the Settlement Agreement between the parties, Plaintiff does not anticipate any opposition to this motion by defendant CytoSport, Inc.

Dated:  February 25, 2014

BARON & BUDD, P.C.
Roland Tellis
Mark Pifko

By:   /s/Roland Tellis
        Roland Tellis

Attorneys for Plaintiff CLAIRE DELACRUZ, individually, and on behalf of other members of the public similarly situated

1

# TABLE OF CONTENTS

MEMORANDUM OF LAW ......................................................................... 1

I.    INTRODUCTION .......................................................................... 1

II.   LITIGATION AND SETTLEMENT HISTORY ............................... 3

    A.    Relevant Factual and Procedural History ............................ 3

    B.    Plaintiff's Discovery Efforts ................................................ 4

    D.    Mediation and Settlement Negotiations .............................. 6

    E.    Class Counsel Obtained Exceptional Benefits for the Class ... 7

III.  CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES
      AWARD IS FAIR AND REASONABLE ......................................... 9

    A.    The Requested Fee-And-Expense Award Was Agreed Upon By
        Sophisticated Parties After Arm's-Length Negotiations ...... 9

    B.    Class Counsel's Requested Fees Are Reasonable Under
        The Percentage Of The Class Benefit Approach ................... 10

        1.    Class Counsel's Fee Request Is Within The 25% Benchmark
            Established By The Ninth Circuit ............................... 12

        2.    Class Counsel Achieved Excellent Results For The Class ... 12

        3.    Plaintiff's Claims Carried A Substantial Amount of Risk ... 14

        4.    Prosecuting This Case Required Substantial Skill,
            Resulting In The Highest Quality Of Representation
            For The Class ........................................................... 16

        5.    Courts Have Ordered Similar Or Greater Percentage
            Fees Awards In Consumer Class Actions ................... 17

        6.    Reaction of the Class ................................................ 19

    C.    Lodestar Cross-Check Also Supports The Requested Fee Award ... 19

        1.    Class Counsel Have Spent A Reasonable Number Of Hours On
            This Litigation At a Reasonable Hourly Rate ............. 20

        2.    All Factors Support Applying A Multiplier To Class Counsel's
            Lodestar ................................................................... 21

            a.    Novelty And Complexity Of This Litigation ....... 22

            b.    Class Counsel Provided Exceptional Representation
               Prosecuting This Complex Case ......................... 22

i

c.    Class Counsel Obtained Excellent Class Benefits............ 23

d.    Class Counsel Faced A Substantial Risk
Of Nonpayment................................................................. 24

IV.   CLASS COUNSEL SHOULD BE REIMBURSED FOR
REASONABLE AND NECESSARILY LITIGATION EXPENSES ............ 25

V.    CONCLUSION................................................................................. 25

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Blum v. Stenson,*
    465 U.S. 886 (1984)................................................................................. 21

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980)................................................................................. 11

*Caudle v. Bristow Optical Co.,*
    224 F.3d 1014 (9th Cir. 2000) ................................................................ 19

*Central R.R. & Banking Co. v. Pettus,*
    113 U.S. 116 (1885)................................................................................. 11

*Craft v. Cnty. of San Bernardino,*
    624 F. Supp. 2d 1113 (C.D. Cal. 2008).................................................. 17

*Consumer Privacy Cases,*
    175 Cal. App. 4th 545 (2009) ................................................................. 11

*Dennis v. Kellogg Co.,*
    2013 U.S. Dist. LEXIS 163118 (S.D. Cal. Nov. 14, 2013)..................... 18

*Fischel v. Equitable Life Assurance Soc'y of the U.S.,*
    307 F.3d 997 (9th Cir. 2002) ........................................................... 10, 19

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .......................................... 2, 10, 12, 20

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) ........................................................................ 2

*Hartless v. Clorox Co.,*
    273 F.RD. 630 ......................................................................................... 11

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983).............................................................................. 9, 21

iii

*In re Activision Sec. Litig.,*
    723 F. Supp. 1373 (N.D. Cal. 1989) ........................................................ 17

*In Re Alexia Foods, Inc. Litigation,*
    Case No. 11-cv-06119-PJH (N.D. Cal. 2013) ....................................... 18

*In re Beverly Hills Fire Litig.,*
    639 F. Supp. 915 (E.D. Ky. 1986) ........................................................ 21

*In re Bextra and Celebrex Marketing Sales Practices and Product Liability Litig.,*
    2006 U.S. Dist. LEXIS 10902 (N.D. Cal. Feb 28, 2006) ......................... 25

*In re Boston & Me. Corp. v. Sheehan, Phinney, Bass & Green, P.A.,*
    778 F.2d 890 (1st Cir. 1985) ................................................................ 21

*In re Cenco Inc. Sec. Litig.,*
    519 F. Supp. 322 (N.D. Ill. 1981) ........................................................ 21

*In re Critical Path, Inc. Sec. Litig.,*
    2002 U.S. Dist. LEXIS 26399 (N.D. Cal. June 18, 2002) ......................... 14

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,*
    MDL No. 901, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ........ 9

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.,*
    2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) ......................... 19

*In re Media Vision Tech. Sec. Litig.,*
    913 F. Supp. 1362 (N.D. Cal. 1996) ...................................................... 25

*In Re Mercury Interactive Corp. Securities Litigation,*
    618 F.3d 988 (9th Cir. 2010) ................................................................. 2

*In re Netflix Privacy Litig.,*
    2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013) ......................... 15

*In re OmniVision Techs.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................ 16, 25

*In re Pac. Enters. Sec. Litig.,*
    47 F.3d 373 ................................................................................. 2, 10, 17

iv

*In re Warner Commc'ns Sec. Litig.*,
 618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................................ 17

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
 19 F.3d 1291 (9th Cir. 1994) ............................................................................ 24

*Kerr v. Screen Extras Guild, Inc.*,
 526 F.2d 67 (9th Cir. 1975) ......................................................................... 20, 21

*Lealao v. Beneficial California, Inc..*,
 82 Cal. App. 4th, 19 (2000) ................................................................................ 11

*Martin v. AmeriPride Servs., Inc.*,
 2011 U.S. Dist. LEXIS 61796 (S.D. Cal. June 9, 2011)......................................... 18

*Mazza v. American Honda Motor Co.*,
 666 F.3d 581 (9th Cir. 2012) ............................................................................ 15

*Morales v. City of San Rafael*,
 96 F.3d 359 (9th Cir. 1996) ......................................................................... 20, 21

*Morris v. Lifescan, Inc.*,
 54 F. App'x 663 (9th Cir. 2003) ................................................................... 10, 17

*Muchnick v. First Fed. Savs. & Loan Assoc. of Phil.*,
 1986 U.S. Dist. LEXIS 19798 (E.D. Pa. Sept. 30, 1986) ...................................... 21

*Mun. Auth. of Bloomsburg v. Pennsylvania*,
 527 F. Supp. 982 (M.D. Pa. 1981)........................................................................ 21

*Nobles v. MBNA Corp.*,
 No. C 06-3723 CRB, 2009 U.S. Dist. LEXIS 59435 (N.D. Cal. June 29, 2009) .. 17

*Paul, Johnson, Alston & Hunt v. Graulty*,
 886 F.2d 268 (9th Cir. 1989) ...................................................................... 11, 12

*Rabin v. Concord Assets Grp., Inc.*,
 1991 U.S. Dist. LEXIS 18273 (S.D.N.Y. Dec. 19, 1991) ...................................... 21

*Singer v. Becton Dickinson & Co.*,
 2010 U.S. Dist. LEXIS 53416 (S.D. Cal. June 1, 2010)......................................... 18

*State of Florida v. Dunne,*
    915 F.2d 542 (9th Cir. 1990) .................................................................. 10

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) .................................................................. 11

*Thornberry v. Delta Airlines,*
    676 F.2d 1240 (9th Cir. 1982), *vacated on other grounds*, 461 U.S. 952 (1983) .. 25

*Vasquez v. Coast Valley Roofing, Inc.,*
    266 F.R.D. 482 (E.D. Cal. 2010) .......................................................... 17

*Vincent v. Hughes Air W., Inc.,*
    557 F.2d 759 (9th Cir. 1977) .......................................................... 10, 11

*Vizcaino v. Microsoft Corp.,*
    290 F.3d.......................................................................................... passim

**Statutes**

California Business and Professions Code sections 17200 .......................................... 3

California Business and Professions Code sections 17500 .......................................... 4

California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750........................ 3

**Other Authorities**

Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions* § 14:03 (3d ed. 1992) .................................. 21

## MEMORANDUM OF LAW

## I.     INTRODUCTION

Plaintiff Claire Delacruz ("Plaintiff") and Baron & Budd, P.C. ("Class Counsel") respectfully submit this memorandum of points and authorities in support of their motion for an award of reasonable attorneys' fees and reimbursement of their litigation expenses.  Through the efforts of Plaintiff and Class Counsel, the Class has obtained a substantial recovery, as embodied in the First Amended Settlement Agreement and Release (the "Settlement Agreement"). (*See* Declaration of Roland Tellis In Support Of Plaintiff's Motion for an Award of Attorneys' Fees, Costs and Expenses ("Tellis Decl."), Exh. 1).  The settlement has various monetary and non-monetary components and is valued at $5,000,000.  To date, 28,134 claims have been received, and only one objection.[1]  (Tellis Decl. at Exh. ¶ 3.).

Following protracted litigation and settlement negotiations with Defendant CytoSport, Inc. ("CytoSport" or "Defendant"), Class Counsel achieved a nationwide class settlement on behalf of purchasers of Muscle Milk® Ready-to-Drink ("RTD") and Muscle Milk® Bars ("Bars") (collectively, the "Products") that provides for real, immediate, and substantial monetary and non-monetary benefits. The settlement provides for injunctive relief requiring a re-labeling of the Products and for meaningful monetary and non-monetary relief to Class members.

As set forth below, Plaintiffs and Class Counsel respectfully request that the Court approve an agreed-upon award of attorneys' fees in the sum of $996,660.59. If awarded, such fees represent approximately 24.9% of a $4,000,000 settlement

---

[1] The only objection received to date does not take issue with the amount of attorneys' fees and costs sought by Class Counsel.  It generally objects to the notion of a class action case.

1

1  fund – a reasonable request given the risks of the case and the results achieved.[2]

2  This method of calculating the fee award, based on a percentage of the fund, is

3  straightforward and fair under the circumstances of this case, and is within the 25%

4  attorney fee "benchmark" established by the Ninth Circuit. *Hanlon v. Chrysler*

5  *Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *see also In re Pac. Enters. Sec. Litig.*,

6  47 F.3d 373, 379 (affirming attorney's fee award of 33% of the recovery). Cross-

7  checking this fee request against the lodestar fee calculation also validates its

8  reasonableness.

9       Class Counsel also seeks reimbursement of its documented litigation

10  expenses in the amount of $190,839.41. (*See* "Expense Report," Tellis Decl. Exh.

11  6.). Such expenses include Class Counsel's expenditures on expert witnesses,

12  filing and service fees, depositions expenses, travel expenses, copying and

13  document productions, and other expenses that would typically be billed to paying

14  clients in non-contingency matters, and are recoverable. *See Harris v. Marhoefer*,

15  24 F.3d 16, 19 (9th Cir. 1994). These expenses were carefully and reasonably

16  expended and should be reimbursed.

17       This Motion is being filed during the claims period to ensure that all Class

18  Members have the opportunity to review the basis for Class Counsel's claim for

19  attorneys' fees and costs during the objection period to the Settlement Agreement,

20  as required by the Ninth Circuit Court of Appeals in *In Re Mercury Interactive*

21  *Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010).

22

23  [2] Although the Settlement Agreement values the settlement at $5,000,000, such sum includes valuing CytoSport's relabeling obligations at $1,000,000. Class Counsel has submitted an expert report addressing the material nature of such relief. *See* Dkt. 67-3 and 68. However, to avoid any controversy regarding the value attributed to the injunctive relief, for purposes of calculating attorneys' fees based on a percentage of the common fund approach, Class Counsel deducted the $1 million value component and calculated the common fund value at $4,000,000. If the Settlement Agreement is, however, valued at $5,000,000, then Class Counsel's requested fee represents 19.9% of the settlement fund.

24

25

26

27

2

28

## II. LITIGATION AND SETTLEMENT HISTORY

### A. Relevant Factual and Procedural History

This case concerns advertising practices conducted by CytoSport in connection with the sale of CytoSport's sale of its Muscle Milk® Ready-to-Drink ("RTD") and Muscle Milk® Bars ("Bars") products (collectively, the "Products"). Plaintiff alleges that CytoSport's use of the word "healthy" to advertise the Products is false and misleading, because the Products contain significant amounts of fats, sugars, and other unhealthy ingredients. (*See* Second Amended Complaint ("2AC"), Dkt. 35.) Plaintiff further alleges that CytoSport's use of the term "healthy" in its advertising for the Products is misleading because this practice is in direct violation of FDA regulations defining the term "healthy" in food labeling.

On July 18, 2011, Plaintiff filed her Complaint against CytoSport, on behalf of herself and a class of similarly situated individuals. (Dkt. 1.) On September 15, 2011, Plaintiff filed her First Amended Complaint ("1AC"). (Dkt. 12.) On April 11, 2012, this Court issued an order denying in part and granting in part Defendant's motion to dismiss Plaintiff's 1AC. (*See* Dkt. 34.) The Court granted Plaintiff leave to amend to provide an objective standard to support her challenges to CytoSport's "healthy" representations. (*Id.*)

On April 18, 2012, Plaintiff filed the 2AC. (Dkt. 35.) She alleged that CytoSport's practices violated FDA regulations concerning the use of the term "healthy" in food labeling. (*Id.*) Accordingly, Plaintiff alleged that CytoSport's advertising was misleading and likely to deceive reasonable consumers. (*Id.*) The 2AC asserts the same six causes of action alleged in the 1AC: (1) violation of California's Consumers Legal Remedies Act, California Civil Code sections 1750 *e seq.* ("CLRA"); (2) violation of California's Unfair Competition Law, California Business and Professions Code sections 17200 *et seq.* ("UCL"); (3) violation of California's False Advertising Law, California Business and Professions Code

3

1  sections 17500 *et seq.* ("FAL"); (4) fraud; (5) negligent misrepresentation; and (6)

2  unjust enrichment. (*Id.*)

3      CytoSport filed a motion to dismiss Plaintiff's 2AC, and on June 28, 2012,

4  this Court issued an order upholding the bulk of Plaintiff's allegations. (*See* Dkt.

5  48.) On July 12, 2012, CytoSport filed its Answer to the 2AC. (Dkt. 49.)

6      **B.    Plaintiff's Discovery Efforts**

7      Both prior to and following the filing of this action, Class Counsel

8  conducted a thorough investigation of Plaintiff's claims. (Tellis Decl. ¶¶ 7-12.)

9  Such efforts included, for example, testing the Products for nutritional content,

10 consulting with experts regarding the Products' nutritional content, reviewing

11 scientific research concerning the Products and their ingredients, obtaining and

12 reviewing documents from the Federal Trade Commission, and discussing claims

13 with Plaintiff and putative class members. (*Id.*)   Class Counsel also thoroughly

14 investigated the potential legal basis for a lawsuit against CytoSport and conducted

15 legal research in support of the litigation. (*Id.*)

16     Class Counsel engaged in substantial and costly discovery efforts to litigate

17 this case.  Class Counsel focused discovery on gathering and analyzing necessary

18 facts to establish that: (1) the Products are not "healthy"; (2) consumers purchase

19 the Products because they believe that they are "healthy"; and (3) CytoSport is

20 aware that the Products are not "healthy," and that this representation is material to

21 consumers. (*Id.* ¶ 8.)

22     As a starting point, Class Counsel served CytoSport with Requests for

23 Production of Documents, met and conferred with CytoSport's counsel concerning

24 the proper scope of documents to be produced, and prepared a motion to compel

25 the production of documents requested, before ultimately reaching an agreement

26 with CytoSport's counsel concerning document production. (*Id.* ¶ 9.)  Class

27 Counsel thereafter reviewed thousands of documents CytoSport produced. (*Id.*)

28

4

1    In addition, Class Counsel served deposition notices and took depositions of

2  three key CytoSport executives: CytoSport's Chief Marketing Officer, CytoSport's

3  Chief Financial Officer, and CytoSport's Senior Vice President of Technical

4  Services.  (*Id.* ¶ 10.)

5    Class Counsel furthermore conducted substantial discovery concerning third

6  parties doing business with CytoSport.  (*Id.* ¶ 11.)  In February and March of 2012,

7  Class Counsel served several subpoenas on third parties who performed

8  advertising and marketing-related services for CytoSport.  (*Id.*)  Class Counsel

9  thereafter took the deposition of CytoSport's packaging design vendor, Bright

10  Design.  (*Id.*)

11    In August 2012, Class Counsel served ten additional third party subpoenas

12  on CytoSport's ingredient suppliers, and its advertising and consumer research

13  consultants.  (*Id.* ¶ 12.)  Class Counsel then reviewed documents produced by these

14  numerous subpoenaed third parties.  (*Id.*)

15  **C.    Expert Analysis**

16    Class Counsel retained two experts who have developed and provided

17  detailed reports concerning Plaintiff's claims against CytoSport.  (*Id.* ¶ 13.)

18    Dr. Lisa Young, Ph.D., a nutrition professor at New York University, and

19  nutritionist in private practice, was retained by Class Counsel to examine the

20  ingredients included in the Products and determine the nutritional quality of the

21  Products based on current nutrition guidelines and recommendations for healthy

22  eating.  In connection with class certification, Dr. Young prepared a report which

23  concludes, in sum, that the Products are not healthy or nutritious.  Dr. Young also

24  prepared a rebuttal to CytoSport's retained expert, Dr. Mindy S. Kurzer.  Finally,

25  Dr. Young prepared an expert report to this Court in connection with preliminary

26  approval of the Settlement.  (*See* Dkt. 67-2.)

27

28

5

Dr. Carol A. Scott, Ph.D., Professor of Marketing Emeritus at the Anderson Graduate School of Management at the University of California, Los Angeles was also retained by Class Counsel to determine the reasons why consumers purchase the Products with respect to claims that the Products are "healthy"; to assess the degree to which the phrases "Healthy Fats" and "Healthy, Sustained Energy" influence consumers' decisions to purchase the Products; and to determine consumers' awareness of the presence and amount of saturated and total fats contained in the Products. Her expert report concludes: (i) that consumers purchase the Products because they believe they are "healthy,"; the phrases "Healthy Fats" or "Healthy, Sustained Energy" are material to consumers' decision to purchase the Products; and (iii) consumers are misled by the term "healthy" on the Products. Dr. Scott also prepared an expert report to this Court in connection with preliminary approval of the Settlement. (*See* Dkts. 67-3 and 68.)

### D.     Mediation and Settlement Negotiations

After gaining a thorough understanding of the case, on April 27, 2012, the Parties participated in an all-day mediation session with Hon. Edward A. Panelli (Ret.) at JAMS in San Francisco. (Tellis Decl. ¶ 16.) The mediation was unsuccessful and Class Counsel continued to build on their case. Then, on September 11, 2012, the Parties participated in another all-day mediation session, this time with Hon. Judge Carl J. West (Ret.) at JAMS in Los Angeles. (*Id.*) Having made significant progress towards settlement during the second mediation session, the Parties arranged for a third mediation session, which was conducted by Judge West at JAMS in San Francisco on September 28, 2012. (*Id.* at ¶ 17.) Although the Parties did not reach a settlement there, they continued to negotiate material terms via phone and email. (*Id.*)

Thereafter, on the eve of the deadline to file a motion for class certification, the Parties ultimately reached an agreement concerning the material terms, and

6

1  memorialized the resulting Settlement Agreement and Release on February 27,

2  2013. (*Id.* at ¶ 18.)

3         On April 11, 2013, this Court held a hearing on Plaintiff's Motion for

4  Preliminary Approval of Class Action Settlement. (*See* Dkt. 66.) At the hearing,

5  the Court raised questions about certain aspects of the Settlement and Class

6  Counsel and CytoSport's counsel indicated a desire to make modifications to the

7  Settlement to address the Court's questions. (Tellis Decl. at ¶ 19.) Counsel also

8  indicated a desire to submit additional materials in support of the proposed

9  Settlement. (*Id.*)

10         On May 2, 2013, Class Counsel and CytoSport's counsel participated in a

11  third mediation with Hon. Carl West (Ret.) of JAMS. (*Id.* at ¶ 20.) As a result of

12  the mediation and subsequent discussions that followed, on May 8, 2013, the

13  Parties agreed to the terms of the First Amended Settlement Agreement and

14  Release ("Settlement Agreement"). (*See* Dkt. 67-1.) The Settlement Agreement

15  resolved the questions raised by this Court with respect to the February 27, 2013

16  Settlement. Thereafter, on May 8, 2013, Class Counsel submitted the Amended

17  Settlement and a Supplemental Memorandum In Further Support of Motion for

18  Preliminary Approval of Class Action Settlement to the Court. (*See* Dkt. 67.)

19         On November 18, 2013, this Court preliminarily approved the Parties'

20  Amended Settlement. (*See* Dkt. 72.)

21      **E.**    **Class Counsel Obtained Exceptional Benefits for the Class**

22         Class Counsel obtained meaningful monetary and non-monetary relief,

23  which will serve as a benchmark for other similar cases going forward. The

24  benefits include:

25         •   **Injunctive Relief.** CytoSport will cease using the phrase
            "Healthy, Sustained Energy" on the Principal Display Panel on

26              the packaging of any of the Products. CytoSport will also cease
            using the words "Healthy Fats" on the packaging of RTD,

27              *unless*: (1) the product actually contains less than 0.5 grams of

28

saturated fat per serving, *or* (2) CytoSport includes the words "See nutrition information for saturated fat content" in connection with the phrase "healthy fats." (Dkt. No. 67-1.)

- **Monetary Relief:** CytoSport agreed to establish a guaranteed monetary claim fund of $1,000,000 for payment of claims, with claimants paid at $30.00 each, and the residual, if any, to be paid as follows: (1) to class members who made claims on a *pro rata* basis, up to a total of $60.00 for each claimant; and (2) the remaining balance, if any, in a *cy pres* payment to the American Heart Association. No proof of purchase is necessary for class members to qualify for monetary relief, and class members may submit claim forms online, in addition to the use of other methods of delivery (including mail).[3]  (*Id.*)

- **Residual Product Donation of Muscle Milk® Light:** If residual funds remain after deducting from the total settlement value of $5,000,000: (1) monetary relief to Class Members; (2) the incentive award to Plaintiff; (3) the monetary value of injunctive relief (which the Parties value at $1,000,000); (4) the *cy pres* award, if any, to the American Heart Association; (5) the attorneys' fees and costs, and; (6) the settlement notice and administration expenses, then such amount shall be distributed as residual product donation. CytoSport will distribute relabeled Muscle Milk® Light products, or other products with a similar nutrient profile, to charitable athletic events focused on health-related topics such as running events affiliated with cancer or heart disease prevention organizations, including the Susan G. Komen Race for the Cure, according to a plan approved by the Court.  The Muscle Milk® Light product is *not* at issue in this litigation; it has a nutrient profile in line with the U.S. dietary guidelines (USDA and HHA).  The intended beneficiaries of these products are expected to be class members, and will benefit from the nutrient profile of such products. (*See* expert report at Dkt. 67-2.)

- **Administrative Expenses, Notice and Attorneys' Fees and Expenses:** Cytosport agreed to pay for the cost, fees and expenses of providing Notice to Class Members, and administering the Settlement in accordance with the Settlement Agreement.  Additionally, Cytosport agreed to not oppose Class Counsel's request for attorneys' fees and costs totaling $1,187,500, subject to the Court's approval.

- **Incentive Award:** Cytosport agreed to pay Plaintiff an incentive award of $5,000, subject to the Court's approval.

---

[3] Based on the submission of over 28,000 claims to date, the monetary claim fund will be depleted through payments to Class Members, thus avoiding any *cy pres* payment to the American Heart Association.

1   These benefits are extraordinary since this case featured complex legal

2   issues and achieved a positive resolution for the Class despite extant negative case

3   law from other cases.  The likelihood that a greater result could be achieved at trial

4   is remote.  Indeed, to address labeling issues going forward, the Settlement

5   Agreement achieves *complete* relief in the form of a requirement that CytoSport re-

6   label the packaging for the Products.  As a result, the consumer will no longer be

7   exposed to allegedly false messaging about the "healthy" nature of the Products.

8   And, the monetary relief provides tangible and significant monetary benefit to

9   Class Members in lieu of the continued risk of litigation.  The Settlement

10  Agreement secured by Class Counsel and Plaintiff on behalf of the Class

11  represents an excellent and relatively swift result for Class Members.

## III.   CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AWARD IS FAIR AND REASONABLE

### A.   The Requested Fee-And-Expense Award Was Agreed Upon By Sophisticated Parties After Arm's-Length Negotiations

15  The United States Supreme Court has encouraged a consensual resolution of

16  attorneys' fees *as the ideal toward which litigants should strive*.  In *Hensley v.*

17  *Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court stated "[a]

18  request for attorney's fees should not result in a second major litigation. *Ideally, of*

19  *course, litigants will settle the amount of a fee*." *Id*. at 437 (emphasis added). In

20  the absence of any evidence of collusion, a negotiated fee that does not diminish

21  the amount of recovery by the class is entitled to substantial weight. *In re First*

22  *Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 U.S. Dist.

23  LEXIS 14337, at *12-13 (C.D. Cal. June 10, 1992) (stating that the Court should

24  be reluctant to disturb award where class counsel negotiated fee with sophisticated

25  defense counsel, who were familiar with case, risks, amount and value of class

26  counsel's time, and nature of result obtained for class).  Counsel who represent a

27  class and produce a benefit for the class members are entitled to be compensated

28

9

1   for their services, especially where, as here, the defendant has agreed to the

2   payment of attorneys' fees and expenses in addition to the recovery for the class.

3          Consistent with the foregoing precedents, the Parties here negotiated the

4   amount of fees and expenses CytoSport will pay to Class Counsel for the work that

5   Class Counsel did on behalf of the Class.  The result is an amount that reflects a

6   compromise reached through arm's-length negotiations by sophisticated counsel

7   familiar with the case, and reflects the risks for both sides, the nature of the result

8   obtained for the Class, and the magnitude of the fee the Court might award if the

9   matter were litigated.  Additionally, CytoSport's counsel has an interest in

10  protecting their client who has a direct financial interest in the amount of the fees

11  and expenses to be paid.  CytoSport is represented by experienced lawyers, and

12  does not need, nor has it sought, protection from the Court regarding the amount of

13  the fees and expenses to be paid.  Thus, the negotiated fee is entitled to a

14  presumption of reasonableness.

15  **B.    Class Counsel's Requested Fees Are Reasonable Under The "Percentage Of The Class Benefit" Approach**

16

17         Under Ninth Circuit standards, a District Court may award attorneys' fees

18  under either the "percentage-of-the-fund" method or the "lodestar" method.

19  *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir.

20  2002); *Hanlon v. Chrysler Corp.*, 150 F.3d at 1029.  The percentage-of-the-fund

21  method of awarding fees has become an accepted, if not the prevailing, method for

22  awarding fees in common fund cases in this Circuit and throughout the United

23  States.  Indeed, courts have long recognized that "a private plaintiff, or his

24  attorney, whose efforts create, discover, increase or preserve a fund to which others

25  also have a claim is entitled to recover from the fund the costs of his litigation,

26  including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th

27  Cir. 1977).

28
                                          10

1  Under the common fund doctrine, courts typically award attorneys' fees

2  based on a percentage of the total settlement. *See State of Florida v. Dunne*, 915

3  F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379

4  (affirming attorney's fee award of 33% of the recovery); *Morris v. Lifescan, Inc.*,

5  54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorney's fee award of 33% of the

6  recovery). Indeed, the Supreme Court, in *Boeing Co. v. Van Gemert*, 444 U.S.

7  472, 478 (1980), recognized that "a lawyer who recovers a common fund for the

8  benefit of persons other than himself or his client is entitled to a reasonable

9  attorney's fee from the fund as a whole." *See also Paul, Johnson, Alston & Hunt*

10  *v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) (it is well-settled that a lawyer who

11  helps create a common fund should be allowed to share in the award); *Vincent v.*

12  *Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("a private plaintiff, or

13  his attorney, whose efforts create, discover, increase or preserve a fund to which

14  others also have a claim is entitled to recover from the fund the costs of his

15  litigation, including attorneys' fees"). This long-standing common fund doctrine is

16  firmly rooted in American law. *See, e.g., Central R.R. & Banking Co. v. Pettus*,

17  113 U.S. 116, 124 (1885).

18  When determining the value of the settlement, courts consider the non-

19  monetary benefits conferred, as well as any cash attorneys' fee and cost payments

20  to be made pursuant to the settlement terms with the defendants. *See, e.g. Staton v.*

21  *Boeing Co.*, 327 F.3d 938, 972-74 (9th Cir. 2003); *Hartless v. Clorox Co.*, 273

22  F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x. 716 (9th Cir. 2012).

23  California courts view the award to the class and the agreement on attorneys' fees

24  a package deal. *Lealao*, 82 Cal. App. 4th 19, 33 (2000). Thus, "the sum of the two

25  amounts ordinarily should be treated as a settlement fund for the benefit of the

26  class, with the agreed-on fee amount constituting the upper limit on the fees that

27  can be awarded to counsel." *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 554

28

11

1  (2009) (quoting the Ann. Manual for Complex Litigation § 21.71 at 525 (4th ed.

2  2008)).

3                   **1.    Class Counsel's Fee Request Is Within The 25%
                             Benchmark Established By The Ninth Circuit**

4

5         The Ninth Circuit has established an attorney fee "benchmark" of 25% of

6  the common fund.[4]  *Hanlon*, 150 F.3d at 1029.  The Ninth Circuit also identified

7  five factors that are relevant in determining whether requested attorneys' fees in a

8  common fund case are reasonable: (1) the results achieved; (2) the risk of

9  litigation; (3) the skill required and the quality of work; (4) awards made in similar

10 cases; and (5) the contingent nature of the fee and the financial burden carried by

11 the plaintiffs.  *Vizcaino v. Microsoft Corp.*, 290 F.3d at 1048-50.

12        Plaintiff requests an attorneys' fee award of $996,660.59.  This award, if

13 granted, represents 24.9% of the of the $4,000,000 cash value of the Settlement

14 Fund, without any value attributed to the injunctive relief component.[5]

15 Accordingly, Plaintiff's request is consistent with the Ninth Circuit's 25%

16 benchmark for measuring reasonable attorneys' fees under a percentage-of-the-

17 fund approach.  Moreover, the requested fees are also reasonable applying the

18 *Vizcaino* factors.

19                   **2.    Class Counsel Achieved Excellent Results For The Class**

20        Class Counsel achieved an excellent settlement in this action and realized

21 Plaintiff's ultimate goals to: (i) change Defendant's business practices and

22

23 [4] This benchmark "can then be adjusted upward or downward to account for any unusual
   circumstances . . . .  Such an adjustment, however, must be accompanied by a reasonable
24 explanation of why the benchmark is unreasonable under the circumstances." *Paul, Johnson,
   Alston & Hunt v. Graulty*, 886 F.2d 268, 272-73 (9th Cir. 1989).

25 [5] If the injunctive relief valued at $1 million is added to the settlement fund, and the total
26 settlement is valued at $5,000,000, then Class Counsel's requested fee represents 19.9% of the
   value of the settlement fund.

27                                              12

28

1  (ii) provide compensation to Class members for the alleged misrepresentations
2  made by Defendant.  The injunctive relief component of the Settlement Agreement
3  requires CytoSport to cease using the words "Healthy, Sustained Energy" on the
4  Principal Display Panel on the newly printed packaging of any of the Products.
5  (Dkt. 67-1.)  CytoSport will also cease to use the words "Healthy Fats" on newly
6  printed packaging of RTD, unless: (1) the product actually contains less than 0.5
7  grams of saturated fat per serving, or (2) CytoSport includes the words "See
8  nutrition information for saturated fat content" in connection with the phrase
9  "healthy fats."  (*Id.*)

10       This form of injunctive relief confers a substantial benefit upon Class
11  Members.  As set forth in Dr. Carol Scott's declaration, a significant number of
12  consumers of the Products have purchased them because of their perceptions that
13  the Products are "healthy." (*See* Dkt. No. 67-3.)  Dr. Scott's studies found that
14  omitting the "healthy fats" and "healthy sustained energy" claims may affect as
15  many as 35% to 50% of consumers of the Products, and that deletion of these
16  phrases may encourage consumers to read the nutrition panels on the Products'
17  packaging. (*Id.*)  Thus, the injunctive relief directly addresses the alleged
18  misrepresentations at issue in this case, and provides that CytoSport correct such
19  misrepresentations going forward.

20       Although the Parties have agreed in the Settlement Agreement that the
21  monetary value of CytoSport's relabeling is $1,000,000, for the purpose of
22  calculating attorneys' fees based on the common fund approach, Class Counsel
23  does not attribute monetary value to such injunctive relief.  This form of relief does
24  not easily lend itself to monetary valuation without the benefit of, and expense and
25  time associated with, expert opinions.  Furthermore, Class Counsel's requested fee
26  award is within the Ninth Circuit's 25% "benchmark" without attributing any
27  monetary value to the injunctive relief component.

28

13

The monetary relief component of the Amended Settlement provides a guaranteed, fixed monetary claim fund of $1,000,000 for payment of claims, with claimants paid at $30.00 each, and the residual, if any, to be paid to Class Members who made claims on a *pro rata* basis, up to a total of $60.00 for each claimant. (Dkt. No. 67-1.)  No proof of purchase is necessary for class members to qualify for monetary relief, and class members may submit claim forms online, in addition to the use of other methods of delivery (including mail). (*Id.*)

Thus, the resolution of this case through settlement provides the Settlement Class with the benefit of significant financial recovery without the delay of continued litigation.  *In re Critical Path, Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 26399, at *30 (N.D. Cal. June 18, 2002) ("[i]t is a relevant circumstance that counsel achieved a timely result for the class members in need of immediate relief.") (citation omitted) (internal quotation marks omitted).

### 3.    Plaintiff's Claims Carried A Substantial Amount of Risk

From the outset, Class Counsel undertook significant financial risk in prosecuting this case.  Class Counsel undertook this matter solely on a contingent basis with no guarantee of recovery.  Class Counsel risked their resources to prosecute this action.  There was no assurance that this case would have been certified, that certification would include a nationwide class, or that Plaintiff would have succeeded at trial.

This was not a simple case.  From the outset, CytoSport argued that it did not make false and misleading statements about the Products.  CytoSport argued that labeling the Products as "healthy" was not misleading to a reasonable consumer, because the Products contained "healthy" ingredients and the nutrition facts provided a list of ingredients to the consumer. (*See* Dkt. 14.)  After this Court denied in part and granted in part CytoSport's motion to dismiss, Plaintiff filed a 2AC, providing this Court with objective criteria – an FDA regulation – defining

14

1 the term "healthy." (*See* Dkt. 35.)  In amending her complaint and providing this

2 standard to the Court, Plaintiff faced CytoSport's arguments, among others, that

3 (1) the allegation that a product's label fails to comply with an FDA regulation

4 does not make that product deceptive, (2) that CytoSport had not violated any FDA

5 regulations, and (3) even if the Court determined that Plaintiff's claims of

6 misrepresentation were viable, the case should be stayed or dismissed based on the

7 FDA's primary jurisdiction.  (*See* Dkt. 36.)

8   Moreover, even if the Court certified a class in this case, the class could be

9 decertified.  *See In re Netflix Privacy Litig.*, 2013 U.S. Dist. LEXIS 37286, at *15-

10 16 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a

11 class at any time is one that weighs in favor of settlement" (internal citations

12 omitted)).  Additionally, the Ninth Circuit's decision in *Mazza v. American Honda*

13 *Motor Co.*, 666 F.3d 581, 589-94 (9th Cir. 2012), which questioned the viability of

14 certifying a nationwide class under California's consumer protection and unjust

15 enrichment laws, could have had a direct bearing on this case if it were to proceed

16 in litigation.  The *Mazza* decision would have resulted in much debate over the size

17 and parameter of any class Plaintiff could certify. As certification remains

18 unknown, this factor too weighs in favor of finally approving this Settlement.

19   Even assuming Plaintiff was to survive a motion for summary judgment, the

20 risks of establishing liability posed by conflicting expert testimony would be

21 exacerbated by the unpredictability of a lengthy and complex trial. (Tellis Decl. ¶

22 27.)  In a "battle of experts," it is virtually impossible to predict with any certainty

23 which testimony would be credited, and ultimately, which expert version would be

24 accepted by the jury.  (*Id.*)  Even if Plaintiff were to prevail on the issue of

25 liability, there would still be risks in establishing the existence of monetary

26 damages based on CytoSport's alleged misrepresentations about the Products being

27 "healthy."  (*Id.*)  The experience of Class Counsel has taught them that the above-

28

1    described factors can make the outcome of trial extremely uncertain.  (*Id.*)

2    Nevertheless, Class Counsel accepted the risk, vigorously litigated this action on

3    behalf of the class and reached the valuable Amended Settlement through

4    extensive arm's-length negotiations with CytoSport.

5            **4.    Prosecuting This Case Required Substantial Skill, Resulting
                     In The Highest Quality Of Representation For The Class**

6

7            The prosecution of a complex, nationwide class action "requires unique . . .

8    skills and abilities."  *In re OmniVision Techs.,* 559 F. Supp. 2d 1036, 1047 (N.D.

9    Cal. 2007) (citation omitted) (internal quotation marks omitted).  This case

10   involved matters that required significant expenditure of Class Counsel's time such

11   as: (1) extensive pre-litigation investigation; (2) consulting with industry experts;

12   (3) extensive and detailed legal research into the substantive law of the causes of

13   action at issue; (4) developing and executing litigation strategies; (5) researching

14   and preparing for class certification; (6) developing and executing mediation and

15   settlement strategies; and (7) analyzing data and information exchanged between

16   the parties to assure that the Settlement's terms are based upon objective evidence

17   that had been thoroughly considered in the context of the risks, expenses, and

18   benefits of continuing to litigate the case.

19           Class Counsel vigorously and competently pursued the Class members'

20   claims.  The arm's-length settlement negotiations that took place demonstrate that

21   Class Counsel adequately represented the Class.  Moreover, Plaintiff and Class

22   Counsel have no conflicts of interests with the Class.  Rather, Plaintiff, like each

23   absent Class member, had a strong interest in proving CytoSport's common course

24   of conduct, establishing its unlawfulness and obtaining redress.  In pursing this

25   litigation, Class Counsel, as well as Plaintiffs, have advanced and will continue to

26   advance and fully protect the common interests of all members of the Class.  Class

27   Counsel have extensive experience and expertise in prosecuting complex class

28
                                            16

1    actions. (*See* "Baron and Budd, P.C. Firm Resume," Tellis Decl. Exh. 2.)  Class

2    Counsel are active practitioners who are highly experienced in class action, product

3    liability, and consumer fraud litigation. (*Id.*)  Indeed, this Court appointed Baron

4    & Budd, P.C. as Counsel for the Class on November 18, 2013.  (Dkt. 72.)

5          The quality of opposing counsel is also important in evaluating the quality of

6    the work done by Class Counsel. *See, e.g., In re Warner Commc'ns Sec. Litig.*,

7    618 F. Supp. 735, 749 (S.D.N.Y. 1985).  CytoSport is represented by the law firm

8    of Gibson, Dunn & Crutcher LLP, a prominent international firm with more than

9    1,100 lawyers and extensive experience in class action litigation.  (Tellis Decl. ¶

10   30.)  Class Counsel's ability to obtain a favorable settlement in the face of this

11   sophisticated legal adversary reflects their superior work quality.

12            **5.    Courts Have Ordered Similar Or Greater Percentage Fees
                       Awards In Consumer Class Actions**
13

14         Courts in this Circuit have awarded fees of 25% to 30% or more in common

15   fund cases. *See, e.g., Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113

16   (C.D. Cal. 2008) (awarding 25%); *Nobles v. MBNA Corp.*, No. C 06-3723 CRB,

17   2009 U.S. Dist. LEXIS 59435 (N.D. Cal. June 29, 2009) (awarding 25%).  In fact,

18   California district courts have awarded more than the typical 25% benchmark in

19   common fund settlements.

20         For example, when awarding 32.8% of the settlement fund for fees and

21   costs, the Honorable Judge Marilyn Hall Patel explained: "absent extraordinary

22   circumstances that suggest reasons to lower or increase the percentage, the rate

23   should be set at 30%[,]" as "[t]his will encourage Plaintiff's attorneys to move for

24   early settlement, provide predictability for the attorneys and the class members,

25   and reduce the time consumed by counsel and court in dealing with voluminous fee

26   petitions." *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal.

27   1989); *see also In re Pac. Enters.*, 47 F.3d at 379 (33% of the recovery); *Williams*,

28
                                            17

1   129 F.3d at 1027 (33.33% of the total fund); *Morris*, 54 F. App'x at 664 (33% of

2   the recovery); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D.

3   Cal. 2010) (approving attorney fee awards ranging from 30% to 33%); *Martin v.*

4   *AmeriPride Servs., Inc.*, 2011 U.S. Dist. LEXIS 61796, at *23 (S.D. Cal. June 9,

5   2011) ("courts may award attorneys' fees in the 30%–40% range in . . . class

6   actions that result in recovery of a common fun[d] under $10 million") (citation

7   omitted); *Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at *22-

8   23 (S.D. Cal. June 1, 2010) (approving attorney fee award of 33.33% of the

9   common fund and holding that award was similar to awards in three other cases

10  where fees ranged from 33.33% to 40%).

11      Moreover, the Southern District of California recently approved a 25% fee

12  on a $4,000,000 settlement in a strikingly similar case concerning false

13  representations made on food product labels. *See Dennis v. Kellogg Co.*, 2013

14  U.S. Dist. LEXIS 163118 (S.D. Cal. Nov. 14, 2013). There, the settlement

15  conferred a total financial benefit to the class in excess of $4,000,000, including

16  both a non-reversionary cash fund of $4,000,000 and injunctive relief which the

17  court determined would benefit both class members and non-class consumers

18  going forward. *Id.* at *22-23. The District Court found that in light of the results

19  achieved, the requested fees appear reasonable of $1,000,000, which constituted

20  25% of the fund. *Id.* at *23.

21      Finally, two months ago, another court in this district approved Class

22  Counsel's request for a 25% fee award in another deceptive food labeling case

23  filed in this district. *See In Re Alexia Foods, Inc. Litigation*, Case No. 11-cv-

24  06119-PJH (N.D. Cal. 2013).

25      The percentage of the fund created through the $4,000,000 cash value of the

26  Settlement, without valuing the injunctive relief component, supports the

27  reasonableness of Class Counsel's fee and expense request and is consistent with

28

18

1  the 25% benchmark.  Accordingly, Class Counsel's requested fees are fair and

2  reasonable.

3         **6.**    **Reaction Of The Class**

4       To date, 28,134 class members have submitted claim forms seeking benefits

5  under the Settlement Agreement.  (Tellis Decl. ¶ 31.)  Only one individual has

6  objected.  (*Id.*)  The reaction of the class is an important factor in the determining

7  the reasonableness of a fee request.  *See, e.g., In re Heritage Bond Litig. v. U.S.*

8  *Trust Co. of Tex., N.A.*, 2005 U.S. Dist. LEXIS 13627, at *48-50 (C.D. Cal. June

9  10, 2005).  Although Plaintiff acknowledges that objections are not due until

10  March 12, 2014, the reaction of the Class to the Settlement Agreement thus far,

11  including its fee provisions, is overwhelmingly positive and supports a finding that

12  the requested fees are fair, reasonable, and adequate.

13      **C.**    **Lodestar Cross-Check Also Supports The Requested Fee Award**

14       The Ninth Circuit has recognized the value of comparing the lodestar to

15  percentage of the fund approaches.  "Courts may compare the two methods of

16  calculating attorney's fees in determining whether fees are reasonable."  *Fischel*,

17  307 F.3d at 1007 (citation omitted). Courts in the Ninth Circuit often examine the

18  lodestar calculation as a cross-check on the percentage fee award to ensure that

19  attorneys' fees are reasonable.  *Vizcaino*, 290 F.3d at 1050. The cross-check

20  analysis is a two-step process.  First, the lodestar is determined by multiplying the

21  number of hours reasonably expended by the reasonable rates requested by the

22  attorneys.  *See Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir.

23  2000).  Second, the court determines the multiplier required to match the lodestar

24  to the percentage-of-the-fund request made by counsel, and determines whether the

25  multiplier falls within the accepted range for such a case.  *See Vizcaino*, 290 F.3d

26  at 1050-51.  The resulting lodestar figure may be adjusted upward or downward by

27  use of a multiplier to account for factors including, but not limited to: (i) the

28   

1  quality of the representation; (ii) the benefit obtained for the class; (iii) the

2  complexity and novelty of the issues presented; and (iv) the risk of nonpayment.

3  *Hanlon*, 150 F.3d at 1029; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67,

4  70 (9th Cir. 1975).  Courts typically apply a multiplier or enhancement to the

5  lodestar to account for the substantial risk that class counsel undertook by

6  accepting a case where no payment would be received if the lawsuit did not

7  succeed. *Vizcaino*, 290 F.3d at 1051.

8            **1.    Class Counsel Have Spent A Reasonable Number Of Hours**
             **On This Litigation At a Reasonable Hourly Rate**
9

10           To assist the Court in evaluating the reasonableness of the time spent on this

11 case, Class Counsel presented a schedule of their time records. (Tellis Decl. Exh.

12 5).  As reflected therein, to date, Class Counsel has devoted a total of 1,453.35

13 hours prosecuting this litigation and negotiating its Settlement, resulting in a total

14 lodestar of $855,157.25. (*Id.* at Exh. 5).  Class Counsel has also incurred

15 $190,839.41 in out-of-pocket expenses. (*Id.* at Exh. 6).  Class Counsel is expected

16 to incur additional fees and expenses associated with the preparation of a motion

17 for final approval, and attending a hearing on such motion.

18           This current lodestar represents the total work Class Counsel have

19 undertaken since the inception of this case.  The hours spent on this case are

20 reasonable and reflect the ability and efficiency of Class Counsel.  Moreover,

21 counsel's hourly rates are reasonable and comparable to hourly rates in this forum

22 for comparable services. (*Id.* at ¶ 45.)  The work performed to date, along with the

23 work anticipated going forward, supports Class Counsel's lodestar.

24           The requested amount of $996,660.59 will be paid, subject to the Court's

25 approval, by CytoSport from the Settlement fund.

26

27
                                          20
28

## 2.   All Factors Support Applying A Multiplier To Class Counsel's Lodestar

The lodestar analysis is not limited to the initial mathematical calculation of class counsel's base fee. *See Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996).  Rather, Class Counsel's actual lodestar may be enhanced according to those factors that have not been "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983) (citation omitted); *see also Morales*, 96 F.3d at 364.  In a historical review of numerous class action settlements, the Ninth Circuit found that lodestar multipliers normally range from 0.6 to 19.6, with most (83%) falling between 1 and 4, and a bare majority (54%) between 1.5 and 3. *Vizcaino*, 290 F.3d at 1051 n.6 (citation omitted); *see also* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:03 (3d ed. 1992) (recognizing that multipliers of 1 to 4 are frequently awarded).  Yet state and federal courts often grant multipliers of four or more.[6]

In considering the reasonableness of attorneys' fees and any requested multiplier, the Ninth Circuit has directed district courts to consider the time and labor required, novelty and complexity of the litigation, skill and experience of counsel, the results obtained, and awards in similar cases. *Blum*, 465 U.S. at 898-900 (1984); *Kerr*, 526 F.2d at 70.  All of the factors weigh heavily in favor of the requested fee award in this action.

---

[6] *See, e.g., In re Cenco Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) (approving multiplier of 2 in securities class action); *Rabin v. Concord Assets Grp., Inc.*, 1991 U.S. Dist. LEXIS 18273 (S.D.N.Y. Dec. 19, 1991) (approving multiplier of 4.4 in securities class action); *Mun. Auth. of Bloomsburg v. Pennsylvania*, 527 F. Supp. 982 (M.D. Pa. 1981) (approving multiplier of 4.5); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (approving multiplier of up to 5); *In re Boston & Me. Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) (approving multiplier of 6); *Muchnick v. First Fed. Savs. & Loan Assoc. of Phil.*, 1986 U.S. Dist. LEXIS 19798 (E.D. Pa. Sept. 30, 1986) (approving multiplier of 8.3 in a consumer class action).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES;
MEMORANDUM OF LAW
Case No: 4:11-CV-03532-CW

1                **a.**     **Novelty And Complexity Of This Litigation**

2         The novelty and complexity of this case also supports the requested fee.

3 Class Action matters are generally complex, but this one is particularly so due to

4 the interplay between the FDA guidelines and false advertising laws.  The

5 contested issues in the litigation were complex, including determinations of

6 whether CytoSport's product labels were false or misleading.  These issues were

7 hotly contested and were subject to two motions to dismiss.  Indeed, Class Counsel

8 was required to retain experts to opine on the complex key issues in this litigation,

9 including whether the Products were "healthy," and whether CytoSport's

10 representations were material to consumers.  (Tellis Decl. ¶¶ 14-15.)

11         Settlement negotiations included multiple formal and informal discussions,

12 which were complicated both in terms of the subject matter and damages analyses

13 at issue.  Moreover, this required substantial original work, and significant risk that

14 Class Counsel's efforts (and their out-of-pocket costs) would go uncompensated.

15 Given this landscape, the fact that Class Counsel negotiated this Settlement is a

16 notable achievement.

17         Here, based on Class Counsel's current lodestar, the requested fee will result

18 in a nominal multiplier of 1.16.  Such a nominal multiplier is well within the

19 parameters used throughout this Circuit.  And in light of the novelty and

20 complexity of this case, the trailblazing work it required, and concomitant risks to

21 counsel, a substantially higher multiplier would be justified.

22                **b.**    **Class Counsel Provided Exceptional Representation**

23                       **Prosecuting This Complex Case**

24         Class Counsel respectfully submit that they conducted themselves in this

25 action in a professional, diligent and efficient manner.  Class Counsel are highly-

26 respected and experienced leaders in the field of consumer class action litigation.

27 (See *id.* ¶¶ 38-42.)  Tasks were allocated to prevent "over-lawyering" and

                                        22

28

1    inefficiency.  The bulk of the work was performed by a core team of attorneys

2    fully familiar with the complex factual and legal issues presented by this litigation.

3    This division of labor permitted the work to be done efficiently, resulting in an

4    economy of service and avoiding duplication of effort.

5          Class Counsel allocated time and resources into investigations relating to the

6    matters alleged in this action.  Once the case was underway, Plaintiff's counsel

7    defeated two motions to dismiss, and conducted thorough discovery of Plaintiff's

8    claims against CytoSport.  The successful conclusion of this litigation required

9    Class Counsel to commit a significant amount of time, personnel, and expenses, on

10   a contingency basis, with absolutely no guarantee of being compensated in the end.

11   Furthermore, Class Counsel's ability to obtain a favorable Settlement in the face of

12   its sophisticated and skilled legal adversary reflects their superior work quality.

13                 **c.      Class Counsel Obtained Excellent Class Benefits**

14         The Settlement provides significant monetary and injunctive relief for the

15   Class.  In particular, the injunctive relief provided for by the Settlement addresses

16   the heart of this litigation.  In this case, Plaintiff's primary goal was to change the

17   way that CytoSport marketed and advertised the Products – in particular, to enjoin

18   CytoSport from marketing the Products as "healthy."  The Settlement Agreement

19   undoubtedly achieved this goal by requiring CytoSport to cease using the words

20   "Healthy, Sustained Energy" on the Products' packaging, and to cease to use the

21   words "Healthy Fats" on the packaging for RTD, unless: (1) the product actually

22   contains less than 0.5 grams of saturated fat per serving, or (2) CytoSport includes

23   the words "See nutrition information for saturated fat content" in connection with

24   the phrase "healthy fats."  (Dkt. No. 67-1.)  Though it is admittedly difficult to

25   monetize such prospective injunctive relief, it is undeniable that the changed

26   labeling for the Products benefits Class Members, who will no longer be misled by

27   CytoSport's alleged misrepresentations.

28

Thus, these significant pecuniary and non-pecuniary benefits conferred by the Settlement achieve the goals of this litigation and further justify the attorneys' fees requested by Class Counsel. Class Counsel avoided considerable burdens and expenses to the parties and the judicial system by conducting a thorough investigation and achieving a favorable Settlement in a timely fashion. The outstanding results achieved by Class Counsel here fully justify the requested fee.

### d.    Class Counsel Faced A Substantial Risk Of Nonpayment

A critical factor bearing on fee petitions in Ninth Circuit courts is the level of risk of non-payment faced by Class Counsel at the inception of the litigation. *See, e.g., Vizcaino*, 290 F.3d at 1048. The contingent nature of Class Counsel's fee recovery, coupled with the uncertainty that any recovery would be obtained, are significant. In *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299-1300 (9th Cir. 1994), the Ninth Circuit recognized that:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases . . . . [I]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

Throughout this case, Class Counsel expended substantial time and costs to prosecute a nationwide class action suit with no guarantee of compensation or reimbursement in the hopes of prevailing against sophisticated Defendants represented by high caliber attorneys. Class Counsel obtained a highly favorable result for the Class, knowing that if their efforts were ultimately unsuccessful, they would receive no compensation or reimbursement for their costs. Class Counsel prosecuted the case with the type of vigor and skill required to ensure justice for

24

1  the Class.  This fact alone supports a finding that Class Counsel are entitled to a
2  multiplier.

3  **IV.  CLASS COUNSEL SHOULD BE REIMBURSED FOR
         REASONABLE AND NECESSARILY LITIGATION EXPENSES**

4
5      It is well-established that "[a]n attorney who has created a common fund has
6  a right to reimbursement" of reasonable and relevant litigation expenses.  *In re*
7  *Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996); *see also*
8  *Thornberry v. Delta Airlines*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated on other*
9  *grounds*, 461 U.S. 952 (1983); *In re Omnivision*, 559 F. Supp. 2d at 1048
10 (attorneys may recover "reasonable expenses that would typically be billed to
11 paying clients"); *In re Bextra and Celebrex Marketing Sales Practices and Product*
12 *Liability Litig.*, 2006 U.S. Dist. LEXIS 10902 at *55 (N.D. Cal. Feb 28, 2006).

13     To date, Class Counsel incurred out-of-pocket costs and expenses in the
14 aggregate amount of $190,839.41 in prosecuting this litigation on behalf of the
15 Class. (Tellis Decl. Ex. 6.)  The incurred costs include retaining experts,
16 deposition costs, court fees, copying fees, courier charges, legal research charges,
17 telephone/facsimile fees, travel costs, postage fees, and other related costs. (*Id.*)
18 Each cost was necessarily and reasonably incurred to bring this case to a successful
19 conclusion, and they reflect market rates for various categories of expenses
20 incurred. (*Id.*)

**V.  CONCLUSION**

21     Class Counsel was able to obtain a settlement that represents an excellent
22 result for the Class.  The Settlement is the culmination of the determined and
23 skilled work of Class Counsel.  Accordingly, Plaintiff and Class Counsel
24 respectfully request that this Court award Class Counsel's request for attorneys'
25 fees in the amount of $996,660.59 and expenses in the amount of $190,839.41.

26
27
28
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES;
MEMORANDUM OF LAW
Case No: 4:11-CV-03532-CW

1 | Dated:  February 25, 2014

Respectfully Submitted,

BARON & BUDD, P.C.


By: _____ /s/ Roland Tellis _____


Roland Tellis (State Bar No. 186269)
Mark Pifko (State Bar No. 228412)
15910 Ventura Boulevard
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile:  (818) 986-9698

Attorneys for Plaintiff CLAIRE
DELACRUZ, individually, and on
behalf of other members of the public
similarly situated

26