1  Roland Tellis (SBN 186269)
   rtellis@baronbudd.com
2  Mark Pifko (SBN 228412)
   mpifko@baronbudd.com
3  BARON & BUDD, P.C.
   15910 Ventura Boulevard, Suite 1600
4  Encino, California  91436
   Telephone:  (818) 839-2333
5  Facsimile:   (818) 986-9698

6
7  Attorneys for Plaintiff
   CLAIRE DELACRUZ individually, and
8  on behalf of other members of the general
   public similarly situated

9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12

13

14  CLAIRE DELACRUZ, individually, and       Case Number:  4:11-cv-03532-CW
    on behalf of other members of the general  **CLASS ACTION**
15  public similarly situated,

16              Plaintiff,                   **PLAINTIFF'S NOTICE OF
                                             MOTION AND MOTION FOR
17        vs.                                FINAL APPROVAL OF CLASS
                                             ACTION SETTLEMENT;
18  CYTOSPORT, INC., a California            MEMORANDUM OF LAW**
    Corporation,
19
                                             Date:       May 15, 2014
20              Defendant.                    Time:       2:00 p.m.
                                             Location:   Courtroom 2, 4th Floor
21                                                        1301 Clay Street
                                             Judge:      Hon. Claudia Wilken
22                                           Action Filed: July 18, 2011
23

24

25

26

27

28

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 15, 2014 at 2:00 p.m., or soon thereafter, before the Honorable Claudia Wilken, United States District Court Judge for the Northern District of California, 1301 Clay Street, Oakland, California 94612, Plaintiff Claire Delacruz ("Plaintiff"), by and through her counsel of record, will and hereby does move this Court, pursuant to Fed. R. Civ. P. 23(e), for an order granting final approval of the class action settlement described in the parties First Amended Settlement Agreement and Release (the "Class Action Settlement").

This motion is based on upon this Notice of Motion, Motion, and Memorandum in support thereof; the Declarations of Roland Tellis, Claire Delacruz, and Jennifer M. Keough; all exhibits attached thereto; and such other written or oral arguments that may be presented to the court.

Because this motion is brought in accordance with the Class Action Settlement between the parties, Plaintiff does not anticipate any opposition to this motion by defendant CytoSport, Inc.

Dated: April 11, 2014    BARON & BUDD, P.C.

        By: /s/ Roland Tellis
          Roland Tellis

          Roland Tellis (SBN 186269)
          rtellis@baronbudd.com
          Mark Pifko (SBN 228412)
          mpifko@baronbudd.com
          15910 Ventura Boulevard, Suite 1600
          Encino, California 91436
          Telephone: (818) 839-2333
          Facsimile: (818) 986-9698

          Attorneys for Plaintiff
          CLAIRE DELACRUZ, individually, and
          on behalf of other members of the public
          similarly situated

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND OF THE CASE ...........................................................3

    A.    Relevant Factual and Procedural History...................................... 3

    B.    Discovery and Expert Analysis ..................................................... 4

    C.    Mediation and Settlement Negotiations ....................................... 5

III.  THE STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS ...................................................................................6

IV.  CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE .7

    A.    The Requirements of Rule 23(a) Are Met...................................... 8

    B.    The Requirements of Rule 23(b)(3) Are Met................................. 10

V.   THE STANDARDS FOR FINAL APPROVAL OF THE PROPOSED CLASS SETTLEMENT ARE INDISPUTABLY SATISFIED .............................................11

    A.    The Class Action Settlement Offers Substantial Benefits to the Settlement Class without the Risk or Delay Associated with Continued Litigation ........ 12

        1.    Injunctive Relief.............................................................. 12

        2.    Monetary Relief ............................................................... 13

        3.    Residual Product Distribution of Muscle Milk Light.......................... 13

        4.    Administrative Expenses, Notice and Attorneys' Fees and Expenses . 14

        5.    Incentive Award to Class Representative ........................... 14

        6.    Release of Claims............................................................. 15

    B.    Strength of Plaintiff's Case ......................................................... 15

    C.    Risk of Continuing Litigation ...................................................... 16

    D.    Risk of Maintaining Class Action Status ..................................... 18

    E.    The Extent of Discovery and Status of Proceedings...................... 19

    F.    Experience and Views of Counsel ............................................... 20

    G.    Presence of a Governmental Participant ....................................... 21

    H.    Reaction of Class Members.......................................................... 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I.      The Objections to the Class Action Settlement Lack Merit........................... 22

VI.   NOTICE PLAN ..........................................................................................22

VII.  CONCLUSION...........................................................................................23

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT

## TABLE OF AUTHORITIES

CASE                                                                    PAGE(S)

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................ 7, 8, 10

*In re Apple Computer Sec. Litig.*,
   1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991)............................................... 17

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ...................................................................... 7

*Bruno v. Quten Research Institute, LLC et al.*,
   2013 U.S. Dist. LEXIS 35066 (C.D. Cal. March 13, 2013).................................... 13, 14

*Carter v. Anderson Merchandisers, LP*,
   2010 U.S. Dist. LEXIS 55629 (C.D. Cal. May 11, 2010)............................................ 15

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ...................................................... 6, 11, 12, 21

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...................................................................... 6

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
   2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) .............................................................. 17

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981)............................ 19

*Fulford v. Logitech, Inc.*,
   2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) ............................................ 18

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)................................................................ 16

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................................... *passim*

*Hopson v. Hanesbrands Inc.*,
   2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009)............................................... 15

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978) ...................................................................... 9

*Mazza v. American Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .................................................................... 18

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................................... 18, 19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................................... 21, 22

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. March 18, 2013) .................................... 7, 8, 17

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ................................................................. 6, 7, 16

*In re Omnivision Techns., Inc.*,
    559 F.Supp.2d 1036 (N.D. Cal. 2008) ...................................................... 20

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................... 14, 17, 20

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985) ............................................................... 9

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003). ................................................................. 8, 9

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ........................................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................................................. 8

*In re Wells Fargo Loan Processor Over-Time Pay Litigation*,
    2011 U.S. Dist. LEXIS 84541 (N.D. Cal. Aug. 2, 2011) ............................ 15

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) .................................................................. 11

**Statutes**

28 U.S.C. § 1715(b) ............................................................................................. 20

**Other Authorities**

Fed. R. Civ. P. 23 ......................................................................................... *passim*

## MEMORANDUM OF LAW

## I.   INTRODUCTION

Plaintiff Claire Delacruz ("Plaintiff") respectfully submits this memorandum in support of Plaintiff's Motion for Final Approval of Class Action Settlement (the "Motion").  Since the Court granted preliminary approval of the proposed settlement in November 2013, more than 33,000 individuals have submitted timely claim forms, and the overall response of potential members of the class ("Settlement Class") has been overwhelmingly positive.

Approximately three years ago, this case was brought by Plaintiff, on behalf of herself and all others similarly situated, against CytoSport, Inc. ("CytoSport").  (Dkt. 1.) Plaintiff asserted that CytoSport misled consumers about the healthful nature of its Muscle Milk® Ready-to-Drink ("RTD") and Muscle Milk® Bars ("Bars") products (collectively, the "Products").  (*See* Dkt. 35, Second Amended Complaint ("2AC").)  In particular, Plaintiff alleged that although the Products were labeled as "healthy," they contained excessive amounts of certain, other ingredients, and, therefore, they violated FDA regulations concerning the use of the term "healthy" on food labels. (*Id.*)

The First Amended Settlement and Release ("Class Action Settlement"), which was preliminarily approved by this Court on November 18, 2013 (Dkt. 72), provides real and significant benefits to members of the Settlement Class.  Addressing Plaintiff's allegations, CytoSport has contractually agreed to make substantial changes to its allegedly misleading product labeling.  Under the settlement, CytoSport must cease using the phrase "healthy, sustained energy" on the principal display panel of the packaging for any of the Products. CytoSport also must cease using the words "healthy fats" on the packaging for RTD, unless: (1) the product actually contains less than 0.5 grams of saturated fat per serving, or (2) CytoSport includes the words "see nutrition information for saturated fat content" in connection with the phrase "healthy fats."  (*See* Class Action Settlement, Dkt. 67-1.)

In addition, CytoSport has agreed to provide meaningful monetary relief to Settlement Class members by establishing a guaranteed monetary claim fund of $1,000,000

for payment of claims, with claimants paid at approximately $30.00 each.  (*Id.*)  The Class Action Settlement also provides for a residual product distribution of Muscle Milk Light products, or other CytoSport products with a similar nutrient profile (not at issue in this litigation), which have a nutrient profile in line with the U.S. dietary guidelines.  (*Id.* at Dkt. 67-1.)  The product distribution will be targeted to Settlement Class Members.

The Class Action Settlement was the result of hard-fought litigation, which included: (i) months of pre-filing investigation; (ii) months of substantial and costly discovery, including depositions of three senior CytoSport executives, as well as third party discovery, which included depositions; and (iii) the exchange of four expert witness reports on the eve of a motion for class certification.  (*See* Declaration of Roland Tellis in Support of Plaintiff's Motion for an Award of Attorneys' Fees, Costs and Expenses, at Dkt. 75.)  Moreover, the settlement was the product of extended arms-length negotiations, which included three mediation sessions with JAMS mediators, which were followed by weeks of continued, aggressive and adversarial negotiations.  (*Id.* at ¶¶ 16-20.)  In Class Counsel's view, the Class Action Settlement reflects an excellent resolution of the parties' respective claims and defenses; it is fair, reasonable and adequate; and it confers substantial benefits upon the Settlement Class.  (*Id.* at ¶¶ 24-25.)

This Court granted preliminary approval of the Class Action Settlement on November 18, 2013. (Dkt. 72.)  At that time, this Court found that the Class Action Settlement was fair, reasonable and adequate.  (*Id.*)  This Court also conditionally certified the Settlement Class, which is defined as all persons who purchased one or more of the Products at retail in the United States from July 18, 2007 through December 21, 2012. (*Id.*)

The notice plan was comprehensive and unquestionably effective at reaching members of the Settlement Class.  Following preliminary approval, notice of the Class Action Settlement was promptly provided to Settlement Class members.  (*See* Dkt. 81-2, Declaration of Jennifer M. Keough Re Notice Dissemination and Publication ("Keough

Decl.") ¶¶ 2-11.)  The Summary Notice was published in the widely circulated newspaper USA Today, and was also published on various websites.  (*Id.* ¶¶ 7, 9.)  In addition, Class Counsel and CytoSport's counsel issued a joint press release, and e-mailed notice directly to thousands of recipients.  (*Id.* ¶¶ 3-6, 8.)  Furthermore, notice of the settlement has been disseminated to fifty-five federal and state government officials, and *none* of them filed objections.  By the end of the claims period, 33,310 Settlement Class Members submitted claim forms to the parties' claims administrator ("GCG").  (*Id.* ¶ 12.)

As discussed in detail below, the Class Action Settlement not only satisfies Rule 23's "fair, reasonable and adequate" standard, it is an outstanding result for Plaintiff and the Settlement Class.  The Court should accordingly grant final approval of the Class Action Settlement.

## II.   BACKGROUND OF THE CASE

### A.   Relevant Factual and Procedural History

On July 18, 2011, Plaintiff filed her Complaint against CytoSport, on behalf of herself and a class of similarly situated individuals.  (Dkt. 1.)  On September 15, 2011, Plaintiff filed her First Amended Complaint ("1AC"). (Dkt. 12.)  On April 11, 2012, this Court issued an order denying in part and granting in part Defendant's motion to dismiss Plaintiff's 1AC.  (*See* Dkt. 34.)  On April 18, 2012, Plaintiff filed the 2AC, which alleged, among other things, that CytoSport's practices violated FDA regulations concerning the use of the term "healthy" in food labeling.  (Dkt. 35.)  CytoSport filed a motion to dismiss Plaintiff's 2AC, and on June 28, 2012, this Court issued an order upholding the bulk of Plaintiff's allegations.  (*See* Dkt. 48.)  On July 12, 2012, CytoSport filed its Answer to the 2AC.  (Dkt. 49.)

### B.      Discovery and Expert Analysis

After the pleadings were settled, Class Counsel engaged in substantial and costly investigation and discovery efforts to litigate this case.[1]  (Dkt. 75 at ¶¶ 7-15.)  Such efforts included testing the Products for nutritional content, consulting with experts regarding the Products' nutritional content, reviewing scientific research concerning the Products and their ingredients, obtaining and reviewing documents from the Federal Trade Commission, and discussing claims with Plaintiff and putative class members.  (*Id.* at ¶ 7.)  The discovery phase of this case also involved written discovery, the review of thousands of documents, taking depositions of several key witnesses, and serving subpoenas to numerous third parties.  (*Id.* at ¶¶ 9-12.)

Additionally, Class Counsel retained two experts who developed and provided detailed reports substantiating Plaintiff's claims against CytoSport.  (*Id.* at ¶ 11.)  Dr. Lisa Young, Ph.D., a nutrition professor at New York University, and nutritionist in private practice, was retained by Class Counsel to examine the ingredients included in the Products and determine the nutritional quality of the Products based on current nutrition guidelines and recommendations for healthy eating.  (*Id.* at ¶ 14.)  Dr. Young also prepared a rebuttal to CytoSport's retained expert.  (*Id.*)  Dr. Young also prepared an expert report to this Court in connection with preliminary approval of the Settlement.  (*See* Young Report, Dkt. 67-2.)

Class Counsel also retained Dr. Carol A. Scott, Ph.D., Professor of Marketing Emeritus at the Anderson Graduate School of Management at the University of California, Los Angeles.  Dr. Scott was asked, among other things, to determine the reasons why consumers purchase the Products, to assess the degree to which the phrases "Healthy Fats" and "Healthy, Sustained Energy" influence consumers' decisions to purchase the Products, and to determine consumers' awareness of the presence and amount of saturated and total

---

[1] Class Counsel's extensive discovery efforts are more thoroughly discussed in their Motion for an Award of Attorneys' Fees, Costs and Expenses.  (*See* Dkt. 74.)

fats contained in the Products.  (Dkt. 75 at ¶ 15.)  Her expert report concluded, among other things that consumers purchase the Products because they believe they are "healthy," and that the phrases "Healthy Fats" or "Healthy, Sustained Energy" are material to consumers' decision to purchase the Products.  (*Id.*)  Dr. Scott also prepared an expert report to this Court in connection with preliminary approval of the Settlement.  (*See* Dkts. 67-3 and 68.)

### C.   Mediation and Settlement Negotiations

On April 27, 2012, the parties participated in an all-day mediation session with Hon. Edward A. Panelli (Ret.) at JAMS in San Francisco.  (Dkt. 75 at ¶ 16.)  The mediation was unsuccessful and Class Counsel continued to build on their case.  (*Id.*)  Then, on September 11, 2012, the parties participated in another all-day mediation session, this time with Hon. Judge Carl J. West (Ret.) at JAMS in Los Angeles.  (*Id.*)  Having made significant progress towards settlement during the second mediation session, the parties arranged for a third mediation session, which was conducted by Judge West at JAMS in San Francisco on September 28, 2012.  (*Id.* at ¶ 17.)  While continuing to litigate the case, although the parties did not reach a settlement during the September 28 mediation, they continued to negotiate material terms by phone and email.  (*Id.*)

Thereafter, after exchanging expert reports, on the eve of the deadline to file a motion for class certification, the parties ultimately reached an agreement concerning the material terms, and ultimately, memorialized their agreement on February 27, 2013.  (*Id.* at ¶ 18.)

On April 11, 2013, this Court held a hearing on Plaintiff's Motion for Preliminary Approval of Class Action Settlement.  (*See* Dkt. 66.)  At the hearing, the Court raised questions about certain aspects of the Settlement Agreement and Release, and Class Counsel and CytoSport's counsel indicated a desire to make modifications to the agreement to address the Court's questions.  (Dkt. 75 at ¶ 19.)  Counsel also indicated a desire to submit additional materials in support of the proposed settlement.  (*Id.*)

1   On May 2, 2013, Class Counsel and CytoSport's counsel participated in a third

2   mediation with Hon. Carl West (Ret.) of JAMS.  (*Id.* at ¶ 20.)  As a result of the mediation

3   and subsequent discussions that followed, on May 8, 2013, the parties agreed to the terms

4   of the First Amended Settlement Agreement and Release.  (*Id.*)  Class Counsel believed

5   that the Class Action Settlement resolved the questions raised by this Court with respect to

6   the February 27, 2013 agreement.  (*Id.*)  Accordingly, on May 8, 2013, Class Counsel

7   submitted the Class Action Settlement and a Supplemental Memorandum In Further

8   Support of Motion for Preliminary Approval of Class Action Settlement to the Court.  (*See*

9   Dkt. 67.)

10   On November 18, 2013, this Court preliminarily approved the Parties' Class Action

11   Settlement.  (*See* Dkt. 72.)  Shortly thereafter, as provided for by the Class Action

12   Settlement and approved by the Court, the parties executed a comprehensive notice

13   program.  (*See* Dkt. 81-2, Keough Decl.)  The notice program included publication of the

14   Summary Notice in newspapers; a press release concerning the Class Action Settlement;

15   the creation of a website, www.CytoSportSettlement.com, dedicated to providing

16   information concerning the Class Action Settlement to Settlement Class members; online

17   banner ads directing potential Settlement Class Members to the settlement website; e-

18   mailing thousands of potential Settlement Class Members the Summary Notice; and the

19   maintenance of a 24-hour helpline for potential Settlement Class Members to call for

20   information concerning the Class Action Settlement.  (*Id.* ¶¶ 3-11.)  As a result of these

21   notice efforts, 33,310 members of the Class submitted timely claims, while only 4 putative

22   Class members submitted objections.  (*Id.* ¶¶ 12, 14.)

23   **III.   THE STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS**

24   In evaluating a class action settlement under Rule 23, a district court must determine

25   (1) whether class certification is appropriate for settlement purposes, and (2) whether the

26   settlement is fundamentally fair, reasonable, and adequate.  Fed. R. Civ. P. 23.  In

27   evaluating the fairness of a class action settlement, courts are mindful that the law favors

28

the compromise and settlement of class action suits.  *See, e.g.*, *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982).

"Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations by capable and experienced counsel." *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. March 18, 2013).  Where, as here, the settlement negotiations were conducted at arm's-length by experienced class action counsel, counsel's assessment and judgment are entitled to a presumption of reasonableness, and the court is entitled to rely heavily upon counsel's assessment and judgment.  *Boyd v. Bechtel Corp.* 485 F. Supp. 610, 622 (N.D. Cal. 1979)  Indeed, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.  Ultimately, however, the decision to approve a settlement is committed to the sound discretion of the trial judge.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

## IV.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence.  *Hanlon*, 150 F.3d at 1019.  When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23.  *Id.*  In assessing those class certification requirements, a court may properly consider that there will be no trial.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if

1  tried, would present intractable management problems . . . for the proposal is that there be
2  no trial").
3       In the Preliminary Approval Order, this Court concluded that class certification was
4  appropriate and conditionally certified the Settlement Class for settlement purposes. (*See*
5  Dkt. No. 72.) The Settlement Class is defined as:

> all persons who purchased one or more Muscle Milk® Ready-to-
> Drink beverages (the 'RTD') and/or Muscle Milk® bars (the
> 'Bar,' together with the RTD, the "Products") at retail in the
> United States from July 18, 2007 through December 31, 2012.

(*Id.*; Dkt. No. 67-1.) Thus, the Court may rely on the same rationale as explained in the
Preliminary Approval Order to find that class certification is appropriate under Fed. R. Civ.
P. 23(a) and (b) for settlement purposes. *See In re Netflix Privacy Litig.*, 2013 WL
1120801 at *3. For the reasons set forth below and in the Preliminary Approval Order, this
Settlement Class meets the requirements of Rule 23(a) and (b).

### A. The Requirements of Rule 23(a) Are Met

To achieve class certification, the proposed class must meet the numerosity,
commonality, typicality, and adequacy of representation requirements of Federal Rule of
Civil Procedure 23(a). *See Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). In the
Preliminary Approval Order, the Court found that the following Rule 23(a) factors support
class certification for settlement purposes under Fed. R. Civ. P. 23(a). (Dkt. 72.)

First, "the number of Settlement Class Members is so numerous that joinder of all
members thereof is impracticable." (*Id.*) Second, "there are questions of law and fact
common to the Settlement Class." (*Id.*) Indeed, all the causes of action and legal theories
in this case are common to all members of the Settlement Class. Each Settlement Class
member's claims arise out of his or her purchase of one or more of the Products, and
Plaintiff only brings claims based on the common contention that CytoSport's
representations that the Products are "healthy" are false and misleading. This is sufficient
to form a "common core of salient facts" that satisfies the commonality requirement under
Rule 23(a)(2). *Hanlon*, 150 F.3d at 1019. The common contention at issue here is

"capable of classwide resolution . . . meaning that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); Fed. R. Civ. P. 23(a)(2).  Thus, the claims are capable of class-wide resolution in keeping with Federal Rule of Civil Procedure 23(a)(2).

Third, "the claims of the Plaintiff are typical of the claims of the Settlement Class they seek to represent for the purposes of settlement." (Dkt. 72.)  The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985).  Typicality under Rule 23(a)(3) is construed permissively, and is satisfied where the plaintiff's claims are "reasonably co-extensive" with absent class members' claims; they need not be "substantially identical." *Staton*, 327 F.3d at 957 (citing *Hanlon*, 150 F.3d at 1020).

Here, however, Plaintiff's claims are not only co-extensive with those of the Settlement Class, they are in fact substantially identical: they all purchased the Products labeled as "healthy."  The "conduct" alleged is CytoSport's allegedly misleading advertising of the Products.  This advertising is not unique to Plaintiff in any way.  Furthermore, Plaintiff and Settlement Class members suffered the same economic injuries, which all arise out of CytoSport's allegedly false advertising.

Finally, this Court found that in accordance with Rule 23(a)(4), "Plaintiff has fairly and adequately represented the interests of the Settlement Class and will continue to do so, and the Plaintiff has retained experienced counsel to represent her." (Dkt. 72.)  Indeed, Plaintiff's interests are fully aligned with those of the Settlement Class because she brings the same claims for similar remedies under the same legal theories.  There are no actual or potential conflicts of interest between Plaintiff and the other Settlement Class members from the standpoint of assessing the fairness of the proposed Class Action Settlement.

Therefore, her interests are not antagonistic to those of Class Members. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). In addition, Class Counsel are experienced in handling class actions, other complex litigation, and the types of claims asserted in this action, and have vigorously prosecuted this case on behalf of Plaintiff and the Settlement Class. (*See* Dkt. 75 at ¶¶ 29, 34, 38-42; *see* Baron & Budd, P.C. Firm Resume at Dkt. 75-2.) In sum, each of Rule 23(a)'s requirements have been met.

### B.     The Requirements of Rule 23(b)(3) Are Met

Under Rule 23(b)(3), the Court must find "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022 (internal quotation and citation omitted). When assessing predominance and superiority, the Court may consider that this Class will be certified for settlement purposes only. *Amchem*, 521 U.S. at 620.

As discussed above, this litigation primarily focuses on questions common to the class as a whole. Thus, this Court held that "for purposes of settlement, the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member." (Dkt. No. 72.) Indeed, common questions of law and fact exist and predominate over any individual questions, including, for example: (1) whether by labeling the Products as "healthy," CytoSport engaged in unlawful, unfair, misleading or deceptive business acts or practices; (2) whether by labeling the Products as "healthy," CytoSport engaged in consumer fraud or other unlawful acts; (3) whether by labeling the Products as "healthy," CytoSport violated one or more provisions of the CLRA, UCL or FAL; (4) whether Plaintiff and members of the Settlement Class justifiably relied on CytoSport's representations that the Products are "healthy," and (5) whether Plaintiff and members of the Settlement Class are entitled to

10

damages, restitution, injunctive and monetary relief.  Since these common issues are at the core of this case and may be resolved for all Settlement Class members in a single adjudication, Rule 23(b)(3)'s predominance requirement is met.

As to the superiority requirement, this Court found that "for purposes of settlement, a class action is superior to the other available methods for the fair and efficient adjudication of the controversy." (Dkt. No. 72.)  The alternative to class certification in this case would be either thousands of separate proceedings (indeed, more than 33,000 individuals submitted timely claims to the settlement administrator in this case), or abandonment of claims by more Settlement Class members because the amount of individual recovery would be relatively small.  Additionally, separate proceedings by individual Settlement Class members would create significant expense and a risk of inconsistent judgments.  As such, a class action is clearly the superior vehicle for addressing these claims.  *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010).

## V.    THE STANDARDS FOR FINAL APPROVAL OF THE PROPOSED CLASS SETTLEMENT ARE INDISPUTABLY SATISFIED

A proposed class action settlement may be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In answering the question of whether a settlement is fair, reasonable and adequate, district courts have been instructed to evaluate a number of factors, including: (1) the strength of Plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement.  *Hanlon*, 150 F.3d at 1026; *Churchill*, 361 F.3d at 575.  Here, the balance of the factors demonstrates that the Class Action Settlement warrants final approval because it is fair, adequate and reasonable.

### A.   The Class Action Settlement Offers Substantial Benefits to the Settlement Class without the Risk or Delay Associated with Continued Litigation

The parties reached agreement on the terms of the Class Action Settlement through a vigorous debate of legal and factual theories by counsel and extensive arm's-length negotiations.  As described herein, the terms of the Class Action Settlement provide significant injunctive and monetary relief to the Settlement Class, and additionally provides for the payment of notice and administration costs, and attorneys' fees and expenses.  (Dkt. 67-1.)

### 1.   Injunctive Relief

Under the Class Action Settlement, CytoSport must cease using the phrase "healthy, sustained energy" on the principal display panel of the packaging for any of the Products. (*Id.*)  CytoSport also must cease using the words "healthy fats" on the packaging for RTD, *unless*: (1) the product actually contains less than 0.5 grams of saturated fat per serving, *or* (2) CytoSport includes the words "see nutrition information for saturated fat content" in connection with the phrase "healthy fats."  (*Id.*)

This form of injunctive relief confers a significant benefit upon the Settlement Class. In this litigation Plaintiff's primary goal was to enjoin CytoSport from marketing the Products as "healthy," because this representation is allegedly false and misleading, and reasonable consumers rely upon it in purchasing the Products.  In forming her expert opinion on this issue, Dr. Carol A. Scott, Professor of Marketing Emeritus at the Anderson Graduate School of Management at the University of California, concluded that (i) consumers purchase the Products because they believe they are "healthy,"; (ii) the phrases "Healthy Fats" or "Healthy, Sustained Energy" are material to consumers' decision to purchase the Products; and (iii) consumers are misled by the term "healthy" on the Products. (*See* Dkts. 67-3 and 68.)  Thus, the injunctive relief included in the Class Action Settlement directly addresses the material misrepresentations at issue in this case, and provides that CytoSport correct such misrepresentations going forward.

In *Bruno v. Quten Research Institute, LLC et al.*, 2013 U.S. Dist. LEXIS 35066 (C.D. Cal. March 13, 2013), the district court approved a class action settlement which provided, among other things, for injunctive relief requiring the defendant to refrain from certain labeling practices. *Id*. at *4. In doing so, the district court noted:

> [I]n addition to monetary relief obtained by Class Counsel for class plaintiffs, there is a high value to the injunctive relief obtained in this case. New labeling practices affecting hundreds of thousands of bottles per year, over ten years, bring a benefit to class consumers, the marketplace, and competitors who do not mislabel their products.

*Id.* at *10. Such observations are equally applicable here.

### 2. Monetary Relief

Under the Class Action Settlement, CytoSport has agreed to establish a guaranteed monetary claim fund of $1,000,000 for payment of claims, with claimants paid at approximately $30.00 each. (Dkt. No. 67-1.) No proof of purchase is necessary for Settlement Class members to qualify for monetary relief, and they were permitted to submit forms online, in addition to the use of other methods of delivery, including mail. (*Id.*) Thus, the monetary relief provided by the Class Action Settlement provides tangible and significant monetary benefits to Settlement Class Members.

### 3. Residual Product Distribution of Muscle Milk Light

If residual funds remain after deducting from the total settlement value of $5,000,000: (1) monetary relief to Class Members; (2) the incentive award to Plaintiff; (3) the monetary value of injunctive relief (which the parties value at $1,000,000); (4) a *cy pres* award, if any, to the American Heart Association; (5) the attorneys' fees and costs, and; (6) the settlement notice and administration expenses, then such amount shall be distributed as residual product distribution. (*Id.*) CytoSport will distribute relabeled Muscle Milk Light products, or other products with a similar nutrient profile at places where Settlement Class Members can be found -- charitable athletic events focused on health-related topics such as running events affiliated with cancer or heart disease prevention organizations, including the Susan G. Komen Race for the Cure -- according to

a plan approved by the Court.  (*Id.*)  The Muscle Milk Light product is not at issue in this litigation; it has a nutrient profile in line with the U.S. dietary guidelines.  (*See* Dkt. No. 67-2.)  The intended beneficiaries of these products are expected to be Settlement Class Members who will benefit from the nutrient profile of such products.  (*Id.*)

### 4.  Administrative Expenses, Notice and Attorneys' Fees and Expenses

CytoSport has agreed to pay for the costs, fees and expenses of providing notice of the Class Action Settlement to Class Members, and administering the Class Action Settlement in accordance with the agreed-upon terms.  (Dkt. No. 67-1.)  Additionally, CytoSport agreed to not oppose Class Counsel's request for attorneys' fees and costs totaling $1,187,500, subject to the Court's approval.  (*Id.*)  The requested $996,660.59 in attorneys' fees, which is less than the other components of the settlement, is reasonable under the circumstances of this case, and well within the 25% "benchmark" established by the Ninth Circuit.  *Hanlon*, 150 F.3d at 1029.  Indeed, the amount of fees and costs sought by Class Counsel is less than the $1,327,125 CytoSport agreed not to object to.  (Dkt. 67.)

### 5.  Incentive Award to Class Representative

In recognition of her effort on behalf of the Settlement Class, and subject to the Court's approval, CytoSport has agreed not to object to pay Plaintiff a modest incentive award of $5,000.  (*Id.*)  "Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publ'g. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59.  Where a class representative's claim makes up "only a tiny fraction of the common fund," an incentive fee is justified. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, Plaintiff seeks an incentive awards of $5,000.  A modest incentive payment of $5,000 to Plaintiff Clare Delacruz is fair and reasonable given her invaluable contributions to this action.  Ms. Delacruz has submitted a declaration in connection with her motion for

final approval with describes the considerable time and effort she spent in advancing in the interests of the Class over the past three years.  (*See* Dkt. 81-1, Declaration of Claire Delacruz in Support of Motion for Final Approval of Class Action Settlement.)

The incentive amount sought is well within the range of awards which have been approved in recent class litigation. *See, e.g., Hopson v. Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900, at **27-28 (N.D. Cal. Apr. 3, 2009) ("In general, courts have found that $5000 incentive payments are reasonable"); *Carter v. Anderson Merchandisers, LP*, 2010 U.S. Dist. LEXIS 55629, at *17 (C.D. Cal. May 11, 2010) ("Given the relatively small size of the proposed [$5000] recognition payments, the Court thus approves the recognition payments requested for both Carter and Lanasa."); *In re Wells Fargo Loan Processor Over-Time Pay Litigation*, 2011 U.S. Dist. LEXIS 84541, at *31-33 (N.D. Cal. Aug. 2, 2011) (finding reasonable $7500 service awards to three named Plaintiffs).

The amount of the requested service award was arrived at through negotiations with CytoSport, and finalized after the terms of class relief.  It thus reflects a realistic assessment by both parties of the effort expended by Plaintiff and the amount likely to be awarded had the parties not reached an agreement.  Plaintiff committed herself to working with her counsel in litigating the case and in bringing it to a successful conclusion.  (Dkt. 81-1.)  This commitment of personal time to support a case in which Plaintiff had a modest personal interest, but which has provided benefits to thousands of absent Settlement Class members, warrants the Court's approval of the requested incentive award.

### 6. Release of Claims

The Class Action Settlement provides for a release of claims arising out of Plaintiff's 2AC, and related to the healthfulness or nutritional attributes of the Products. (Dkt. 67-1.)  Thus, this release will terminate this litigation involving Plaintiff and CytoSport, once the Class Action Settlement becomes effective as defined therein.  (*Id.*)

### B. Strength of Plaintiff's Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing,

gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal

quotations omitted). The court may "presume that through negotiation, the Parties,

counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's

likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, No. 08-CV-1365-CW,

2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g.*

*Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

When Class Counsel engaged in arms-length negotiations with CytoSport's counsel,

Class Counsel was thoroughly familiar with the applicable facts, legal theories and

defenses involved in this case. (Dkt. 75 at ¶16.) Plaintiff retained two experts to bolster

her claims against CytoSport. (Dkt. 75 at ¶ 13.) Dr. Lisa Young, Ph.D., a nutrition

professor at New York University, and nutritionist in private practice, prepared a report

which concluded, in sum, that the Products are not healthy or nutritious. (*See* Dkt. 67-2.)

As discussed above, Dr. Carol A. Scott concluded, in sum, that a significant number of

consumers of the Products have purchased them because of their perceptions that the

Products are "healthy." (*See* Dkts. 67-3 and 68.)

Although Plaintiff is confident in the strength of her claims and believes that she

would ultimately prevail at trial, she also recognizes that litigation is inherently risky.

CytoSport has vigorously defended itself in this litigation, having filed two motions to

dismiss and retained its own experts. CytoSport certainly would continue to mount a

vigorous defense through trial. Furthermore, since there is no assurance that the Settlement

Class would prevail at trial, the Class Action Settlement provides the best opportunity for

the Settlement Class to obtain significant relief. (*See* Dkt. 75 at ¶ 23, 25-28.) The Class

Action Settlement abrogates the risks that might have prevented the Settlement Class from

obtaining relief in this action. (*Id.*)

## C.    Risk of Continuing Litigation

Proceeding in this litigation in the absence of settlement poses various risks such as

dismissal upon a dispositive motion, potentially effective defenses, increased costs and

fees, and expiration of a substantial amount of time. (*Id.*) Such considerations have been

found to weigh heavily in favor of settlement.  *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

Assuming Plaintiff were to survive a motion for summary judgment, the risks of establishing liability posed by conflicting expert testimony would be exacerbated by the unpredictability of a lengthy and complex trial.  (*Id.* at ¶ 27.)  In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version would be accepted by the jury.  (*Id.*)  Even if Plaintiff were to prevail on the issue of CytoSport's liability, there would still be risks in establishing the existence of monetary damages based on CytoSport's misrepresentations that the Products were "healthy."  (*Id.*)  The experience of Plaintiff's counsel has taught them that the above-described factors can make the outcome extremely uncertain.

This was not a simple case.  From the outset, CytoSport argued that it did not make false and misleading statements about the Products.  CytoSport argued that labeling the Products as "healthy" was not misleading to a reasonable consumer, because the Products contained "healthy" ingredients and the nutrition facts provided a list of ingredients to the consumer.  (*See* Dkt. 14.)  After this Court denied in part and granted in part CytoSport's motion to dismiss, Plaintiff filed a 2AC, providing this Court with objective criteria – an FDA regulation – defining the term "healthy."  (*See* Dkt. 35.)  In amending her complaint and providing this standard to the Court, Plaintiff faced CytoSport's arguments, among others, that (1) the allegation that a product's label fails to comply with an FDA regulation does not make that product deceptive, (2) that CytoSport had not violated any FDA regulations, and (3) even if the Court determined that Plaintiff's claims of misrepresentation were viable, the case should be stayed or dismissed based on the FDA's primary jurisdiction.  (*See* Dkt. 36.)

1    Moreover, even if Plaintiff were to prevail at trial, risks to the Settlement Class

2  would remain.  For example, in *In re Apple Computer Sec. Litig.*, 1991 U.S. Dist. LEXIS

3  15608 (N.D. Cal. Sept. 6, 1991), the jury had rendered a verdict for plaintiffs after an

4  extended trial.  Weeks later, however, Judge Ware overturned the verdict, entering

5  judgment N.O.V. for the individual defendants, and ordered a new trial with respect to the

6  corporate defendant.  *Id.*  By settling, Plaintiff and the Settlement Class have avoided these

7  risks, as well as the delays and risks of the appellate process.  Careful consideration of the

8  above risks supports approval of the Class Action Settlement as fair, adequate and

9  reasonable.

10       **D.    Risk of Maintaining Class Action Status**

11       In addition to the risks of continuing the litigation discussed above, Plaintiff would

12  also face significant risks in certifying a class and maintaining that class status through

13  trial.  Even if the Court certified a class, on CytoSport's or the Court's own motion, the

14  class could be decertified at any time.   *See In re Netflix Privacy Litig.*, 2013 WL 1120801

15  at *6 ("The notion that a district court could decertify a class at any time is one that weighs

16  in favor of settlement" (internal citations omitted)).

17       Additionally, the Ninth Circuit's decision in *Mazza v. American Honda Motor Co.*,

18  666 F.3d 581, 589-94 (9th Cir. 2012), which questioned the viability of certifying a

19  nationwide class under California's consumer protection and unjust enrichment laws, has a

20  direct bearing on this case if it were to proceed in litigation. While Plaintiff has not yet

21  moved to certify the Settlement Class, CytoSport would certainly oppose certification, and

22  the *Mazza* decision and subsequent case law may impact the size and parameter of any

23  class Plaintiff could certify. As certification remains unknown, this factor too weighs in

24  favor of finally approving this Class Action Settlement.

25       The Class Action Settlement eliminates these risks by ensuring Settlement Class

26  members a recovery that is "certain and immediate, eliminating the risk that class members

27  would be left without any recovery . . . at all." *Fulford v. Logitech, Inc.*, 2010 U.S. Dist.

28  LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).

### E.     The Extent of Discovery and Status of Proceedings

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  In addition to considering the extent of formal discovery the parties engaged in, the Court may also consider the informal exchange of information between the parties because "formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Id.*

Here, both prior to and following the filing of this action, Class Counsel conducted a thorough investigation of Plaintiff's claims.  (Dkt. 75 at ¶ 7.)  Such efforts included, for example, testing the Products for nutritional content, consulting with experts regarding the Products' nutritional content, reviewing scientific research concerning the Products and their ingredients, obtaining and reviewing documents from the Federal Trade Commission, and discussing claims with Plaintiff and putative class members.  (*Id.*)   Class Counsel also thoroughly investigated the potential legal basis for a lawsuit against CytoSport and conducted legal research in support of the litigation.  (*Id.*).

Class Counsel  engaged in substantial and costly discovery efforts to litigate this case.  (*Id.* at ¶ 8.)  As a starting point, Class Counsel served CytoSport with Requests for Production of Documents, met and conferred with CytoSport's counsel concerning the proper scope of documents to be produced, and prepared a motion to compel the production of documents requested, before ultimately reaching an agreement with CytoSport's counsel concerning document production.  (*Id.* at ¶ 9.)  Class Counsel thereafter reviewed thousands of documents CytoSport produced.  (*Id.*)

In addition, Class Counsel served deposition notices and took depositions of three key CytoSport executives: CytoSport's Chief Marketing Officer, CytoSport's Chief Financial Officer, and CytoSport's Senior Vice President of Technical Services.  (*Id.* at ¶ 10.)

1    Class Counsel furthermore conducted substantial discovery concerning third parties

2    doing business with CytoSport.  (*Id.* at ¶ 11.)  In February and March of 2012, Class

3    Counsel served several subpoenas on third parties who performed advertising and

4    marketing-related services for CytoSport.  (*Id.*)  Class Counsel thereafter took the

5    deposition of CytoSport's packaging design vendor, Bright Design.  (*Id.*)  In August 2012,

6    Class Counsel served ten additional third party subpoenas on CytoSport's ingredient

7    suppliers, and its advertising and consumer research consultants.  (*Id.* at ¶ 12.)  Class

8    Counsel then reviewed documents produced by these numerous subpoenaed third parties.

9    (*Id.*)

10   In sum, by the time the parties reached the Class Action Settlement on the eve of

11   class certification, they were more than well-informed about the merits of their positions.

12   *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd.*, 661 F.2d

13   939 (9th Cir. 1981) (there was sufficient evidence before the parties to allow them to

14   consider the strengths and weaknesses of their respective cases).   The parties then reached

15   agreement on the terms of the Class Action Settlement through the weighing of the

16   evidence discovered so far, as well as a vigorous debate of legal and factual theories by the

17   parties and extensive arm's length negotiations.  (Dkt. 75 at ¶¶ 16-20.)  Thus, this factor

18   weighs strongly in favor of approval.

19   **F.    Experience and Views of Counsel**

20   "The recommendations of plaintiffs' counsel should be given a presumption of

21   reasonableness." *In re Omnivision Techns., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal.

22   2008) (quoting *Boyd*, 485 F. Supp. at 622).  Deference to Class Counsel's evaluation of the

23   Class Action Settlement is appropriate because "[p]arties represented by competent

24   counsel are better positioned than courts to produce a settlement that fairly reflects each

25   party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quoting *In re Pac.*

26   *Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

27   Here, the Class Action Settlement was negotiated by counsel with extensive

28   experience in consumer class action litigation and complex litigation.  (Dkt. 75 at 29, 38-

42.)  Indeed, this Court determined that "[f]or the purposes of these settlement approval proceedings, this Court finds that [Baron & Budd, P.C.] is competent and capable of exercising its responsibilities as Class Counsel."  (Dkt. No. 72.)  Based on their experiences litigating similar cases, Class Counsel concluded that the Class Action Settlement provides exceptional results for the Class while sparing the Settlement Class from the numerous uncertainties that would result from protracted litigation.  (Dkt. 75 at ¶ 23.)

## G.   Presence of a Governmental Participant

The government need not be involved with a class action settlement.  However, the Class Action Fairness Act ("CAFA") requires that notice of the settlement be delivered to the Attorney General of the United States, and to each attorney general of each state where class members reside.  28 U.S.C. § 1715(b).  Here, counsel for CytoSport disseminated notice of the Class Action Settlement to the appropriate federal and state government officials.  None of them interposed any objection to the proposed Class Action Settlement.  The lack of government involvement weighs in favor of approving the Class Action Settlement as agreed to by the parties.

## H.   Reaction of Class Members

To date, the reactions of Settlement Class Members have been overwhelmingly positive.  The Settlement Class Members are well aware of the Class Action Settlement – as of April 6, 2014 (several weeks after the claims period had ended), 33,310 Settlement Class Members had submitted timely claim forms, 49,934 individuals had visited the Class Action Settlement website, and 200 individuals had called GCG's helpline to discuss the Class Action Settlement.  (Dkt. 81-2, Keough Decl. ¶¶ 10-12.)  This positive reaction to the proposed Class Action Settlement weighs heavily in favor of final approval and the Court should find that the "presumption of fairness" applies in this case.  *See, e.g., Hanlon*, 150 F. 3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness").

1      Indeed, while 33,310 individuals have submitted timely claim forms, by contrast

2  only 20 persons have requested exclusion, and only 4 persons filed objections.  (Keough

3  Decl. ¶¶ 12-14.)  Thus, this factor also weighs in support of final approval of the Class

4  Action Settlement.  *See, e.g., Churchill*, 361 F.3d at 577 (weighing the low number of

5  objectors in favor of settlement).  The low number of objections raises a strong

6  presumption that the terms of the Class Action Settlement are favorable to the class.  *Nat'l*

7  *Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he

8  absence of a large number of objections to a proposed class action settlement raises a

9  strong presumption that the terms of the proposed class action settlement are favorable to

10  the class members").

## I.      The Objections to the Class Action Settlement Lack Merit

12      In a separate, concurrently filed brief, "Plaintiff's Response to Objections to Final

13  Approval of Class Action Settlement," Plaintiff responds to the four objections made in

14  this case.  (*See* Dkt. 82.)

## VI.   NOTICE PLAN

16      The parties agreed to a notice plan, which was approved by the Court in its

17  Preliminary Approval Order.  (Dkt. No. 72.)  The approved notice program informed the

18  Settlement Class of their rights and included a comprehensive plan for publication and

19  internet placement, and as this Court agreed, was the best notice practicable given the

20  circumstances of the case.  (*Id.*)

21      GCG created a website, www.CytoSportSettlement.com, exclusively dedicated to

22  providing notice of the Class Action Settlement to Settlement Class Members.  (Dkt. 81-2,

23  Keough Decl. ¶ 11.)  There, potential class members could obtain comprehensive

24  information about the Class Action Settlement (including the Long Form Notice and

25  Frequently Asked Questions), submit claim forms online, and review court documents

26  pertaining to this litigation.  (*Id.*)  A toll-free hotline has been in place for potential

27  Settlement Class Members to make inquiries.  (*Id.* ¶ 10.)

GCG arranged for publication of the Summary Notice twice in a weekday edition of the national edition of *USA Today*, and twice in a California distribution of *USA Today*. (*Id.* ¶ 7.)  Class Counsel and CytoSport also issued a joint press release, in both English and Spanish, released by PR Newswire on December 11, 2013.  (*Id.* ¶ 8.)  The press release has also been available on the websites for Class Counsel and for Defendant.  GCG also e-mailed the Summary Notice to 5,460 potentially valid unique e-mail addresses.  (Keough Decl. ¶5.)

Between December 6, 2013 and January 6, 2014, banner advertisements for the Class Action Settlement were published on People.com and Univision.com.  (Keough Decl. ¶ 9.)  Through the banner advertisement campaign, there were over four (4) million delivered impressions or opportunities for potential Settlement Class Members to click on the banner advertisement and view the settlement website.  (*Id.*)

On December 9, 2013, GCG set up a toll-free phone numbers for Settlement Class Members to make inquiries concerning the Class Action Settlement.  (*Id.* ¶ 10.)  The interactive voice response system has been accessible by callers 24 hours a day, 7 days a week.  (*Id.*)  As of April 6, 2014, GCG had received 200 phone calls to the dedicated toll-free hotline.  (*Id.*)

The notice program provided a fair opportunity for members of the Settlement Class to obtain full disclosure of the conditions of the Class Action Settlement and to make an informed decision regarding it.  Given the tens of thousands of claims timely made the notice process has been remarkably successful.  Thus, the notices and the procedures embodied in them amply satisfy the requirements of due process.

## VII.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval to the Class Action Settlement, certify the Settlement Class, and enter the Final Approval Order in the form previously submitted.

1

Dated:  April 11, 2014                    BARON & BUDD, P.C.

2

                                    By:   /s/ Roland Tellis

3                                         Roland Tellis

4                                         Roland Tellis (SBN 186269)

5                                         rtellis@baronbudd.com
                                          Mark Pifko (SBN 228412)

6                                         mpifko@baronbudd.com
                                          15910 Ventura Boulevard, Suite 1600

7                                         Encino, California  91436
                                          Telephone:  (818) 839-2333

8                                         Facsimile:  (818) 986-9698

9

10                                        Attorneys for Plaintiff
                                          CLAIRE DELACRUZ, individually, and

11                                        on behalf of other members of the public
                                          similarly situated

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28