UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CLAIRE DELACRUZ, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CYTOSPORT, INC., a California Corporation,<br><br>Defendant. | CASE NO.: 4:11-cv-03532-CW<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING APPLICATION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS; GRANTING OBJECTOR'S ADMINISTRATIVE MOTION (Docket Nos. 74, 81, 84)** |

WHEREAS, following a hearing on Plaintiff's Motion for Preliminary Approval of Class Action Settlement, the parties made modifications to their original proposed settlement agreement and, thereafter, presented this Court with a proposed First Amended Settlement Agreement and Release in the above-captioned matter (the "Settlement Agreement and Release");

WHEREAS, by Order dated November 18, 2013, this Court granted preliminary approval (the "Preliminary Approval Order") of the Settlement Agreement and Release;

WHEREAS, in connection with preliminary approval of the parties' Settlement Agreement and Release, the Court provisionally certified a nationwide settlement class for settlement purposes only, approved the procedure for giving notice and forms of notice, and set a final fairness hearing on May 15, 2014;

WHEREAS, on May 15, 2014, the Court held the duly noticed final fairness hearing to consider: (1) whether the terms and conditions of the Settlement Agreement and Release are fair, reasonable and adequate, and any objections thereto; (2) whether a judgment should be entered dismissing the named Plaintiff Claire Delacruz's ("Plaintiff") complaint on the merits and with prejudice in favor of Defendant CytoSport, Inc. ("CytoSport") and against all persons or entities who are settlement class members; and (3) whether and in what amount to award attorney's fees and expenses to counsel for the settlement class;

WHEREAS, the Court has considered all written submissions of counsel, all objections timely filed, all record evidence and all oral argument and other matters submitted to it at the hearing and otherwise;

WHEREAS, the Court finds that the Settlement Agreement was the result of extensive and protracted arms-length negotiations occurring over several years and multiple mediation sessions with the Honorable Edward A. Panelli (Ret.) and the Honorable Carl J. West (Ret.), both currently affiliated with JAMS. Counsel for the parties are highly experienced in class action litigation, with full knowledge of the risks inherent in this Action. The extent of written discovery, depositions, document productions, and independent investigations by counsel for the parties, and the factual record compiled,

suffices to enable the parties to make an informed decision as to the fairness and adequacy of the settlement;

WHEREAS, the Court has determined that the proposed Settlement Agreement and Release, the significant relief provided to the Settlement Class Members—in the form of CytoSport's agreement to make certain payments to settlement class members as well as its agreement to discontinue the use of certain words and phrases in the labeling and marketing of certain Muscle Milk® products—as described in the Settlement Agreement and Release, and the award of attorneys' fees and expenses requested, are fair, reasonable and adequate; and

WHEREAS, the matter having been submitted, due and adequate notice having been provided to Class Members as required by the Court's Preliminary Approval Order, and otherwise being fully informed, and good cause appearing, the Court hereby Orders as follows:

1. The Settlement Agreement and Release, and all attachments thereto, is expressly incorporated by reference into this Final Order and made a part hereof for all purposes. Except where otherwise noted, all capitalized terms used in this Final Order shall have the meanings set forth in the Settlement Agreement and Release.

2. The Court has personal jurisdiction over the Parties and all Settlement Class Members, and has subject-matter jurisdiction over this Action, including, without limitation, jurisdiction to approve the proposed settlement, to rule on all objections timely filed, to grant final certification of the Settlement Class, to settle and release all claims arising out of the transactions alleged in Plaintiff's complaint in the Action, and to dismiss this Action on the merits and with prejudice.

3. The Court finds, for settlement purposes only and conditioned upon the entry of this Final Order and upon the occurrence of the Effective Date, that the requirements for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of Settlement Class Members is so numerous that

joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Plaintiff are typical of the claims of the Settlement Class they seek to represent for purposes of settlement; (d) the Plaintiff has fairly and adequately represented the interests of the Settlement Class and will continue to do so, and the Plaintiff has retained experienced counsel to represent her; (e) for purposes of settlement, the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; and (f) for purposes of settlement, a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613-14 (1997). The Court also concludes that, because this Action is being settled rather than litigated, the Court need not consider manageability issues that might be presented by the trial of a nationwide class action involving the issues in this case. *Id.* at 620.

4. In making these findings, the Court has considered, among other factors: (i) the interests of Settlement Class Members in individually controlling the prosecution or defense of separate actions; (ii) the impracticability or inefficiency of prosecuting or defending separate actions; (iii) the extent and nature of any litigation concerning these claims already commenced; and (iv) the desirability of concentrating the litigation of the claims in a particular forum. The Court takes guidance in its consideration of certification and settlement issues from *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998).

5. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finally certifies this Action for settlement purposes as a nationwide class action on behalf of: a class of all persons who purchased one or more Muscle Milk® Ready-to-Drink beverages (the "RTD") and/or Muscle Milk® bars (the "Bar") (the Bar together with the RTD, the "Products") at retail in the United States from July 18, 2007 through December 31, 2012 (the "Settlement Class"). As defined in the Settlement Agreement and Release, "Settlement Class Member(s)" means any member of the Settlement Class who does not elect exclusion

or opt out from the Settlement Class pursuant to the terms and conditions for exclusion set out in the Settlement Agreement and Release and the Long Form Notice. Excluded from the Settlement Class are all persons who are employees, directors, officers, and/or agents of CytoSport or its subsidiaries and affiliated companies, as well as the Court and its immediate family and staff.

6. The Court appoints the law firm of Baron & Budd, P.C. as counsel for the Class ("Class Counsel"). The Court designates named Plaintiff Claire Delacruz as the representative of the Settlement Class. The Court finds that the named Plaintiff and Class Counsel have fully and adequately represented the Settlement Class for purposes of entering into and implementing the Settlement Agreement and Release and have satisfied the requirements of Rule 23(a)(4) of the Federal Rules of Civil Procedure.

7. The Court finds that the electronic and publication notice are in accordance with the terms of the Settlement Agreement and Release and this Court's Preliminary Approval Order, and as explained in the declarations filed before the Final Fairness Hearing:

(a) constituted the best practicable notice to Settlement Class Members under the circumstances of this Action;

(b) were reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action, (ii) their right to exclude themselves from the Settlement Class and the proposed settlement, (iii) their right to object to any aspect of the proposed settlement (including final certification of the Settlement Class, the fairness, reasonableness or adequacy of the proposed settlement, the adequacy of the Settlement Class's representation by Plaintiff or Class Counsel, and/or the award of attorneys' and representative fees), (iv) their right to appear at the Final Fairness Hearing (either on their own or through counsel hired at their own expense), and (v) the binding effect of the orders and Final Order in this Action, whether favorable or unfavorable, on all persons and entities who do not request exclusion from the Settlement Class;

(c) constituted reasonable, due, adequate, and sufficient notice to all persons and entities entitled to be provided with notice; and

(d) fully satisfied the requirements of the Federal Rules of Civil Procedure, including Rule 23(c)(2) and (e) of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, California's Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*), and any other applicable law.

8. The Court finds that CytoSport provided notice of the proposed settlement to the appropriate state and federal government officials pursuant to 28 U.S.C. § 1715. Furthermore, the Court has given the appropriate state and federal government officials the requisite ninety (90) day time period (pursuant to 28 U.S.C. § 1715) to comment or object to the proposed settlement before entering its Final Order and no such objections or comments were received.

9. The terms and provisions of the Settlement Agreement and Release, including any and all amendments and exhibits, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, the Plaintiffs and the Settlement Class Members, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and any other applicable law. The Court finds that the Settlement Agreement and Release is fair, adequate and reasonable based on the following factors, among other things:

(a) There is no fraud or collusion underlying this settlement, and it was reached after good faith, arms-length negotiations, warranting a presumption in favor of approval. *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982).

(b) The complexity, expense and likely duration of the litigation favor settlement on behalf of the Settlement Class, which provides meaningful benefits on a much shorter time frame than otherwise possible. Based on the stage of the proceedings and the

amount of investigation and informal discovery completed, the Parties have developed a sufficient factual record to evaluate their chances of success at trial and the proposed settlement.

  (c) The support of Class Counsel, who are highly skilled in class action litigation such as this, and the Plaintiff, who has participated in this litigation and evaluated the proposed settlement, also favors final approval. *See Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1291 (9th Cir. 1992).

  (d) The settlement provides meaningful relief to the Settlement Class, including the injunctive and monetary relief described below, and falls within the range of possible recoveries by the Settlement Class.

 10. As described in the Settlement Agreement and Release, CytoSport has agreed to distribute the total sum of $1,000,000 to eligible Settlement Class Members, and, not later than forty-five (45) days following the Effective Date, to provide for the following injunctive relief:

  (a) To cease using the words "Healthy, Sustained Energy" on the Principal Display Panel of all newly-printed packaging of Muscle Milk® RTD and Bars.

  (b) To cease using the words "Healthy Fats" on any newly-printed packaging of Muscle Milk® RTD, provided however, that CytoSport may use the term "Healthy Fats" on the packaging of Muscle Milk® RTD (or related products) so long as such product contains fewer than 0.5 grams of saturated fat per serving, or CytoSport also includes the words "See nutrition information for saturated fat content" in connection with the words "Healthy Fats."

 11. Cytosport shall abide by the requirements of paragraph 10 above for three (3) years after the Effective Date. Nothing in this Final Order shall prevent CytoSport from implementing changes prior to the Effective Date. This Final Order does not preclude
7

[PROPOSED] ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS; GRANTING OBJECTOR'S ADMINISTRATIVE MOTION
Case No.: 4:11-cv-03532-CW

CytoSport from making further changes to any of its product labels or marketing: (i) that CytoSport reasonably believes are necessary to comply with any statute, regulation, or other law of any kind; (ii) that are necessitated by product changes and/or to ensure that CytoSport provides accurate product descriptions; or (iii) that are more detailed than those required by the Settlement Agreement and Release and/or this Final Order.

12. The Court has reviewed the Proposed Product Distribution Plan for the distribution of residual settlement funds that was submitted by CytoSport (Dkt. 83 at p. 6-10) (the "Distribution Plan"). The Court approves the Distribution plan and the contents of the Distribution Plan are incorporated as if set forth fully herein. The Court finds that the terms and conditions of the Distribution Plan and the portions of the Settlement Agreement and Release relating to product distribution (Dkt. 67-1 at p. 12-13) comply with the legal standards governing such distributions. *See Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012), *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011), and *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). Based on the Court's review of these materials and all of the evidence before the Court, the Court makes the following findings: (1) the Court finds that the Distribution Plan includes multiple features to facilitate distribution of products to members of the Settlement Class; (2) the Court finds that the Distribution Plan is carefully focused on and tailored to Plaintiff's allegations and the objectives of the underlying statutes; (3) the Court finds that the Distribution Plan ensures that reasonable efforts will be made to target class members; (4) the Court finds that the Distribution Plan does not diminish the cash payments made to class members; and (5) the Court finds that the product distributions were not made in lieu of cash payments to the class. Finally, the Settlement Agreement provides that the value of any products distributed shall be measured according to their retail value, the distribution shall occur over a three-year period, the products distributed shall be in addition to any other charitable donations planned by Cytosport, and Cytosport shall not seek a tax deduction for such product donations.

8

[PROPOSED] ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS; GRANTING OBJECTOR'S ADMINISTRATIVE MOTION
Case No.: 4:11-cv-03532-CW

13. In recognition of Plaintiff's efforts on behalf of the Settlement Class, as set forth in the Declaration of Claire Delacruz in Support of Motion for Final Approval of Class Action Settlement, the Court approves Plaintiff's request for an incentive award of $5,000, and finds such award just and reasonable. Cytosport shall pay such award in accordance with the terms of the Settlement Agreement and Release. In approving the incentive award, the Court has considered Plaintiff's commitment of time to the Action which spanned almost three years, the risk of liability for Cytosport's costs, the benefits provided to tens of thousands of class members and the absence of any conflicts of interest between Plaintiff and members of the Settlement Class.

14. Class Counsel seek recovery of $855,157.25 in attorneys' fees and $190,839.41 in expenses. This Court is familiar with the work performed by Class Counsel in this matter. The Court finds that the expenses incurred, work performed, time spent, and rates charged by Class Counsel appear to be reasonable. The requested fee and expense award is authorized and appropriate under the Consumer Legal Remedies Act ("CLRA"), California Civil Code Section 1780(e), and the Private Attorney General Statute, California Civil Procedure Section 1021.5. The settlement discussed herein, which resulted in the enforcement of an important right affecting the public interest, is favorable for the Settlement Class, and constitutes a victory for Settlement Class Members. Additionally, Class Counsel advanced the public interest by enforcing consumer protection laws, and obtained significant benefits for more than 33,300 members of the Settlement Class. Accordingly, this Court applies the lodestar method to award fees under the CLRA and Private Attorney General Statute.

15. To assist the Court in evaluating the reasonableness of the time spent on this case, Class Counsel presented a detailed declaration which included a schedule of time records and expenses incurred, and the experience and qualifications of the attorneys who worked on this case. Such declaration reflects that Class Counsel has devoted a total of 1,453.35 hours to the investigation and litigation of this case and the hourly rates for the lawyers who performed such services ranged from $390 to $825 per hour for attorneys, depending on their experience

9

[PROPOSED] ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS; GRANTING OBJECTOR'S ADMINISTRATIVE MOTION
Case No.: 4:11-cv-03532-CW

and skill, and $95 per hour for paralegal staff. Class Counsel has computed a total lodestar of $855,157.25 through February 25, 2014. After considering Class Counsel's statements and legal authorities concerning the market rates for plaintiffs' class action attorneys, and the Court's own experience with hourly rates in this District, the Court is satisfied that Class Counsel's fees meet the reasonableness standard. *See Staton v. Boeing Co.*, 327 F.3d 938,972 (9th Cir. 2003).

16. In evaluating Class Counsel's lodestar, the Court has also considered whether Class Counsel used reasonable hourly rates and sound billing practices and assessed the requested lodestar in light of the results obtained for the class. *See Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Additionally, in considering the reasonableness of attorneys' fees, the Court has considered the time and labor required, novelty and complexity of the litigation, skill and experience of counsel, the results obtained, and awards in similar cases. *See Blum v. Stenson*, 465 U.S. 886, 898-900 (1984); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

17. Class Counsel have done a considerable amount of work to develop Plaintiff's claims in this case, and have committed significant resources to this matter. This action conferred a significant benefit on a large class of persons by (1) making guaranteed financial relief available to over 30,300 claimants who individually could not be expected to dedicate the financial resources required to litigate the claims asserted in this case, (2) distributing residual settlement funds in the form of re-labeled Muscle Milk Light products, or other products with a similar nutrient profile, targeted to members of the Settlement Class pursuant to Cytosport's Proposed Product Distribution Plan, and (3) obtaining the injunctive relief discussed in paragraph 10 above.

18. This case also presented unique complexities concerning the interplay between the FDA guidelines and the false advertising laws. These issues were contested at the pleading stage, including two motions to dismiss which disposed of certain of Plaintiff's claims, and Class Counsel retained experts in connection with anticipated class certification motions to opine on key issues including whether the subject products were "healthy," and whether the subject representations were material to consumers. Additionally, Class Counsel has submitted a declaration attesting to the significant

expenditure of Class Counsel's time on matters such as: (1) extensive pre-litigation investigation; (2) consulting with industry experts; (3) extensive and detailed legal research into the substantive law of the causes of action at issue; (4) developing and executing litigation strategies; (5) researching and preparing for class certification; (6) developing and executing mediation and settlement strategies; and (7) analyzing data and information exchanged between the parties to assure informed decision-making concerning the risks, expenses, and benefits of continuing to litigate the case.

19. Class Counsel undertook significant financial risk in prosecuting this case. Class Counsel undertook this matter solely on a contingent basis with no guarantee of recovery. Class Counsel risked their resources to prosecute this action. There was no assurance that this case would have been certified, that certification would include a nationwide class, or that Plaintiff would have succeeded at trial.

20. Class Counsel vigorously and competently pursued the Class Members' claims. The arm's-length settlement negotiations that took place demonstrate that Class Counsel adequately represented the Class. Moreover, the Court finds no evidence that Plaintiff and Class Counsel had any conflicts of interests with the Class. Rather, Plaintiff, like each absent Class Member, had a strong interest in proving CytoSport's common course of conduct, establishing its unlawfulness and obtaining redress.

21. Class Counsel also provided the Court with a declaration attesting to their extensive experience and expertise in prosecuting complex class actions. Class Counsel are active class action practitioners who are experienced in consumer fraud litigation. Their work was performed by a core team of attorneys fully familiar with the complex factual and legal issues presented by this litigation.

22. The Court has also cross-checked Class Counsel's lodestar fee against the percentage-of-the-recovery method. *See Bluetooth*, *supra*, at 943. To that end, when determining the value of the settlement, courts often consider the non-monetary benefits conferred, as well as any cash attorneys' fee and cost payments to be made pursuant to the settlement terms with the defendants. *See, e.g. Staton v. Boeing Co.*, 327 F.3d 938, 972-74 (9th Cir. 2003). The Ninth Circuit also identified five factors that are relevant in determining whether requested attorneys' fees in a common

11

[PROPOSED] ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS; GRANTING OBJECTOR'S ADMINISTRATIVE MOTION
Case No.: 4:11-cv-03532-CW

fund case are reasonable: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) awards made in similar cases; and (5) the contingent nature of the fee and the financial burden carried by the plaintiffs. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Applying these factors, the Court finds that the requested fees are reasonable

23. Class Counsel achieved a settlement in this action that altered Cytosport's business practices and provided guaranteed compensation to Class members for alleged misrepresentations. The monetary relief component of the Amended Settlement provides a guaranteed, fixed monetary claim fund of $1,000,000 for payment of claims, with claimants paid at $30.00 each, and the residual, if any, to be paid to Class Members who made claims on a *pro rata* basis, up to a total of $60.00 for each claimant. No proof of purchase is necessary for class members to qualify for monetary relief, and class members may submit claim forms online, in addition to the use of other methods of delivery (including mail).

24. Although the Parties have agreed in the Settlement Agreement that the monetary value of CytoSport's relabeling obligation is $1,000,000, for the purpose of calculating attorneys' fees based on the common fund approach, Class Counsel did not attribute any monetary value to such injunctive relief. Nevertheless, the Court finds that the injunctive relief provided for in the Settlement Agreement, and the notice of such relief provided to Class Members, does constitute a valuable benefit to be considered in determining the reasonableness of Class Counsel's fees. Thus, Class Counsel's requested fee award is within the Ninth Circuit's "benchmark," even without attributing any monetary value to CytoSport's agreement to re-label the Products.

25. Thus, the resolution of this case through settlement provides the Settlement Class with the benefit of significant financial recovery without the delay of continued litigation.

26. For the foregoing reasons, the Court approves Class Counsel's fees in the sum of $855,157.25 and costs in the sum of $190,839.41. Cytosport shall pay such sums in accordance with the Settlement Agreement.

27. The Court has evaluated and overrules the objections filed by Theodore Frank, William Chamberlain, Don Orrell and Craig Smotzer. In ruling on such objections, the Court

has evaluated the factors set forth in *Bluetooth, supra,* and finds that the settlement was reached only after contested litigation, including through motion practice, written discovery, depositions, three mediations and months of settlement negotiations. The terms and structure of the Settlement Agreement were the subject of intense, serious, arms-length negotiations, with the assistance of two respected retired judges, and was not the subject of self-dealing or collusion. In that regard, the Settlement Agreement does not provide Class Counsel with a disproportionate distribution of the settlement and Settlement Class Members will receive a guaranteed monetary distribution of $1 million. The Settlement Agreement also does not contain any "kicker" arrangement whereby any reduction in attorneys' fees reverts to Cytosport. To date, over 33,300 class members have applied to receive more than $30.00 each and notice of the settlement has been disseminated to fifty-five federal and state government officials, none of whom have filed objections. The reaction of class members to the settlement has been overwhelmingly positive, and is a significant factor to be weighed in considering its adequacy. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

28. The parties are directed to consummate the Settlement Agreement and Release in accordance with its terms and conditions. The Court hereby declares that the Settlement Agreement and Release is binding on all parties and Settlement Class Members, and it is to be preclusive in all pending and future lawsuits or other proceedings.

29. Upon the Effective Date, the Releasing Parties (as that term is defined in the Settlement Agreement and Release) shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally and forever released, relinquished, and discharged all Released Claims against the Released Parties. Released Claims means and includes any and all claims, demands, rights, damages, obligations, suits, debts, liens, and causes of action of every nature and description whatsoever, ascertained or unascertained, suspected or unsuspected, existing or claimed to exist, including unknown claims (as described in Paragraph 31 below) as of the Effective Date by Plaintiff and all Settlement Class Members (and Plaintiff's and Settlement Class Members' respective heirs, executors,

administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns) that:

(i) were brought or that could have been brought against the Released Parties, or any of them, and that arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged or referred to in the Action (including, but not limited to alleged violations of state consumer protection, unfair competition, and/or false or deceptive advertising statutes (including, but not limited to, Cal. Bus. & Prof. Code § 17200 *et seq.,* Cal. Bus. & Prof. Code § 17500 *et seq.,* and Cal. Civ. Code § 1750 *et seq.);* breach of contract; breach of express or implied warranty; fraud; unjust enrichment, restitution, trespass, conversion, declaratory or injunctive relief, and other equitable claims or claims sounding in contract and tort); and

(ii) relate in any way to any claim, advertisement, representation, assertion, promise, or similar statement made by any of the Released Parties in any forum or medium whatsoever about, concerning, regarding, portraying, and/or relating to the healthfulness or nutritional attributes of the Products, including but not limited to all claims that relate in any way to: the use of the words "Healthy Sustained Energy" and/or "Sustained Energy" with respect to the Products; the use of the words "Healthy Fats" with respect to the Products; the use of the words "Good Carbohydrates" with respect to the Products; the calories provided by the Products; the ingredients in the Products, including but not limited to the amounts and/or presence of: (a) fractionated palm kernel oil, partially hydrogenated palm oil, or any variant thereof, (b) *trans* fat, (c) sugars of any type, or (d) artificial sweeteners of any type; the amount and/or presence of fat or saturated fat in the Products; the amount and/or presence of cholesterol in the Products; the amount and/or presence of carbohydrates in the Products; the amount and/or presence of protein in the Products; the marketing of the Products as "premium," "healthy," part of a "healthy lifestyle," as a "healthy alternative beverage" and/or related statements; guidelines concerning when and/or in what quantities

14

to use the Products; and compliance with any federal, state, or local labeling requirements with respect to the healthfulness, nutritional content, and/or the nutritional attributes of the Products. However, Released Claims do not include claims for personal injury.

30. The Released Claims include known and unknown claims relating to the Action, and the Settlement Agreement and Release is expressly intended to cover and include all such injuries or damages, including all rights of action thereunder. Settlement Class Members have expressly, knowingly, and voluntarily waived the provisions of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Settlement Class Members have expressly waived and relinquished any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable, or equivalent to Section 1542, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims. In connection with such waiver and relinquishment, the Settlement Class Members have acknowledged that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims known or unknown, suspected or unsuspected, that they have against the Released Parties. In furtherance of such intention, the release herein given by the Settlement Class Members to the Released Parties shall be and remain in effect as a full and complete general release notwithstanding the discovery or existence of any such additional different claims or facts. Each of the Parties expressly acknowledged that it has been advised by its attorney of the contents and effect of Section 1542, and with knowledge, each of the Parties has expressly waived whatever benefits it may have had pursuant to such section. Settlement Class

Members are not releasing any claims for personal injury. Plaintiff has acknowledged, and the Settlement Class Members shall be deemed by operation of the Final Order and Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the settlement of which this release is a part.

31. Members of the Settlement Class who have opted out of or sought exclusion from the settlement by the date set by the Court do not release their claims and will not obtain any benefits of the settlement. The following individuals sought exclusion from the settlement class: Grace Agustin, John Andre, Junar M. Barcena, Rochelle Barker, Rowel Bellezo, Dave Booker, Timothy Falloni, Anthony Ford, Jim Haack, Adam Harper, Chris Konieczny, Nicholas Kostakis, Matt Lahr, Nikos Markellos, Carly Nichols, Jay Puyot, Kyle Robertson, Sean Root, John Sampiere, and Elpedio Solon.

32. The Court orders that, upon the Effective Date, the Settlement Agreement and Release shall be the exclusive remedy for any and all Released Claims of Settlement Class Members. The Court thus hereby permanently bars and enjoins Plaintiff, all Settlement Class Members, and all persons acting on behalf of, or in concert or participation with such Plaintiff or Settlement Class Members (including but not limited to the Releasing Parties), from: (a) filing, commencing, asserting, prosecuting, maintaining, pursuing, continuing, intervening in, or participating in, or receiving any benefits from, any lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based upon or asserting any of the Released Claims; (b) bringing a class action on behalf of Plaintiff or Settlement Class Members, seeking to certify a class that includes Plaintiff or Settlement Class Members, or continuing to prosecute or participate in any previously filed and/or certified class action, in any lawsuit based upon or asserting any of the Released Claims.

33. Neither the Settlement Agreement and Release, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein, nor any of the documents or statements generated or received pursuant to the claims administration process, shall be:

(a) offered by any person or received against CytoSport as evidence or construed as or deemed to be evidence of any presumption, concession, or admission by CytoSport of the truth of the facts alleged by the Plaintiff or any Settlement Class Member or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or other judicial or administrative proceeding, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault or wrongdoing of CytoSport;

(b) offered by any person or received against CytoSport as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by CytoSport or any other wrongdoing by CytoSport;

(c) offered by any person or received against CytoSport or as evidence of a presumption, concession, or admission with respect to any default, liability, negligence, fault, or wrongdoing, or in any way interpreted, construed, deemed, invoked, offered, received in evidence, or referred to for any other reason against any of the settling parties, in any civil, criminal, or administrative action or proceeding; provided, however, that nothing contained in this paragraph shall prevent the Settlement Agreement and Release (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the settlement (or any agreement or order relating thereto) or the Final Order and Judgment, or in which the reasonableness, fairness, or good faith of the parties in participating in the settlement (or any agreement or order relating thereto) is an issue, or to enforce or effectuate provisions of the settlement, the Final Order and Judgment, or the Claim Form as to CytoSport, Plaintiff, or the Settlement Class Members; or

(d) offered by any person or received against the Plaintiff or any other class representative as evidence or construed as or deemed to be evidence that any of their claims. Notwithstanding the foregoing, CytoSport may file the Settlement Agreement and Release,

17

this Final Order, and/or any of the documents or statements referred to therein in support of any defense or claim that is binding on and shall have *res judicator, collateral estoppel,* and/or preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and/or any other Settlement Class Members, and each of them, as well as their heirs, executors, administrators, successors, assigns, and/or any other of the Releasing Parties.

34. The Court has jurisdiction to enter this Final Order. Without in any way affecting the finality of this Final Order, this Court expressly retains exclusive and continuing jurisdiction over the Parties, including the Settlement Class, and all matters relating to the administration, consummation, validity, enforcement and interpretation of the Settlement Agreement and Release and of this Final Order, including, without limitation, for the purpose of:

(a) enforcing the terms and conditions of the Settlement Agreement and Release and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement and Release, and/or this Final Order (including, without limitation: whether a person or entity is or is not a Settlement Class Member; whether claims or causes of action allegedly related to this Action are or are not barred or released by this Final Order; and whether persons or entities are enjoined from pursuing any claims against CytoSport);

(b) entering such additional orders, if any, as may be necessary or appropriate to protect or effectuate this Final Order and the Settlement Agreement and Release (including, without limitation, orders enjoining persons or entities from pursuing any claims against CytoSport), or to ensure the fair and orderly administration of the settlement; and

(c) entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction over the Settlement Agreement and Release, the settling Parties, and the Settlement Class Members.

35. Without further order of the Court, the settling Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement and Release.

36. This Action is hereby dismissed with prejudice and without costs as against CytoSport and the Released Parties.

37. In the event that the Effective Date does not occur, certification shall be automatically vacated and this Final Order, and all other orders entered and releases delivered in connection herewith, shall be vacated and shall become null and void.

38. Objector Theodore Frank's administrative motion to file a supplemental declaration is GRANTED. The Court has reviewed the supplemental declaration and considered it along with Mr. Frank's other submissions.

39. Judgment will enter separately.

IT IS SO ORDERED, this 1st day of July, 2014.

_____
THE HONORABLE CLAUDIA WILKEN
UNITED STATES DISTRICT COURT JUDGE